UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

GURINDER SINGH BAINS, as Personal Representative of the ESTATE OF JASWINDER SINGH, deceased, HARPREET SINGH and his wife DILPREET KAUR, and LAKHWINDER KAUR,

    Plaintiffs,

v.

AMERICAN TACTICAL, INC., ANTHONY DICHARIO, JOSEPH CALABRO, SCHMEISSER GMBH, and 365 PLUS D.O.O.,

    Defendants.

CASE NO: 2:24-cv-03970-BHH

_____

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO STAY**

Defendants American Tactical, Inc., Anthony DiChario, and Joseph Calabro ("Defendants") have moved to stay this case pending an appeal of *Lowy v. Daniel Defense, LLC, et al.,* C.A. No. 1:23-cv-1338, 2024 WL 3521508 (E.D. Va. July 24, 2024) to the U.S Court of Appeals for the Fourth Circuit. This case and that case, though similar in outward appearance, are materially different. In no way are the two cases "nearly identical," as Defendants assert in their motion to stay. First, the court in *Lowy* did not address a fundamental and threshold issue currently before this Court—whether a rifle magazine is a "component part" of a rifle. I.e., is a rifle magazine essential to the function of a rifle? Second, the issue of lack of Article III standing in the *Lowy* decision, (though wrongly decided) was based on different facts—different conduct by different defendants, with different allegations showing how the conduct caused a different mass shooter to

1

commit a mass shooting, all, incidentally, with the defendants violating different statutes than the Defendants here violated.

The Court should deny Defendants' request because it would serve little purpose other than to further delay this case and prevent Plaintiffs from developing the facts needed to bring the case to resolution.

## BRIEF PROCEDURAL HISTORY

Currently pending before the Court is Defendants' motion to dismiss. It is fully briefed. (Docket Nos. 62, 69, and 70). Defendants have not yet filed an Answer. Plaintiffs have sued the same Defendants under the same allegations as in *Johal v. American Tactical, Inc., et al.,* C.A. No. 2:24-cv-3969-BHH (D.S.C.). The two cases are now procedurally aligned, and Defendants filed the same motions to dismiss and to stay in both cases. Plaintiffs' responses in both are also the same.

Plaintiffs originally sued Defendants in the U.S. District Court for the Western District of New York on April 13, 2023, almost two years ago. Defendants moved to dismiss and to transfer venue. The court in the Western District of New York granted the transfer request and moved the case here to the District of South Carolina on July 17, 2024. (Docket No. 42). After Plaintiffs filed a Second Amended Complaint here (Docket No. 53), Defendants again moved to dismiss on various grounds, but particularly on a novel theory they had not raised before—lack of Article III standing.

In addition, Plaintiffs have been seeking the shooter's phone and computer from law enforcement (the FBI and the Indianapolis Metropolitan Police Department) using open records requests since at least 2022, to no avail. The shooter's phone and computer likely contain critical evidence supporting the allegations in this case, especially showing what the shooter viewed and

what the shooter searched for online in the run-up to the shooting, as well as his electronic conversations. All of that evidence bears on the kind and extent of exposure and influence Defendants' marketing had on the shooter. Plaintiffs want to move forward now to serve the third-party subpoenas necessary to obtain that evidence. Defendants do not oppose Plaintiffs pursuing these third-party subpoenas as soon as possible.

Finally, Plaintiffs do not oppose staying discovery of Defendants until after a ruling is entered in this case on Defendants' motion to dismiss.

## ARGUMENT

The Defendants' motion to stay is not a motion to stay discovery or a motion to stay entry of a judgment, but rather the more amorphous motion to stay all proceedings pending appeal in a different case. In this context, Plaintiffs do not dispute the principles set forth by Defendants that "a court has the power to stay proceedings, which is 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants,'" *CKC Properties, LLC v. Town of Mount Pleasant, S.C.*, C.A. No. 2:23-cv-4489, 2024 WL 39067 (D. S.C. Jan. 3, 2024). Further, the Court should "weigh competing interests and maintain an even balance," *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). Finally, "the party seeking a stay must *justify it by clear and convincing circumstances* outweighing potential harm to the party against whom it is operative." *Id.* (emphasis supplied). Defendants have failed to make this showing.

1. **The *Lowy* court did not decide whether rifle magazines are "component parts" of rifles.**

In their motion to dismiss, Defendants have raised, as did the defendants in *Lowy*, the affirmative defense of being shielded from liability by the Protection of Lawful Commerce in Arms Act. However, as discussed in detail in Plaintiffs' response to the motion to dismiss, that statute

only protects sellers or manufacturers of "qualified products," which are further defined to be "firearms," "ammunition," or "component parts" of firearms or ammunition. *See*, Docket No. 69, MTD Resp. Br., at 3-6. Defendants' tortious conduct centers around its sale, distribution, and marketing of rifle magazines. Because a rifle magazine is not a "component part" of a firearm (or ammunition), the Protection of Lawful Commerce Act does not come into play here.[1]

This is a threshold issue in this case. *See*, Docket No. 69, MTD Resp. Br. at 3-11. The following allegations in the Second Amended Complaint, which were not made in the *Lowy* complaint, firmly establish that a rifle magazine is not a "component part" of a rifle, and thus the Protection of Lawful Commerce Act simply does not apply:

> 64. A 60-round HCM ["high-capacity magazine"] like the Magazine is not a component part of a firearm. Indeed, a magazine is not a component part of a firearm.
> 65. ATI advertises HCMs, including the Magazine, in the "Accessories" section of its website.
> 66. A 60-round HCM is not essential to the discharge of a gun.
> 67. Indeed, a gun like the Firearm can and will fire with no magazine attached but a round in the chamber. In fact, a gun like the Firearm can be, and often is, manually loaded, one round at a time.
> 68. Some states, such as Illinois, have single-shot hunting seasons that prohibit a person from using a rifle "in the possession of a person who is also in possession of or in close proximity to a magazine that would allow the rifle to be capable of holding more than one round…" See 520 ILCS 5/1.2bb.
> 69. The Illinois statute, in requiring a semi-automatic rifle that is traditionally used with a magazine to be used without one while hunting, demonstrates that a magazine is not integral to the functioning of a semi-automatic weapon.
> 70. In *Dix v. Beretta USA Corp.,* C.A. No 750681-9 (Calif. Super. Ct., Alameda Cty.), firearms manufacturer Beretta was defending its decision to not include

---

[1] Even if it did come into play, because Defendants also violated multiple statutes applicable to the sale or marketing of firearms, and those violations caused the Plaintiffs' harm, an important exception to the Protection of Lawful Commerce Act would apply, and the Act would not, for that additional reason, bar Plaintiffs' case. *See*, Docket No. 69, MTD Resp. Br. at 12-22.

a magazine disconnect safety, a safety device that would disable a firearm that included a magazine from firing when the magazine was detached (but the firearm might still have a round in the chamber). Beretta's expert explained to the jury that such a safety device would impede the user's ability to survive if he was in the wild and broke his magazine, because he would otherwise (without such a safety device) be able to manually load the gun to use the firearm to survive without the magazine.

As noted in Plaintiff's MTD Response Brief, Docket No. 69, the only other court to decide this issue, in *Green v. KCI*, No. A-21-838762-C, 2022 WL 987555 (Nev. Dist. Ct. Mar. 23, 2022), decisively ruled that the Protection of Lawful Commerce Act did not apply to cover rifle magazine manufacturers or sellers, because magazines are not "component parts" of rifles. *See*, *id*. at *1.

This issue should have been a threshold issue in *Lowy*, **but the court did not decide it.** Instead, the court skipped ahead and ruled on a different argument, which the Plaintiffs here do not make.

The argument by the plaintiffs in *Lowy* that the Protection of Lawful Commerce Act does not cover the magazine sellers in that case was two-fold. First, rifle magazines are not "component parts" of rifles. This is the argument Plaintiffs make here. Second, the *Lowy* plaintiffs further alleged that, in any event, a high-capacity, after-market replacement magazine surely is not a "component part." Plaintiffs here do not make this secondary argument. And the plaintiffs in *Lowy* have also jettisoned this secondary argument in their appeal.

But, nonetheless, the District Court in *Lowy* only addressed this secondary argument, relying on the reasoning in *Prescott v. Slide Fire Solutions, LP,* 341 F.Supp. 3d 1175 (D. Nev. 2018) that "bump stocks replace existing stocks rendering them component parts, even if they are after-

5

market enhancements." *Lowy*, at *3.[2] The court skipped the antecedent question of whether a rifle magazine is essential to the function of a rifle; i.e., whether a magazine is a "component part" to begin with. *See*, Docket No. 69, MTD Resp. Br. at 9.

Thus, this Court should not hold up a decision in this case on the threshold issue of whether a magazine is not a "component part" of a rifle. Accordingly, the Defendants here cannot avail themselves of the protections of the Protection of Lawful Commerce Act because that law applies only to sellers and manufacturers of "firearms," "ammunition," and "component parts" of firearms or ammunition.

2. **The allegations in this case are different from those in *Lowy*, such that—even if the Fourth Circuit were to affirm *Lowy*—this Court should still find that Plaintiffs, in their Second Amended Complaint, have sufficiently pled the causation element of Article III standing.**

The District Court in *Lowy* was looking for the complaint to identify some specific allegation that "plaintiffs must allege that defendants' conduct had a determinative or coercive effect upon Shooter's actions." *Lowy*, at *2. The District Court in *Lowy* also required "allegations in the complaint [that] support the conclusion that [the] Shooter relied on defendants' marketing." *Id*. The court determined that it could not find such allegations in the *Lowy* complaint. *Id*.

Here, however, the Second Amended Complaint makes the following specific allegations, which show the causation element of Article III standing—even under the wrong standard newly espoused in the *Lowy* decision: ¶¶ 12-20 and 117-144. Particularly, the Second Amended Complaint alleges:

---

[2] Plaintiffs discuss *Prescott* at length in their Response Brief to the motion to dismiss at pages 6-7. As Plaintiffs make clear, this reasoning from *Prescott* is not at issue, and it is in fact acknowledged and endorsed by the court in *Green*, which found that rifle magazines were inherently different from rifle stocks, such that a replacement stock is a "component part" (and being a replacement does not change that), but that a replacement magazine is not a "component part," because the original magazine is not a "component part."

6

> 19. Defendants' practices enticed the Shooter to purchase the 60-round HCM by displaying marketing, advertising, and packaging that was targeted at the delusions of him and others like him, of fighting in a war and destroying his enemies.
>
> 20. The Shooter did exactly what Defendants knew or should have known one of its customers would do: he combined the HCM with an AR-15 style firearm (the Firearm) to perpetrate a mass shooting.

The Second Amended Complaint later on includes a crime-scene photograph of the actual packaging of the rifle magazine found in the shooter's bedroom and discusses the specific features of that package's marketing:

> 120. ATI's inclusion of "FOR M4 … RIFLES" in its packaging of its HCMs serves no commercial purpose other than to deceive civilian consumers into believing they were buying the same product as used by the U.S. military in their standard-issue assault rifles.
>
> 121. This misleading and reckless connection to the HCMs' use by the U.S. military in their M4 automatic rifles inspired, emboldened, and empowered the Shooter to commit the Attack.

Finally, the Second Amended Complaint discusses a press conference at which federal agents disclosed some additional details about the shooter's motivations, which tie directly to Defendants' marketing practices:

> 141. A federal agent also said the Shooter aspired to join the military. Authorities added that he had been eating MREs, or meals ready-to-eat, like those consumed by members of the armed forces.
>
> 142. Notably, during the Attack, the Shooter wore a tactical vest nearly identical to the gear used in Defendants' video advertisement by individuals engaged in an offensive, tactical, combat-like operation.

Allegations of this nature were not set forth in the *Lowy* complaint. Thus, there would be no benefit to holding this case up to wait and see if the Fourth Circuit ultimately affirms or reverses the *Lowy* decision's new strict Article III standard. This case should proceed regardless.

### 3. Plaintiffs will be prejudiced by further delay.

Plaintiffs have been litigating different motions to dismiss by Defendants for almost *two years* now. Plaintiffs have yet to receive an Answer or begin Rule 26(f) and 16 discussions about moving forward in discovery, despite the clear merits of their case. Plaintiffs have been attempting to obtain critical evidence from third parties for almost *three years* now. A stay of the proceedings will harm Plaintiffs' already delayed start of this litigation, and the Defendants have not shown clear and convincing circumstances outweighing this harm.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' request to stay this case. As noted above, the parties have been able to agree that 1) Plaintiffs should be permitted to pursue third-party subpoenas, primarily to law enforcement agencies, and 2) Plaintiffs do not oppose a stay of discovery of Defendants until after the Court rules on their pending motion to dismiss. As to the second point of agreement, Plaintiffs do not intend to serve discovery requests on Defendants until after the Rule 26(f) and 16 conferences, at any rate, so this should not be an issue.

Respectfully submitted,

Dated: January 10, 2025.

*/s/Elizabeth Middleton Burke*
Elizabeth Middleton Burke, Esq. (Fed. ID 7466)
Christiaan A. Marcum, Esq. (Fed. ID 7556)
**ROGERS, PATRICK, WESTBROOK & BRICKMAN**
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, SC 29464
Ph. (843) 727-6500
bburke@rpwb.com
cmarcum@rpwb.com

Leslie M. Kroeger, Esq. (Admitted *pro hac vice*)
Poorad Razavi, Esq. (Admitted *pro hac vice*)
Rachael Flanagan, Esq. (Admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL**

11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
Ph. (561) 515-1400
lkroeger@cohenmilstein.com
prazavi@cohenmilstein.com
rflanagan@cohenmilstein.com

Jay Chaudhuri, Esq.
(Admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL**
407 North Person Street
Raleigh, NC 27601
jchaudhuri@cohenmilstein.com

Philip H. Bangle, Esq. (*pro hac vice*)
**BRADY UNITED AGAINST GUN VIOLENCE**
840 First Street NE, Ste. 400
Washington, DC 20002
dletter@bradyunited.org
pbangle@bradyunited.org
jklein@bradyunited.org

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served via CM/ECF service upon all counsel of record this the 10th day of January 2025.

*/s/Elizabeth Middleton Burke*

9