UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| GURINDER SINGH BAINS, as Personal Representative of the ESTATE of JASWINDER SINGH, deceased, HARPREET SINGH and his wife, DILPREET KAUR, and LAKHWINDER KAUR,<br><br>     Plaintiffs,<br><br>v.<br><br>AMERICAN TACTICAL, INC., ANTHONY DICHARIO, JOSEPH CALABRO, SCHMEISSER GMBH, and 365 PLUS D.O.O.,<br><br>     Defendants. | Civil Action No. 2:24-cv-03970-BHH |

**<u>DEFENDANTS AMERICAN TACTICAL, INC.'S, ANTHONY DICHARIO'S, AND JOSEPH CALABRO'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

**SUMMARY OF THE ARGUMENT** ........................................................................................... 1

**BACKGROUND** ...................................................................................................................... 2

**STANDARD OF REVIEW** ....................................................................................................... 4

**ARGUMENT** ........................................................................................................................... 4

I.   THE PLCAA PRECLUDES PLAINTIFFS' CLAIMS ........................................................ 5

A. Purpose of PLCAA .......................................................................................................... 5

B. This Case is a Qualified Civil Liability Action ................................................................. 6

C. The Magazine is a Qualified Product ............................................................................... 7

D. ATI is a Manufacturer or Seller ....................................................................................... 10

E. Plaintiffs' Injuries Resulted from the Criminal Use of a Qualified Product by a Third Party .................................................................................................................................. 10

F. None of the Narrow Exceptions to the Definition of a Qualified Civil Liability Action are Applicable ......................................................................................................................... 10

    1. The Predicate Exception is Inapplicable ..................................................................... 11

        a. The Predicate Exception Recognizes Only Firearms-Specific Statutes ............ 12

        b. Plaintiffs Lack Standing **Because** Their Claims are for Negligence, Personal Injuries, Derivative, and Representative ............................................................... 15

II.  CHOICE OF LAW ............................................................................................................... 17

A. Choice of Law Inquiry ..................................................................................................... 17

III. INDIANA STATUTORY IMMUNITY .............................................................................. 19

IV.  FAILURE TO STATE A CLAIM ........................................................................................ 20

    1. The Complaint Fails to Establish Causation ................................................................ 20

    2. The Complaint Fails to State a Claim Against DiChario and Calabro ......................... 22

    3. Manufacturing and Selling Firearms Is Not a "Public Nuisance" ............................... 23

    4. The Complaint Fails to State a Claim for Negligent Infliction of Emotional Distress on Behalf of Plaintiff Dilpreet Kaur ................................................................................ 25

V.   PLAINTIFFS LACK ARTICLE III STANDING ................................................................ 26

VI.  CALABRO IS NOT SUBJECT TO JURISDICTION IN SOUTH CAROLINA ................ 30

A. Calabro is Not Subject to General Personal Jurisdiction in South Carolina ................... 31

B. Calabro is Not Subject to Specific Personal Jurisdiction in South Carolina ................... 32

    1. Calabro Has Not Purposefully Availed Himself of the Privilege of Conducting Activities in South Carolina ........................................................................................ 33

    2. Plaintiffs' Claims Do Not Arise Out of Any Activities Directed at South Carolina .... 35

    3. The Exercise of Personal Jurisdiction Would Be Constitutionally Unreasonable ........ 36

i

C. Subjecting Calabro to Personal Jurisdiction in South Carolina in This Case would Violated Due Process ................................................................................................ 37

**CONCLUSION** .................................................................................................... 37

# TABLE OF AUTHORITIES

**Cases**

*Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59F.4th 948 (8th Cir. 2023) ......................... 29

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707 (4th Cir.2002) ......................... 31

*Alvarez v. Becerra*, No. 21-2317, 2023 WL 2908819 (4th Cir. Apr. 12, 2023) ......................... 5, 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 4, 20

*Ashmore for Wilson v. Dodds*, 262 F.Supp.3d 341, 358 (D.S.C. 2017) ......................... 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................... 23

*Bennett v. Spear*, 520 U.S. 154 (1997) ........................................................................... 5

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255, (2017) ........................................................................................................... 35

*Brooks v. GAF Materials Corp.*, 41. F.Supp.3d 474 (D.S.C. 2014) ........................... 18

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985) ................................................... 30, 32

*California v. Texas*, 593 U.S. 659 (2021) ........................................................... 27

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta*, 273 F.3d 536 (3d Cir. 2001) ................... 27

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.* ("Carefirst"), 334 F.3d 390 (4th Cir. 2003) ........................................................................................................... 29

*City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099 (Ill. 2004)................................... 26, 27

*City of Gary v. Smith & Wesson*, 126 N.E.3d 813 (Ind. App. Ct. 2019) ......................... 17, 22

*City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 394 (2d Cir. 2008) ......................... 16

*City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415 *(3d Cir. 2002)*......................... 27

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ........................................... 4

*Clarke v. Tango Networks, Inc.*, Civ. A. No. 2:21-cv-00546, 2021 WL 6095328 (S.D. W. Va. Dec. 23, 2021)........................................................................................................... 32

*Clarkson v. Orkin Exterminating Co.*, 761 F.2d 189 (4th Cir. 1985) ......................... 18, 19

*Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 611 S.E.2d 505 (2005) ................................ 30

*Commissioner of Internal Revenue v. Clark*, 489 U.S. 726 (1989) ................................ 16

*Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273 (4th Cir.2009) ................. 31, 32, 33, 34

*Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104 (Ind. 2002) ................................ 23

*Dawkins v. Sell*, 865 S.E.2d 1 (S.C. Ct. App. 2021) ................................ 23

*Dawkins v. State*, 306 S.C. 391 (1991) ................................ 20

*Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3 (1975) ................................ 20

*Deal v. United States*, 508 U.S. 129 (1993) ................................ 16

*Episcopal Church in S.C. v. Church Ins. Co. of Vermont*, 997 F.3d 149 (4th Cir. 2021) ............. 4

*ESAB Group, Inc. v. Centricut, LLC*, 34 F.Supp.2d 323 (D.S.C.1999) ................................ 30, 33

*Fast Eddie's v. Hall*, 688 N.E.2d 1270 (Ind. Ct. App. 1997) ................................ 23, 24

*Foster v. Arletty 3 Sarl*, 278 F.3d 409 (4th Cir.2002) ................................ 30

*Gibson v. Gross*, 280 S.C. 194, 311 S.E.2d 736 (Ct. App. 1983) ................................ 24

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ................................ 29

*Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*, 403 S.C. 623, 743 S.E.2d 808 (2013) ................................ 18

*Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408 (1984) ................................ 29

*Helsel v. Hoosier Ins. Co.*, 827 N.E.2d 155 (2005) ................................ 27

*Hunt v. Rabon*, 272 S.E.2d 643 (1980) ................................ 25

*Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009) ................................ 16, 17

*In re Academy, Ltd.*, 625 S.W.3d 19 (Tex. 2021) ................................ 10

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ................................ 29, 31

*Kashdan v. George Mason Univ.*, 70 F.4th 694 (4th Cir. 2023) ................................ 7

*Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009) ................................ 5

iv

*Kinard v. Augusta Sash & Door Co.*, 336 S.E.2d 465 (1985) ...................................... 28

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ........................................ 20

*KS&E Sports v. Runnels*, 72 N.E.3d 892 (Ind. 2017) ................................................. 22

*Locklear v. Se. Stages, Inc.*, 193 S.C. 309, 8 S.E.2d 321 (1940) ................................. 24

*Lokhova v. Halper*, 995 F.3d 134 (4th Cir. 2021).......................................................... 7

*Lowy v. Daniel Defense, LLC*, 2024 WL 3521508 (E.D. Va. 2024) ...................... 5, 6, 8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................ 4, 5

*Nichols v. G.D. Searle & Co.*, 991 F.2d 1195 (4th Cir.1993)....................................... 30

*Oshiek v. Oshiek*, 244 S.C. 249 (1964) ...................................................................... 20

*Penelas v. Arms Tech., Inc.*, 778 So. 2d 1042 (Fla. Dist. Ct. App. 2001) .................... 27

People ex rel. Spitzer v. *Sturm, Ruger & Co.*, 761 N.Y.S.2d 192 (N.Y. App. Div. 2003)........... 27

*Perry v. Nat'l Assoc. of Home Builders of the U.S.*, Civ. A. No. TDC-20-0454, 2020 WL 5759766 (D. Md. Sept. 28, 2020) ......................................................................... 32

*Plowman v. Bagnal*, 450 S.E.2d 36 .......................................................................... 25

*Prescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1175 (D. Nev. 2018)................. 10, 12

*Rauton v. Pullman Co.*, 183 S.C. 495 (1937) ............................................................. 20

*Reynolds v. Ryland Group, Inc.*, 531 S.E.2d 917 (2000)....................................... 18, 19

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765 (4th Cir. 1991) . 5

*Rogers v. Lee*, 414 S.C. 225, 777 S.E.2d 402 (S.C. Ct. App. 2015)...................... 20, 21

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280 (2025) .................... 5

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26 (1976)................................. 4, 5

*State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719 (Okla. 2021)...................... 26

*State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 414 S.C. 33, 777 S.E.2d 176 (2015) ................................................................................................... 18

*State, Civil Rights Comn'n v. County Line Park, Inc.*, 738 N.E.2d 1044 (Ind. 2000) .................. 25

*Stern v. Shelley*, 781 F.Supp.2d 281 (D.S.C. 2011) .......................................................... 20

*Stover v. O'Connell Assoc., Inc.*, 84 F.3d 132 (4th Cir. 1996) ...................................... 29

*Thornton v. Cessna Aircraft Co.*, 886 F.2d 85 (4th Cir. 1989)...................................... 20

*Umbro USA, Inc. v. Goner*, 825 F.Supp. 738 (D.S.C.1993) ........................................... 30

*United States v. Hayes*, 555 U.S. 415 (2009) ............................................................... 17

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................................................................ 5

*World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ....................... 30, 31

*Wright v. Craft*, 372 S.C. 1, 640 S.E.2d 486 (S.C. Ct. App. 2006) ............................... 18

**Statutes**

15 U.S.C. § 7901 ....................................................................................................... 9, 15

15 U.S.C. §§ 7902 ........................................................................................................ 8, 9

15 U.S.C. § 7903 ....................................................................................................... passim

27 C.F.R. § 478.11 ......................................................................................................... 10

Ind. Code § 34-12-3-3 ............................................................................................... 20, 21

Ind. Code § 34-12-3-5 ................................................................................................... 21

S.C. Code Ann. § 36-2-802 ....................................................................................... 28, 29

S.C. Code Ann. § 36–2–803 ........................................................................................... 29

U.S. Const. amend. XIV § 1 ........................................................................................... 28

**Other Authorities**

151 CONG. REC. E2162-63 (2005) ................................................................................. 16

BLACK'S LAW DICTIONARY (11th ed. 2019) ................................................................... 14

RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM § 8 cmt. G (2020) ........................... 25

Timothy D. Lytton, *Tort Claims against Gun Manufacturers for Crime-Related Injuries: Defining a Suitable Role for the Tort System in Regulating the Firearms Industry*, 65 Mo. L. Rev. at 6-50 2000) ....................................................................................................................... 15

## SUMMARY OF THE ARGUMENT

Plaintiffs are the representative of the estate of one person murdered and two persons injured during an April 15, 2021, criminal shooting at a FedEx facility in Indianapolis, Indiana. They filed this lawsuit to hold American Tactical, Inc. ("ATI"), the U.S. importer of one of the magazines allegedly used by the shooter in one of his rifles, as well as its President Anthony DiChario, and one of its employees, Joseph Calabro, liable for their damages. Plaintiffs' claims are without merit and should be dismissed at the pleading stage on the following grounds:

**First**, Plaintiffs' claims are barred by federal law, the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. §§ 7901-03, which prohibits claims against federally licensed firearms manufacturers and sellers resulting from the criminal or unlawful misuse of firearms, ammunition, and component parts of firearms by third parties.

**Second**, South Carolina's conflict of laws rules directs the application of the substantive law of Indiana to Plaintiffs' claims; and Indiana has its own immunity statute, Ind. Code § 34-12-3, that mandates the dismissal of Plaintiffs' claims.

**Third**, in addition to the federal and state immunity statutes barring all of Plaintiffs' causes of action, they should also be dismissed for lack of causation as a matter of law under either South Carolina or Indiana substantive law.

**Fourth**, the individual claims against DiChario and Calabro should be dismissed because there are no factual allegations establishing that they personally committed a tortious act that could serve as a basis to hold them individually liable.

**Fifth**, Plaintiffs' nuisance-based causes of action must be also dismissed based on precedent that such claims are legally untenable related to the sale of lawful, non-defective products.

1

**Sixth**, Plaintiff Dilpreet Kaur cannot maintain a Negligent Infliction of Emotional Distress claim under the laws of Indiana or South Carolina, because she was not a bystander present at the scene of the shooting.

**Seventh**, Plaintiffs lack Article III standing because multiple actors not before this court are alleged to be involved in the chain of causation, and Plaintiffs have failed to allege that their injuries are fairly traceable to the actions of Defendants.

**Eighth**, the claims against Calabro should be dismissed for lack of personal jurisdiction because the South Carolina Rules of Civil Procedure do not authorize the exercise of personal jurisdiction over him as a resident of the State of New York and the exercise of personal jurisdiction over him in this Court would violate due process.

## BACKGROUND

On April 15, 2021, thirteen people were shot with eight killed during an attack by a 19-year-old male ("Shooter").[1] *See* ECF Doc. 53, Second Amended Complaint ¶ 20. The Shooter allegedly used two semi-automatic "AR-15 style" firearms, and numerous magazines including a "60-round Schmeisser" magazine ("Magazine") to commit his crimes. *Id.* ¶¶ 20–21. It is undisputed that the sale and possession of the Magazine, with its 60-round capacity, is legal in both Indiana and South Carolina.

Plaintiffs commenced this action on April 13, 2023, in New York, which was transferred to this Court on July 15, 2024.[2] The Second Amended Complaint ("Sec. Am. Compl." or "Complaint") names numerous defendants, including ATI, its President Anthony DiChario, and one of its employees, Joseph Calabro ("ATI Defendants"). Sec. Am. Compl. ¶¶ 43–51. ATI is a

---

[1] To avoid creating further notoriety for the murderer, his name will not be used in this motion.
[2] Another lawsuit arising from the same shooting and naming the same defendants was filed, *Johal v. American Tactical, Inc., et al.*, No. 2:24-cv-03969-BHH, and is also pending in this Court.

federal firearms licensee ("FFL") and an "importer, manufacturer, and seller of firearms, ammunition, and accessories," with its principal place of business in South Carolina. *Id.* ¶¶ 43–47. DiChario is alleged to be the "President of Defendant American Tactical." *Id.* ¶ 48. The sole basis for claims against him personally is that he "is aware of or ultimately approves American Tactical's marketing." *Id.* Calabro is alleged to be "the Director of Marketing and Purchasing for American Tactical." *Id.* ¶ 50. The sole basis for claims against him personally is that "he oversees and directs American Tactical's marketing, including on its social media platforms." *Id.*

Plaintiff Gurinder Singh Bains, as personal representative of the Estate of Jaswinder Singh, asserts causes of action against the ATI Defendants for: negligence; wrongful death; public nuisance; and "wrongful death in re: public nuisance." Sec. Am Compl. ¶¶ 171–217; 236–52. Plaintiffs Harpreet Singh, Dilpreet Kaur, and Lakhwinder Kaur each assert causes of action against the ATI Defendants for: negligence; public nuisance; and negligent infliction of emotional distress. *Id.* ¶¶ 271–304; 323–69; 386–400.

The Complaint alleges that Plaintiff Decedent Jaswinder Singh was working at the FedEx facility where the intentional criminal shooting took place, was shot by the Shooter, and died as a result of the gunshot wound. Sec. Am. Compl. ¶ 24. Plaintiff Gurinder Singh Bains is the Personal Representative of the Estate of Jaswinder Singh, and is the surviving son of Jaswinder Singh. *Id.* at ¶ 39. Plaintiff Harpreet Singh was also working at the FedEx facility when a bullet fired by the Shooter struck him in the head. *Id.* at ¶ 25. There is no allegation that Plaintiff Dilpreet Kaur, Harpreet Singh's wife, was present at the FedEx facility when her husband was shot. Plaintiff Lakhwinder Kaur was working at FedEx "when a bullet shot past her lacerating her left arm." *Id.* at ¶ 26.

3

As will be shown below, all causes of action brought against the ATI Defendants must be dismissed, as even assuming all well-pled factual allegations are true, the claims do not survive a legal analysis.

## STANDARD OF REVIEW

On a motion to dismiss, a court need not accept "conclusory statements" unsupported by any concrete factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Eastern Shore Mkts. Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000) (A court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). The allegations must show that the defendant's liability is actually "plausible," not merely "conceivable." *Ashcroft*, 556 U.S. at 678-80. If the facts alleged are "merely consistent with" liability, then the case must be dismissed. *Id.* at 678. This standard requires more than "the defendant unlawfully harmed me accusations." *Id.* Under this standard, a complaint must contain sufficient factual matter that is plausible on its face. *Id.* A plaintiff's claim is facially plausible when the plaintiff pleads facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 663. In other words, facial plausibility requires more than a "sheer possibility that a defendant has acted unlawfully," *id.* at 678, and requires that the complaint "contain more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint may be dismissed pursuant to Rule 12(b)(6) if it offers mere labels and conclusions, naked assertions, or a formulaic recitation of the elements of a cause of action. *Ashcroft*, 556 U.S. at 678.

## ARGUMENT

## I.   THE PLCAA PRECLUDES PLAINTIFFS' CLAIMS

### A.  Purpose of the PLCAA

The PLCAA, which was enacted on October 26, 2005, prohibits the institution of a "qualified civil liability action" in any state or federal court. 15 U.S.C. §§ 7902(a). One of the stated purposes of the PLCAA is to "prohibit causes of action against manufacturers . . . of firearms or ammunition products … for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended." *Id.* § 7901(b)(1). The following are among several explicit findings that Congress made regarding the necessity to enact the PLCAA:

- Lawsuits have been commenced against manufacturers, distributors, dealers and importers of firearms that operate as designed and intended which seek money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals.

- The manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by Federal, State, and local laws.  Such Federal laws include the Gun Control Act of 1968, the National Firearms Act, and the Arms Export Control Act.

- Businesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products that have been shipped or transported in interstate or foreign commerce are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended.

*Id.* §§ 7901(a)(3)-(5). Based upon the above findings, and to achieve the above purpose, the PLCAA prohibits the filing of a qualified civil liability action in any state or federal court.

The U.S. Supreme Court recently addressed the scope and purpose of the immunity provided by the PLCAA in a unanimous decision in the case of *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280 (2025) ("*S&W*"). In the *S&W* case, Mexico sued several firearms manufacturers claiming that they "aided and abetted unlawful sales routing guns to

Mexican drug cartels." *Id.* at 284-85. The Supreme Court unanimously held that the PLCAA is an immunity statute that Congress enacted for the "core purpose" of:

> halt[ing] a flurry of lawsuits attempting to make gun manufacturers pay for the downstream harms resulting from misuse of their products. In a "findings" and "purposes" section, Congress explained that PLCAA was meant to stop those suits—to prevent manufacturers (and sellers) from being held "liable for the harm caused by those who criminally or unlawfully misuse firearm[s]."

*Id.* at 298 (internal citation omitted).

> The Supreme Court summarized Mexico's claims as asserting a:

> variety of tort claims against the defendants, mostly sounding in negligence. The basic theory is that the defendants failed to exercise "reasonable care" to prevent trafficking of their guns into Mexico, and so are responsible for the harms arising there from the weapons' misuse.

*S&W*, 605 U.S. at 287. The Supreme Court summarily concluded "[t]hat theory, as all agree, runs straight into PLCAA's general prohibition" and, therefore, "Mexico's action, that is, seeks to hold firearms manufacturers liable for 'the criminal or unlawful misuse' of guns by third parties—and so, according to PLCAA, 'may not be brought.'" *Id.* at 287-88 (citing 15 U.S.C. §§ 7902(a), 7903(5)(A)). The Supreme Court determined that because Mexico's claims at the pleading stage did not plausibly allege that an exception to the PLCAA applied, the "defendant manufacturers retain their PLCAA-granted immunity." *Id.* at 299; *see also id.* at 301 (describing the PLCAA as providing a "general grant of immunity") (Jackson, J., concurring).

### B. This Case is a Qualified Civil Liability Action

As defined by the PLCAA, a "qualified civil liability action" is a "civil action . . . brought by any person against a manufacturer or seller . . . of a qualified product . . . for damages, punitive damages, injunctive or declaratory relief, or penalties or other relief resulting from the criminal or unlawful misuse of a qualified product by . . . a third party . . ." 15 U.S.C. § 7903(5)(A). Based on the allegations in the Complaint, this case is a civil action brought by persons (Plaintiffs) against

a manufacturer or seller (the ATI Defendants) of a qualified product (the Magazine - a component part of a firearm) for damages resulting from the criminal or unlawful misuse of a qualified product (the intentional shooting of Plaintiffs and Jaswinder Singh using firearms, ammunition and/or the Magazine) by a third party (the Shooter).

### C.  The Magazine is a Qualified Product

The PLCAA defines a "qualified product" as a firearm, ammunition, "<u>or a component part of a firearm</u> or ammunition, that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4) (emphasis added). A "component part" of a firearm is one that is integral to its proper function. *See Prescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1175, 1189 (D. Nev. 2018) (holding that an aftermarket stock is a qualified product as defined by the PLCAA). Just like a trigger, bolt, hammer, or barrel, a magazine for a semi-automatic firearm is unquestionably a component part of such a firearm. *See In re Academy, Ltd.*, 625 S.W.3d 19, 29 (Tex. 2021) ("As explained, both firearms and magazines (along with other component parts) are 'qualified products' subject to the PLCAA's general prohibition against qualified civil liability actions…"). The ATF defines a "semiautomatic rifle" as "any repeating rifle which utilizes a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge." *See* 27 C.F.R. § 478.11. Without a magazine, there is no "next round" available to be chambered, and the "semi-automatic" design feature of such a rifle will not function; the rifle simply becomes a single shot rifle. In *Prescott*, the court found that "a 'stock' is a component part" because it "is an integral component of a rifle as it permits the firearm to be fired from the shoulder."  341 F. Supp. 3d at 1189. Just like there is no "rifle" without a "stock," there is no "semi-automatic" function without a magazine.

The *Prescott* court further relied upon ATF's definition and guidebook to support its conclusion. Relevant provisions in the regulations adopted by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") pursuant to the GCA and publications by the ATF also confirm what should be a simple conclusion: that magazines, grips, and sights are component parts of firearms. For example, only firearms deemed to be "particularly suitable for or readily adaptable to sporting purposes" are generally eligible for importation for sale to the consumer market. 18 U.S.C. § 925(d)(3). Pursuant to that statute, the ATF published a list of twenty parts used to assemble a semiautomatic rifle, no more than ten of which can be imported, unless the rifle as assembled is importable based on the sporting purposes test. 27 C.F.R. § 478.39. The parts of a semiautomatic rifle identified in that regulation include pistol grips, forearms, handguards, magazine bodies, magazine followers, and magazine floorplates. *Id.* §§ 478.39(c)(16)-(20).

Plaintiffs claim that a magazine is an "accessory used to store and feed ammunition in semi-automatic and automatic guns." Sec. Am. Compl. ¶ 3. However, this use of the term "accessory" belies a magazine's integral function with any semi-automatic firearm. Further, the PLCAA does not use the term "accessories," or distinguish parts of a firearm as either "component parts" covered by the immunity it provides, or "accessories" that are not covered by its provisions. Plaintiffs' use of the term "accessories" is a transparent attempt to evade the broad immunity provided to manufacturers and sellers of firearms and component parts for firearms pursuant to the PLCAA. The fact that Congress included the term "component part" within the definition of "qualified product" makes clear that it intended to ensure that the PLCAA broadly covers the very types of items at issue in this case, otherwise it would have limited the definition of a qualified product to items that in and of themselves are defined as "firearms."

Since a magazine "feeds" ammunition into a rifle, it clearly cannot function properly without it. If you remove the tires from a car, you can still start the motor, listen to the radio and put on the air conditioner, but you cannot travel any real distance. Removal of the tires has extinguished the primary purpose of the vehicle; thus tires are component parts. If you remove the magazine from an unloaded rifle, you can aim it and pull the trigger, but it will not discharge a round, no matter how many times you cycle the action. Plaintiffs boldly, although incorrectly, claim that an AR-15 rifle "often is, manually loaded one round at a time." Sec. Am. Compl. ¶ 67. Removal of the magazine extinguishes the primary purpose of this rifle; thus a magazine must be a component part. Further, any argument that the Magazine does not qualify as a component part because it is an "after-market" replacement, has been addressed and rejected by the *Prescott* court. There, the court held that the facts that "bump stocks enhance a rifle's operation and are installed after purchase by an end user do not negate the fact that bump stocks are substituted in for the original stock rendering them essential units." 341 F. Supp. 3d at 1189.

The district court's decision in the *Lowy* case provides additional support for the conclusion that magazines are component parts of firearms. There, the court stated, "plaintiffs allege that the magazines and grips manufactured by [certain defendants] are not component parts, excluding those defendants from the PLCAA's protections." *Lowy v. Daniel Defense, LLC*, No. 1:23-cv-1338, 2024 WL 3521508, at *3 (E.D. Va. July 24, 2024), *rev'd in part & vac'd in part on other grounds*, 2026 WL 376731. The plaintiff in *Lowy* believed that the *Prescott* case supported this argument, but the court disagreed and found that Prescott stands for the proposition that essential parts like stocks and magazines are "component parts." *Id*. The court held, "when a firearm user substitutes the original components of their firearm for defendants' magazines and grips,

defendants' magazines and grips then become component parts of the newly assembled firearm." *Id*. (citing *Prescott*, 341 F. Supp. at 1189).

Here, the Magazine was allegedly substituted for an original component part rendering it an "essential unit" of the rifle.

### D.  ATI is a Manufacturer or Seller

Plaintiffs allege that ATI is an "importer, manufacturer, and seller of firearms, ammunition, and accessories." Sec. Am. Compl. ¶ 44. As such, ATI is a "manufacturer or seller" pursuant to the PLCAA. See 15 U.S.C. § 7903(6).

### E.  Plaintiffs' Injuries Resulted from the Criminal Use of a Qualified Product by a Third Party

On April 15, 2021, several people were murdered and others injured through the intentional and criminal acts of the Shooter. Sec. Am. Compl. ¶¶ 18–26. The Shooter used two semi-automatic "AR-15 style" firearms, one of which was allegedly equipped with the Magazine. *Id.* ¶¶ 20–21. As such, Plaintiffs' damages all arise out of the criminal use of qualified products – firearms, ammunition, and component parts of a firearm – including the Magazine, by a third party.

### F.  None of the Narrow Exceptions to the Definition of a Qualified Civil Liability Action are Applicable

Because Plaintiffs' Complaint is a qualified civil liability action, it must be dismissed unless an enumerated exception applies. There are six narrow categories of claims that the PLCAA does not bar. *See* 15 U.S.C. § 7903(5)(A). Based on the allegations and causes of action set forth in the Complaint,[3] the only exception that could potentially be applicable to Plaintiffs' claims is the exception for:

---

[3] None of Plaintiffs' causes of action, negligence, public nuisance, and negligent infliction of emotional distress claims, are enumerated exceptions to the PLCAA, so those must be dismissed,

> an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought…

*Id.* § 7903(5)(A)(iii) (commonly referred to as the "predicate exception"). This exception, however, does not apply to Plaintiffs' claims and the ATI Defendants for multiple reasons.

### 1. The Predicate Exception is Inapplicable

The so-called "predicate exception" allows a manufacturer or seller of firearms to be sued if it "**knowingly** violated a State or Federal statute applicable to the sale or marketing of [firearms, ammunition, or component parts for firearms of ammunition], and the violation was a proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii). It is undisputed that the sale and possession of the Magazine was legal in Indiana at the time of the Incident, as well as being legal in South Carolina. Thus, Plaintiffs resort to citing to South Carolina's Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. §§ 39-50-20(a), and Indiana Code § 32-30-6-6 as the only statutes allegedly violated by the ATI Defendants. Sec. Am. Compl ¶¶ 103–4. However, neither are sufficient to implicate the predicate exception because they are not tailored to regulate the sale or marketing of firearms.

SCUTPA is a generalized consumer protection statute and Indiana Code § 32-30-6-6 is a codified nuisance statute. The PLCAA specifically identifies the types of firearm-specific statutes Congress considered "applicable to" the sale and marketing of firearms when it enacted the law. It identifies laws:

- Requiring manufacturers and sellers to keep "record[s] . . . with respect to [firearms]." 15 U.S.C. § 7903(5)(A)(iii)(I).

---

and an analysis of the predicate exception is not required. However, even if the Court finds that a predicate exception analysis is required, it is inapplicable based on the claims and the alleged predicate acts.

- ▪ Prohibiting manufacturers and sellers from aiding, abetting, or conspiring with any person in making a "false or fictitious . . . statement" that is "material to the lawfulness of the sale or other disposition of a [firearm]." *Id*.

- ▪ Prohibiting manufacturers and sellers from aiding, abetting, or conspiring with anyone "to sell or otherwise dispose of a [firearm], knowing, or having reasonable cause to believe, that the actual buyer of the [firearm] was prohibited from possessing or receiving a firearm." *Id*. § 7903(5)(A)(iii)(II).

To satisfy the predicate exception, an action must not only be based on an "applicable" firearms statute, but a plaintiff must also show that a defendant knowingly violated a state or federal statute that "appli[es]" specifically to the "sale or marketing of [firearms, ammunition, or component parts for firearms of ammunition]." 15 U.S.C. § 7903(5)(A)(iii). The PLCAA does not permit claims to survive based on generally applicable laws, such as public nuisance and consumer-protection statutes, because those are the exact types of claims that the PLCAA was enacted to foreclose.

### a) The Predicate Exception Recognizes Only Firearms-Specific Statutes

The plain text, structure, and context of the PLCAA show that the predicate exception applies only to knowing violations of firearms-specific laws, not laws of general applicability. Read in isolation, there are only two textually permissible readings of a "statute applicable to the sale or marketing of" firearms. 15 U.S.C. § 7903(5)(A)(iii). First, it could refer broadly to all laws that are "[c]apable of being applied" to firearms sales and marketing. BLACK'S LAW DICTIONARY (11th ed. 2019). Or, more narrowly, the term "applicable" could mean—especially in reference to "a rule, regulation, law, etc."—"affecting or relating to a particular person, group, or situation; having direct relevance." *Id*. On this reading, the predicate exception applies only to claims under laws that specifically regulate firearms *in particular*.

A broad reading of the predicate exception would allow precisely the type of claim that Congress sought to bar when it enacted the PLCAA. Congress noted with disapproval that various

"[l]awsuits ha[d] been commenced" seeking to hold firearms companies liable for "harm caused by the misuse of firearms by third parties, including criminals." 15 U.S.C. § 7901(a)(3). The lawsuits that had been commenced at the time were based on generally applicable statutes prohibiting "negligent marketing," "public nuisance," and "deceptive trade practices." *See* Timothy D. Lytton, *Tort Claims against Gun Manufacturers for Crime-Related Injuries: Defining a Suitable Role for the Tort System in Regulating the Firearms Industry*, 65 Mo. L. Rev. at 6-50 2000).

When the predicate exception is read in context, with the intent of Congress considered, the narrower meaning of "applicable" is clearly the right one. It is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *Deal v. United States*, 508 U.S. 129, 132 (1993). Here, all of the relevant context—including the statutory structure, purpose, and history—confirm that the predicate exception is narrowly limited to firearms-specific laws.

The Second Circuit reached this conclusion that the predicate exception applies only to statutes specifically regulating the sale or marketing of firearms, explaining that the predicate exception cannot refer to all general laws that are merely "capable of being applied," because that would make the exception "far too[]broad." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 394, 403 (2d Cir. 2008). It "would allow the predicate exception to swallow the statute, which was intended to shield the firearms industry from vicarious liability for harm caused by firearms that were lawfully distributed into primary markets." *Id*. Avoiding this type of nonsensical result is exactly why the Supreme Court has instructed courts to "read [statutory] exception[s] narrowly in

13

order to preserve the primary operation of" the general rule. *Commissioner of Internal Revenue v. Clark*, 489 U.S. 726, 739 (1989).

One lawsuit that Congress focused on, in particular, involved statutory claims for public nuisance and negligence in California. *See Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009) (noting that Congress considered "this very case as the type of case they meant the PLCAA to preempt"); *see, e.g.*, 151 CONG. REC. E2162-63 (2005) (statement of Rep. Stearns) (describing as a "predatory lawsuit" the "case of *Ileto v. Glock*"); *id.* 19135 (statement of Sen. Craig) ("Another example of a lawsuit captured by this bill is the case of *Ileto v. Glock*."). In *Ileto*, a case arising out of a highly publicized mass shooting, plaintiffs argued that California's statutory tort laws sufficed as predicate statutes to avoid dismissal based on the PLCAA. 565 F.3d at 1136. The Ninth Circuit disagreed and concluded that the predicate exception cannot sensibly be interpreted to "cover[] all state statutes that *could be applied* to the sale or marketing of firearms." *Id.* at 1135-36 (emphasis in original). That would violate the cardinal rule that statutory provisions should not be read in a way that "would frustrate Congress' manifest purpose." *United States v. Hayes*, 555 U.S. 415, 427 (2009).

Thus, based on persuasive authority from the Second Circuit in *City of New York* and the Ninth Circuit in *Ileto*, this Court should find that SCUTPA and Indiana's public nuisance statute cannot be considered firearm specific statutes capable of meeting the predicate exception.[4] If the Court reaches this conclusion, it need not proceed further, and should grant Defendants' motion because the PLCAA applies and no exception is available to save Plaintiffs' case.

---

[4] Defendants acknowledge that there is non-binding precedent in Indiana from an intermediate state appellate court holding that Indiana Code § 32-306-6 does suffice to meet the predicate exception. *City of Gary v. Smith & Wesson*, 126 N.E.3d 813, 832-34 (Ind. App. Ct. 2019). But that intermediate state appellate court decision was based on a pre-PLCAA decision by the Indiana Supreme Court.

14

### b) A Violation of SCUTPA Cannot Support a Predicate Act Violation

Even if this Court finds that SCUTPA's Section 39-50-20(a) can be a statute satisfying the predicate exception, it still fails to qualify as the basis of the PLCAA's predicate exception in this case because these Plaintiffs cannot bring claims under SCUTPA. SCUTPA does not include claims for negligence, it does not allow for the recovery of personal injury related damages, and Plaintiffs lack privity with the ATI Defendants.

To prevail on a claim under SCUTPA, a plaintiff must establish that "(1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected [the] public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *See Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*, 403 S.C. 623, 743 S.E.2d 808, 816 (2013) (quoting *Wright v. Craft*, 372 S.C. 1, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006)). "An unfair trade practice has been defined as a practice which is offensive to public policy, or which is immoral, unethical, or oppressive." *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 414 S.C. 33, 777 S.E.2d 176, 188 (2015) (citation and internal quotation marks omitted). "A deceptive practice is one which has a tendency to deceive." *Id.* "Whether an act or practice is unfair or deceptive within the meaning of the SCUTPA depends upon the surrounding facts and the impact of the transaction on the marketplace." *Id.*

Negligence cannot serve as a basis for a SCUTPA action. *See Clarkson v. Orkin Exterminating Co.*, 761 F.2d 189, 191 (4th Cir. 1985) (The Fourth Circuit Court of Appeals, applying South Carolina law, ruled that negligence cannot serve as the basis for a SCUTPA action). In addition, personal injuries are not recoverable under the SCUTPA. Pursuant to S.C. Code Ann. § 39-5-140, a private party may only bring an action under SCUTPA as a result of "any

ascertainable loss of money or property, real or personal." The Act plainly provides for the redress of economic loss or property damage and excludes any recovery for intangible personal injury. In fact, the South Carolina Supreme Court has recognized that our unfair trade practices act, unlike some other states' acts, does not allow for the recovery of damages for personal injury. *Reynolds v. Ryland Group, Inc.*, 531 S.E.2d 917, 921, n.1 (2000) (Stating that the Massachusetts [consumer protection] act is broader than SCUTPA in that it permits recovery for personal injury, as well as loss of money or property).

Finally, SCUTPA does not allow claims where the plaintiff lacks any privity to the seller or purchaser. *See Brooks v. GAF Materials Corp.*, 41. F.Supp.3d 474, 487 (D.S.C. 2014) (holding that the manufacturer was entitled to summary judgment on plaintiffs' SCUTPA claim because plaintiffs "neither purchased Timberline 30 shingles nor received any direct communications from [the manufacturer] regarding the duration of the shingles that they did purchase.") A proper plaintiff must have either purchased the product from the defendant or at least seen the offending advertisements.

Here, Plaintiffs allege that ATI "marketed and designed the magazine in a way that foreseeably attracted and enabled dangerous individuals like the Shooter" (Sec. Am. Compl. Sec. "C," p. 18), and that "the Shooter would not have selected or utilized the [Magazine] in the attack but for the Defendants' unfair, negligent or unlawful design, marketing, or sales practices" (Sec. Am. Compl. ¶ 33). Setting aside the first two elements of a SCUTPA claim for purposes of this motion only, and whether these allegations are accurate, all of which are categorically denied, any such acts cannot be causally related to the Shooter using rifles and other magazines from other sources to intentionally shoot and murder multiple people. There is just no way for Plaintiffs' to

adequately allege that they "suffered monetary or property loss **as a result of** the defendant's unfair or deceptive act."

Further, Plaintiffs' claims are for personal injuries based on theories of negligence, and thus, are not covered by SCUTPA. *See Clarkson*, 761 F.2d at 191; *see also Reynolds*, 531 S.E.2d at 921, n.1. Moreover, as Plaintiffs admit, the Shooter was the purchaser and user of the Magazine — not the Plaintiffs or their decedent. Thus, Plaintiffs fail to allege that they purchased any products from ATI or that they received any direct communications from ATI with the alleged deceptive claims. This lack of privity between the Plaintiffs and the ATI Defendants is fatal to the use of SCUTPA as a predicate act.

Therefore, for the reasons enumerated above, Plaintiffs cannot sustain claims under SCUTPA, and as such, any violation of SCUTPA by the ATI Defendants cannot be the proximate cause of Plaintiffs' harm, a critical element to meet the predicate exception.

For the foregoing reasons, the PLCAA applies to the claims and causes of action in this case, no exception to the application of the immunity provisions of the PLCAA apply, and therefore, this case must be dismissed as being prohibited by federal law.

## II. CHOICE OF LAW

Indiana law precludes Plaintiffs' claims, as such, a choice of law analysis is required.

### A. Choice of Law Inquiry

Federal courts considering diversity cases are to apply the choice of law rules established by the law of their forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 4-5 (1975).

For tort claims, South Carolina's choice of law principles follows the *lex loci delicti* rule for substantive law (i.e., the law of the state where the injury occurred applies) and the *lex fori* rule

for procedural law (i.e., the law of the forum applies). *See Ashmore for Wilson v. Dodds*, 262 F.Supp.3d 341, 358 (D.S.C. 2017); *see also Stern v. Shelley*, 781 F.Supp.2d 281, 284 (D.S.C. 2011) (citing *Thornton v. Cessna Aircraft Co.*, 886 F.2d 85, 87 (4th Cir. 1989)). Under the *lex loci delicti* doctrine, "the law of the place where the injury was occasioned or inflicted, governs in respect of the right of action, and the law of the forum in respect to matters pertaining to the remedy only." *see Rauton v. Pullman Co.*, 183 S.C. 495, 501 (1937); *see also Oshiek v. Oshiek*, 244 S.C. 249 (1964); *see also Dawkins v. State*, 306 S.C. 391 (1991). Applying the South Carolina choice of law rules, the place of wrong is the location where the injury occurred. *Rogers v. Lee*, 414 S.C. 225, 234, 777 S.E.2d 402, 407 (S.C. Ct. App. 2015). Further, South Carolina law provides "*lex loci delicti* is determined by the state in which the injury occurred, not where the results of the injury were felt or where the damages manifested themselves." *Id.* at 231, 777 S.E.2d at 405. Here, Plaintiffs' injuries undoubtedly occurred in Indiana, so the "right of action" falls under Indiana law.

Here, Plaintiffs argue that ATI's allegedly negligent and reckless business practices (i.e., the advertisement and sale of the magazine) that emanated from South Carolina are what caused their respective injuries in Indiana. Sec. Am. Compl. ¶ 7. However, the Magazine was presumably purchased by the shooter in Indiana, whether through a brick-and-mortar store or sold online and shipped to him, and any advertisements the Shooter would have seen for the magazine would have been in Indiana. There are no allegations in the Complaint that the Shooter traveled outside of Indiana to acquire the Magazine. Further, the incident and harm occurred entirely in Indiana, where the Plaintiffs and their families are also located. Under the traditional *lex loci delicti* doctrine, the place of the wrong where the injury occurred and where Plaintiffs' rights vested is Indiana.

Therefore, the substantive laws of Indiana should apply, and Plaintiffs' claims are barred by the Indiana Immunity Statute, as set forth below.

### III. INDIANA STATUTORY IMMUNITY

Pursuant to Ind. Code § 34-12-3-3(2):

> Except as provided in section 5(1) or 5(2) of this chapter, a person may not bring or maintain an action against a firearms or ammunition manufacturer, trade association, or seller for . . . recovery of damages resulting from the criminal or unlawful misuse of a firearm or ammunition for a firearm by a third party.

ATI is an importer, manufacturer and seller of firearms and ammunition, even if not the manufacturer or seller of the firearm or ammunition used during the incident. Sec. Am. Compl., ¶ 44. Under subsection 3(2) of Ind. Code § 34-12-3, the Indiana Immunity Statute unambiguously states "a firearms or ammunition seller" cannot be sued for recovery of damages when "a firearm" is criminally or otherwise unlawfully misused (emphasis added). The statute does not require that the firearm criminally or otherwise unlawfully misused come from the firearm or ammunition seller, otherwise the legislature would have used the word "the" instead of "a" when modifying the word "firearm." In *City of Gary v. Smith & Wesson*, 126 N.E.3d 813 (Ind. Ct. App. 2019), the court held, "we observe that the parties do not dispute that Subsection 3(2) of the Immunity Statute bars recovery of damages resulting from the criminal or unlawful misuse of a firearm by a third party … We therefore affirm the trial court's entry of judgment on the pleadings as to those damages." *Id.* at 827-28 (see also, *KS&E Sports v. Runnels*, 72 N.E.3d 892, 896 (Ind. 2017) (holding that by its plain terms, the Indiana Statute immunizes a firearms seller from a damages suit for injuries caused by another person's misuse of a firearm, regardless of whether the sale was lawful)). The only exceptions to the immunity from suit provided by this statute is for breach of contract or warranty, or based on a claim of a defective firearm or ammunition. *See* Ind. Code § 34-12-3-5. Here, the words "defect," "defective," "warranty," or "contract" never appear in the

19

Complaint. As such, even if the Court were to find that the PLCAA does not extinguish Plaintiffs'

claims, this Indiana statute precludes their claims.

## IV. FAILURE TO STATE A CLAIM

Pursuant to Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of

the claim showing that the pleader is entitled to relief." A complaint does not require detailed

factual allegations, but it does require more than "the defendant unlawfully harmed me

accusations." *Ashcroft*, 556 U.S. at 678. Under this standard, a complaint must contain sufficient

factual matter that is plausible on its face. *Id.* A plaintiff's claim is facially plausible when the

plaintiff pleads facts that allow the court to draw a reasonable inference that the defendant is liable

for the alleged misconduct. *Id.* at 663. In other words, facial plausibility requires more than a

"sheer possibility that a defendant has acted unlawfully," *id*. at 678, and requires that the complaint

"contain more than a statement of facts that merely creates a suspicion of a legally cognizable right

of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint may be dismissed

under Rule 12(b)(6), if it offers mere labels and conclusions, or a formulaic recitation of the

elements of a cause of action. *Ashcroft,* 556 U.S. at 678. Additionally, a complaint may not tender

naked assertions. *Id.*

### 1.  The Complaint Fails to Establish Causation

Under the pleading standards illustrated in both *Iqbal* and *Twombly,* Plaintiffs' claims

should be dismissed pursuant to Rule 12(b)(6) because the Complaint fails to establish causation

as a matter of law. The requirement of causation as an element of liability for a negligent act

includes the requirement that the consequences be foreseeable. *Control Techniques, Inc. v.

Johnson*, 762 N.E.2d 104, 106 (Ind. 2002). A superseding cause that forecloses liability of the

original actor is, by definition, not reasonably foreseeable by a person standing in the shoes of that

actor. *Id.* Proximate cause is a question of law "where only a single conclusion can be drawn from the facts." *Fast Eddie's v. Hall*, 688 N.E.2d 1270, 1274 (Ind. Ct. App. 1997).

Both Indiana and South Carolina courts have found that the "willful, malicious criminal act of a third party" constitutes "an intervening act which breaks the causal chain between the alleged negligence and the resulting harm." *See Fast Eddie's*, 688 N.E.2d at 1274 (holding that a tavern's alleged violation of Dram Shop Act, by serving alcohol to visibly intoxicated patron and assailant, was not proximate cause of assault and murder); *see Dawkins v. Sell*, 865 S.E.2d 1, 8 (S.C. Ct. App. 2021) (holding that the act of a third party driver was a superseding, intervening act which was the proximate cause of plaintiff's injury). If the original tortfeasor's "negligence appears merely to have brought about a condition of affairs, or a situation in which another and entirely independent and efficient agency intervenes to cause the injury, the latter is to be deemed the direct or proximate cause, and the former only the indirect or remote cause." *Gibson v. Gross*, 280 S.C. 194, 197, 311 S.E.2d 736, 739 (Ct. App. 1983) (quoting *Locklear v. Se. Stages, Inc.*, 193 S.C. 309, 318, 8 S.E.2d 321, 325 (1940)).

The Shooter's willful, malicious criminal act constitutes an intervening act which breaks the causal chain because it was not reasonably foreseeable that the ATI Defendants' alleged negligence would result in a criminal shooting. Plaintiffs merely claim that "Defendants' negligent conduct channeled the Magazine into the hands of the Shooter" or somebody like him. Sec. Am. Compl. ¶¶ 18, 176, 191, 275, 327, 344, 390. Even, assuming that the ATI Defendants negligently advertised, marketed, or sold the Magazine, then, at most, the ATI Defendants merely brought about a situation in which another and entirely independent and efficient agency (*i.e.*, the Shooter) intervened to cause the injury, and that intervening act is the direct and proximate cause of the Plaintiffs' harm as a matter of law. Furthermore, as stated by the court in *Fast Eddie's*, "assault

and murder are intentional acts of volition which are the result of an assailant's deliberate design[,]" and, similarly, the Shooter's "criminal intent would have been present" with or without the Magazine. *See* 688 N.E.2d at 1275. Indeed, Plaintiffs acknowledge that the "Shooter armed himself with multiple [magazines]" and "two AR-style rifles with HCMs attached" during the shooting incident. Sec. Am. Compl. ¶ 21, 164. Therefore, the advertisements of this one Magazine cannot be the proximate cause of Plaintiffs' injuries and damages, and Plaintiffs' claims against the ATI Defendants should be dismissed.

**2. The Complaint Fails to State a Claim Against DiChario and Calabro**

Plaintiffs allege that Defendants DiChario and Calabro are liable for their damages based on their respective positions as President and Director of Marketing and Purchasing of ATI. Sec. Am. Compl. ¶¶ 48, 50. However, this is an insufficient basis for imposing liability on corporate officers and employees for the acts of the corporation.

Both Indiana and South Carolina law provide that a director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character. *See Hunt v. Rabon*, 272 S.E.2d 643 (1980); *see also State, Civil Rights Comn'n v. County Line Park, Inc.*, 738 N.E.2d 1044, 1050 (Ind. 2000). A corporate officer is only individually liable for torts they have personally committed. *See Plowman v. Bagnal*, 450 S.E.2d 36, 38 (holding that in private actions under the SCUTPA, directors and officers are not liable for the corporation's unfair trade practices unless they personally commit, participate in, direct, or authorize the commission of a violation of the SCUTPA); *see also State, Civil Rights Comm'n*, 738 N.E.2d at 1050 (holding corporate officers personally liable for directly participating in housing discrimination).

There are no allegations that defendants DiChario and Calabro directly or personally participated in the production of the allegedly negligent advertisements or sale of the Magazine.

Plaintiffs merely allege "upon information and belief" that "DiChario is aware of or ultimately approves American Tactical's marketing" and that Calabro "oversees and directs American Tactical marketing." Sec. Am. Compl. ¶¶ 48, 50. In fact, Plaintiffs acknowledge that "[t]he marketing videos were produced by firearms media production company Polenar Tactical." *Id*. ¶ 123. Any publication of the marketing videos was done by ATI, not personally by DiChario or Calabro. Similarly, Plaintiffs acknowledge that ATI "sells its [magazines] like the Magazine used in the Attack through other online firearms websites, also without any limitations, screening, or further inquiry." *Id.* ¶ 155. Any actions taken by DiChario and Calabro were performed exclusively within the scope of their employment as an officer and employee of ATI. Therefore, they cannot be personally liable for the allegedly negligent acts of ATI.

### 3.  Manufacturing and Selling Firearms Is Not a "Public Nuisance"

While the PLCAA bars public nuisance claims even if an exception is applicable, Plaintiffs' public nuisance cause of action independently fails as a matter of law for failure to state a claim. Sec. Am. Compl. ¶¶ 201-217, 236-252, 288-304, 355-369. The overwhelming weight of authority holds that selling and manufacturing lawful products cannot give rise to a public-nuisance claim, and this case provides no reason to depart from that consensus.

Although various plaintiffs have tried to file public nuisance claims "against the makers of products that have caused harm, such as tobacco, firearms, and lead paint," those claims have been squarely "rejected by most courts . . . because the common law of public nuisance is an inapt vehicle." RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM § 8 cmt. G (2020). A recent example comes from the Supreme Court of Oklahoma, which canvassed the common law and held that the "public nuisance" doctrine does not apply to "the manufacturing, marketing, and selling of lawful products." *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 725 (Okla. 2021)

(rejecting claim against prescription opioid manufacturer). That conclusion is firmly grounded in the common law, which limits public nuisance actions to violations of "public rights," which must be "more than an aggregate of private rights by a large number of injured people." *Id*. at 726. As a result, plaintiffs cannot bring a public nuisance claim based on "individual injuries sustained from use of a lawful product." *Id*. at 727.

Courts have repeatedly applied this principle to the sale and manufacturing of firearms. For example, in *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1116 (Ill. 2004), the Illinois Supreme Court rejected a public-nuisance claim against firearms manufacturers, holding that there is no "public right to be free from the threat that some individuals may use an otherwise legal product (be it a gun, liquor, a car, a cell phone, or some other instrumentality) in a manner that may create a risk of harm to another." *Id*. at 1116. If the rule were otherwise, then "nuisance liability [could] be imposed on an endless list of manufacturers, distributors, and retailers of manufactured products." *Id*. After all, distributing a wide range of products "could be said to contribute to an interference with the public right" to be "free from the threat that others may use a lawful product to break the law." *Id*. But the public-nuisance doctrine cannot rationally extend so far.[5]

As such, this Court should follow the above well-reasoned decisions and dismiss Plaintiffs' public nuisance causes of action.

---

[5] *See also, e.g.*, *City of Philadelphia v. Beretta U.S.A. Corp., 277 F.3d 415, 420-22 (3d Cir. 2002)* ("[T]o extend public nuisance law to embrace the manufacture of handguns would be unprecedented nationwide for an appellate court."); *Camden Cnty. Bd. of Chosen Freeholders v. Beretta*, 273 F.3d 536, 541 (3d Cir. 2001) (same); *People ex rel. Spitzer v. Sturm, Ruger & Co.*, 761 N.Y.S.2d 192, 196 (N.Y. App. Div. 2003) (refusing to give "a green light to a common-law public nuisance cause of action" against firearms manufacturers, which would sweep in "a wide and varied array of other commercial and manufacturing enterprises and activities"); *Penelas v. Arms Tech., Inc.*, 778 So. 2d 1042, 1044-45 (Fla. Dist. Ct. App. 2001) (rejecting public-nuisance claim as "an attempt to regulate firearms and ammunition through the medium of the judiciary").

**4. The Complaint Fails to State a Claim for Negligent Infliction of Emotional Distress on Behalf of Plaintiff Dilpreet Kaur**

Plaintiff Dilpreet Kaur's claim for negligent infliction of emotional distress ("NIED") must be dismissed as a matter of law under either Indiana or South Carolina law.

Indiana recognizes two situations in which a plaintiff may recover for NIED: (1) when the plaintiff has sustained a direct impact by another's negligence and (2) when the plaintiff witnesses or comes upon an accident caused by another's negligence and sustains emotional distress upon learning the accident involves a loved one. *Helsel v. Hoosier Ins. Co.*, 827 N.E.2d 155, 156 (2005).

In South Carolina, a cause of action to recover damages for NIED requires that (a) the negligence of the defendant must cause death or serious physical injury to another; (b) *the plaintiff bystander must be in close proximity to the accident*; (c) the plaintiff and the victim must be closely related; (d) *the plaintiff must contemporaneously perceive the accident*; and (e) the emotional distress must both manifest itself by physical symptoms capable of objective diagnosis and be established by expert testimony. *See Kinard v. Augusta Sash & Door Co.*, 336 S.E.2d 465, 467 (1985) (emphasis added).

According to the Complaint, Plaintiff "Dilpreet Kaur was caused to suffer and will continue to suffer in the future, significant expenses due to her husband's disability as well as a loss of consortium and loss of assistance." Sec. Am. Compl. ¶ 281. There is no allegation that Plaintiff Dilpreet Kaur was present at the FedEx facility when her husband was shot. Plaintiff Dilpreet Kaur has not sustained a direct impact, has not witnessed or come upon an accident involving a loved one, her physical safety was never endangered, and she never feared for her own safety. Plaintiff Dilpreet Kaur was not a bystander to the Incident, was not in close proximity to the shooting, and did not contemporaneously perceive the injury to her husband. Simply put, Plaintiff Dilpreet Kaur

has not met any of the requirements to establish a claim for NIED in either Indiana or South Carolina.

## V. PLAINTIFFS LACK ARTICLE III STANDING

The case or controversy limitation of Article III requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from "the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]here must be a causal connection between the injury and the conduct complained of" by the plaintiff.); *Episcopal Church in S.C. v. Church Ins. Co. of Vermont*, 997 F.3d 149, 158 (4th Cir. 2021) (plaintiff lacked Article III standing because "the causal connection between the alleged harm . . . and the challenged conduct . . . [was] too attenuated," rendering it "purely speculative"). To establish standing under Article III, a plaintiff must allege an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). While a court considering a challenge to standing must accept as true the facts a plaintiff alleges, it need not accept conclusory statements and conclusions of law. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). In the face of a challenge to the factual bases for standing, plaintiff bears the burden of proof. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). As such, all elements of Article III standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defense of Wildlife*, 504 U.S. 555, 561 (1992).

When a plaintiff pleads that a third party's actions bridge the causal chain between a defendant's conduct and plaintiff's injuries, that indirectness "may make it substantially more

difficult to meet the minimum requirement of Art. III." *Warth v. Seldin*, 422 U.S. 490 (1975). *See also California v. Texas*, 593 U.S. 659, 675 (2021) (recognizing that "where a causal relation between injury and challenged action depends upon the decision of an independent third party," standing is "ordinarily substantially more difficult to establish") (citation and quotation marks omitted). Plaintiffs cannot satisfy Article III's causation requirement if their injury resulted "from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 42 (1976). Instead, plaintiffs are required to allege facts sufficient to establish that the defendant's actions either had a "predictable effect" on the decision of the third party who directly caused plaintiff's injury, or a "determinative or coercive effect" on the third party's actions. *Lowy v. Daniel Defense, LLC*, _F.4th _, No. 24-1822, 2026 WL 376731, at *10 (4th Cir. Feb. 11, 2026) (quoting *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019) and *Bennett v. Spear*, 520 U.S. 154, 169 (1997)). The "predictable effect" standard requires plaintiffs to show that "third parties will likely react in predictable ways to" defendant's actions, or that there is a "predictable effect of [defendant's] action on the decisions of third parties." *Dep't of Commerce*, 588 U.S. at 768. The "'determinative and coercive effect' standard is satisfied when the defendant publishes information which leads a third party to conclude that it should proceed in a manner that injures a plaintiff." *Lowy*, 2026 WL 376731, at *12.

In the *Lowy* case, two judges concluded that the plaintiffs had adequately alleged that defendants' advertisements, including advertisements for firearms alleged to be "assault weapons," were at least in part the cause of a twenty-three year old man shooting and injuring two persons at a school in Washington, DC, under both the "predictable effect" and "determinative or coercive effect" standards. 2026 WL 376731, at *1, *10-*15. The third judge dissented, suggesting that the majority let the "tragic facts" alleged in the complaint distract them from their

"responsibility as judges," which "is to follow the law wherever it takes us," and that if they did so, the complaint should be dismissed because such decision, "while sad, is not hard." *Id.* at *18 (Quattlebaum, J. dissenting).

> The dissent succinctly explained that:
>
> Grasping for legal straws, plaintiffs allege that defendants' advertisements caused the disturbed individual not only to buy the weapons and ammunition but also to shoot at students, parents and school employees. The law places a high burden on holding a defendant liable when an independent third party is the last link in an attenuated causal chain between defendants' actions and plaintiffs' injuries. Speculation or guesswork will not do.
>
> But that is all plaintiffs in this case have. They do not allege the disturbed individual even saw defendants' advertisements. They do not explain how the ads caused this individual—even if he saw them—both to buy the guns and ammunition and to commit this horrible crime. Plaintiffs simply make broad and conclusory allegations. Under the law, that is not enough. Plaintiffs fail to plead facts that show their injuries are traceable to defendants' conduct under Article III. But even if they passed that bar, the plaintiffs certainly failed to allege facts that plausibly plead defendants' conduct proximately caused their injuries. Either way, the result is the same—plaintiffs' complaints must be dismissed.

*Lowy*, 2026 WL 376731, at *18.

In the present case, it is Plaintiffs' burden to plead facts sufficient to plausibly allege that ATI's conduct and, more specifically, the two YouTube videos cited in the Sec. Am. Compl., had either a "predictable effect" on the Shooter, "at least in part responsible for" causing him to commit a mass criminal shooting on April 15, 2021, or a "determinative or coercive effect upon" the Shooter, causing him to perpetrate the criminal acts that resulted in Plaintiffs' harm. *Lowy*, 2026 WL 376731 at *10-*11. Plaintiffs have not met this burden based on the factual allegations pled in the Complaint.

Here, Plaintiffs' conclusory allegations in the Complaint that "the Shooter would not have selected or utilized the [Magazine] in the attack but for [ATI's] negligent or unlawful design, marketing, or sales practices," are plainly conclusory and insufficient to attach liability to ATI.

Sec. Am. Compl. ¶ 33. Allegations pled upon information and belief "may not be wholly conclusory." *Kashdan v. George Mason Univ.*, 70 F.4th 694, 701 (4th Cir. 2023). If "not supported by any well-pled facts that exist independent of [plaintiffs'] legal conclusions," allegations pled upon information and belief fail. *Id.* Instead, pleading upon information and belief is only sufficient to "state a claim for relief where the proof supporting the allegation is within the sole possession and control of the defendant or where the belief is based on sufficient factual material that makes the inference of culpability plausible." *Lowy*, 2026 WL 376731, at *14 (quoting *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59F.4th 948, 954 (8th Cir. 2023). Such is the case here: no factual allegations in the Complaint support the conclusion that Shooter relied on ATI's marketing in any aspect. Plaintiffs state, "Upon information and belief, the Shooter watched Defendants' video advertisements." Sec. Am. Compl. ¶ 143. But this allegation appears to be cut from whole cloth, as the paragraphs leading up to this conclusory allegation all discuss the Shooters' propensities, use of YouTube, consumption of other social media, and his attire at the time of the attack to somehow make the leap that the Shooter actually watched these advertisements. *Id.* at ¶¶ 136-142. The Complaint simply speculates that the Shooter, like other "criminals," "played video games," "consumed social media, including YouTube," was "attracted to the Internet" and "watched [ATI's] video advertisements." *Id.* at ¶¶ 138, 143, 152. Without more factual support, these pleadings fail to raise Plaintiffs' right to relief above the speculative level and can proceed no further. *Lokhova v. Halper*, 995 F.3d 134, 148 (4th Cir. 2021) ("It is well established that speculative conclusions are insufficient to survive a motion to dismiss"). Furthermore, Plaintiffs allege that the Shooter "needed the [Magazine] to accomplish his mission" and that "but for [ATI]s] unfair, negligent or unlawful design, marketing, or sales practices" the Shooter would not have used the Magazine in the Attack. Sec. Am. Compl. at ¶¶ 30, 33. However, Plaintiffs contradict

these conclusory allegations by acknowledging that the Shooter armed himself with "multiple HCMs (high-capacity magazines)" during the attack besides the Magazine at issue in this case (*id.* at ¶ 21) as well as multiple rifles (*id.* at ¶ 20). Therefore, even without the Magazine, the reasonable conclusion is that the Shooter still would have committed the Attack.

Plaintiffs have also failed to allege facts showing that the two YouTube videos cited in the Complaint had either a "predictable effect" or a "determinative or coercive effect" on the Shooter such that it caused him to commit his horrendous criminal act. Plaintiffs again make conclusory allegations "upon information and belief" that the Shooter watched ATI's video advertisements and was foreseeably motivated to purchase the Magazine and use it to carry out the Attack. *Id.* at ¶¶ 136-144. According even to Plaintiffs, *maybe* ATI's advertising influenced the Shooter to purchase ATI's Magazine, but nowhere is it alleged that the two YouTube videos posted by ATI had either a predictable effect, or a determinative or coercive effect, on the Shooter's decision to go to the FedEx facility and criminally murder and assault his co-workers.

Plaintiffs, therefore, have failed to allege that their injuries are fairly traceable to any acts or omissions by the ATI Defendants. *Alvarez*, 2023 WL 2908819, at *3. Based upon the foregoing, Plaintiffs lack Article III standing and the case should be dismissed under Rule 12(b)(1).

## VI. CALABRO IS NOT SUBJECT TO JURISDICTION IN SOUTH CAROLINA

Plaintiffs originally brought this case in New York hoping to stay a more favorable jurisdiction, and tried to use Defendant Calabro residence as a basis for that filing. Seeing through that effort, the New York court transferred the case to South Carolina. Now, in their Complaint, Plaintiffs allege that Defendant Calabro is subject to personal jurisdiction in South Carolina because he is employed by ATI and "sends all marketing, promotional and advertising materials on which he works to ATI's officials in South Carolina for review and approval before they are

published." Sec. Am. Compl. ¶ 58. They are wrong. Calabro is a resident of New York, however, and works remotely exclusively from New York. Calabro Decl. ¶ 6. Plaintiffs do not attempt to identify the specific provision in the South Carolina Rules of Civil Procedure that they allege authorizes the exercise of personal jurisdiction over Calabro in this case.

A court in South Carolina may exercise general personal jurisdiction over a person domiciled in, organized under the laws of, doing business, or maintaining his or its principal place of business in the state as to any cause of action. *See* S.C. Code Ann. § 36-2-802. Alternatively, a federal district court may exercise specific personal jurisdiction over a foreign defendant if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment, U.S. Const. amend. XIV § 1. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.* ("Carefirst"), 334 F.3d 390, 396 (4th Cir. 2003); *see also Stover v. O'Connell Assoc., Inc.*, 84 F.3d 132, 136 (4th Cir. 1996).

### A. Calabro is Not Subject to General Personal Jurisdiction in South Carolina

Personal jurisdiction over a nonresident defendant can be either specific or general. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction arises when the nonresident defendant's contacts with the forum state "are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). General jurisdiction may be exercised even when the suit is unrelated to the defendant's contacts within the forum state. *See* S.C. Code Ann. § 36-2-802; *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 416 (1984). In this case, Plaintiffs assert that "this case arises out of or relates to [Calabro's] contacts" in South Carolina suggests that Plaintiffs are asserting this Court's *specific* personal

31

jurisdiction. *See* Sec. Am. Compl. ¶ 58. Therefore, Defendants' analysis focuses on specific jurisdiction.

**B.  Calabro is Not Subject to Specific Personal Jurisdiction in South Carolina**

A court may exercise specific jurisdiction when "the out-of-state defendant engage[s] in some activity purposely aimed toward the forum state and ... the cause of action arise[s] directly from that activity." *ESAB Group, Inc. v. Centricut, LLC*, 34 F.Supp.2d 323, 331–32 (D.S.C.1999); *see* S.C. Code Ann. § 36–2–803. Minimal, isolated or unsolicited contacts, however, do not give rise to the required purposeful connection between an out of state defendant and the forum state. *Umbro USA, Inc. v. Goner*, 825 F. Supp. 738, 741 (D.S.C.1993).

A district court may exercise personal jurisdiction "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir.1993). The Supreme Court of South Carolina has interpreted South Carolina's long-arm statute, S.C. Code Ann. § 36–2–803, to extend to the outer limits of Fourteenth Amendment due process. *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir.2002). "Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process." *Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 491, 611 S.E.2d 505, 508 (2005).

The Due Process Clause is satisfied for personal jurisdiction purposes if a defendant has "purposefully availed itself of the privilege of conducting business in the forum state" by establishing sufficient "minimum contacts …such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Burger King v. Rudzewicz*, 471 U.S. 462, 475–76 (1985); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *Int'l Shoe*

*Co. v. Washington*, 326 U.S. 310, 316 (1945). A defendant has sufficient minimum contacts with a state when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Woodson*, 444 U.S. at 297.

The Fourth Circuit has synthesized the due process requirements for asserting specific personal jurisdiction into a three-part test that considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir.2009) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir.2002)). Failure to satisfy any of the three prongs is fatal to a court's ability to exercise specific jurisdiction. *Id.*

### 1. Calabro Has Not Purposefully Availed Himself of the Privilege of Conducting Activities in South Carolina

The requirement of purposeful availment "is not susceptible to mechanical application." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir.2009); *see also Int'l Shoe Co.*, 326 U.S. at 319. However, courts have examined several nonexclusive factors in examining purposeful availment: (1) whether defendant maintains offices or agents in the forum state; (2) whether defendant owns property in the forum state; (3) whether defendant reached into the forum state to solicit or initiate business; (4) whether defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether defendant made in-person contact with the resident in the forum state regarding the business relationship; (7) the nature, quality, and extent of the parties' communications about the business being transacted; and (8) whether the

33

performance of contractual duties was to occur within the forum. *See Consulting Eng'rs Corp.*, 561 F.3d at 278 (internal citations omitted).

In this case, none of the above factors are satisfied. Calabro does not maintain an office in South Carolina; Calabro does not own any property in South Carolina; Calabro did not solicit or initiate business in South Carolina; Calabro has not personally engaged in any significant or long-term business activities in South Carolina besides merely working for a company that happens to be based in South Carolina; Calabro and the Plaintiffs never agreed that the laws of South Carolina, or any state, would govern any disputes; Calabro did not make any in-person contact with Plaintiffs in South Carolina, or anywhere else, regarding any business relationship; Calabro and the Plaintiffs never communicated about any business being conducted in South Carolina, or elsewhere; and Calabro was never to perform any contractual duties within South Carolina. *See* Calabro Decl.

While no precedential decisions were found attempting to haul a remote employee into the court where his employer was based, and unrelated to the employee-employer relationship, multiple courts in this Circuit have repeatedly held that remote employment of a single employee, alone, is insufficient to constitute purposeful availment. *See, e.g.*, *Clarke v. Tango Networks, Inc.*, Civ. A. No. 2:21-cv-00546, 2021 WL 6095328, at *8 (S.D. W. Va. Dec. 23, 2021) ("Mere accommodation of an employee's choice to work remotely cannot alone form the basis of asserting specific jurisdiction.…."); *see also, e.g.*, *Perry v. Nat'l Assoc. of Home Builders of the U.S.*, Civ. A. No. TDC-20-0454, 2020 WL 5759766, at *4–5 (D. Md. Sept. 28, 2020) ("In addressing whether a court may exercise specific jurisdiction over a nonresident employer … a defendant's mere knowledge that an employee happens to reside in the forum state and conduct some work from home does not constitute purposeful availment.…" (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985)).

If an employer cannot be said to have purposefully availed itself of the jurisdiction where a remote employee works, it follows that an employee working remotely from their home state is insufficient on its own to constitute purposeful availment of the employer's forum state. Calabro's remote employment with a South Carolina company is sufficiently random, fortuitous, and attenuated such that it does not support an exercise of this Court's specific jurisdiction over him personally.

**2.  Plaintiffs' Claims Do Not Arise Out of Any Activities Directed at South Carolina**

Assuming arguendo that Calabro purposefully availed himself of the privilege of conducting business in South Carolina, Plaintiffs' claims do not arise out of these activities and any contacts that Calabro has with South Carolina do not form the basis of the suit. *Consulting Eng'rs Corp.*, 561 F.3d at 278–79. "Because a sovereign's jurisdiction remains territorial, to justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that 'they amount to a surrogate for presence and thus render the exercise of sovereignty just.' " *Id.* at 277–78. (quoting *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir.1997)).

In this case, any contacts that Calabro had with South Carolina were, at most, coincidental and insignificant. Plaintiffs attempt to inflate the significance of Calabro's duties for ATI by arguing that "the harm in this case was caused by the Defendants' unethical, oppressive and immoral advertising scheme, which encouraged criminal use of the [Magazine] by focusing on the [Magazine's] assaultive and offensive uses," Sec. Am. Compl. ¶ 7, and because Calabro is the Director of Marketing and Purchasing for ATI, he must be liable for Plaintiffs' harm. This logic fails for several reasons. First, as Plaintiffs observe, ATI advertises, markets and sells the Magazine throughout the United States where the Magazine is legal to possess, including South

Carolina. Plaintiffs do not allege that Calabro and ATI engaged in any "advertising scheme" directed specifically at South Carolina consumers. Second, as Plaintiffs also acknowledge, Calabro submits all marketing, promotional and advertising materials on which he works to ATI's officials in South Carolina for review and approval before they are published. Sec. Am. Compl. ¶ 58. If ATI's offices were in any other state, then Calabro would submit his work there. Thus, any connection to South Carolina is merely coincidental and insignificant. And third, Plaintiffs have offered no well pled allegations of fact that the Shooter viewed an advertisement created, forwarded or approved by Calabro; or that the Shooter viewed such an advertisement in South Carolina, purchased the Magazine in South Carolina, or that the Magazine at issue in this case even passed through South Carolina. To the extent that Calabro's employment with ATI can be considered a "contact" with South Carolina, his employment is not enough to make a *prima facie* showing that the contact was "so substantial that [it] amount to a surrogate … presence." *Consulting Eng'rs Corp.*, 561 F.3d at 277–78 (internal quotation marks omitted).

### 3. The Exercise of Personal Jurisdiction Would Be Constitutionally Unreasonable

Courts consider a number of factors to ensure the reasonableness of the forum. *Consulting Eng'rs Corp.*, 561 F.3d at 279. "Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Id.*

Considering the above factors, it would be constitutionally unreasonable to exercise personal jurisdiction over Calabro in South Carolina based on the allegations in this case. Calabro will incur a burden in litigating this case in South Carolina. He is a citizen and resident of New

York. South Carolina has very little interest in determining how products that are legal in South Carolina are advertised, marketed, and sold in New York, Indiana or any other state. The incident and harm occurred entirely in Indiana, where the Plaintiffs and their families are located. Additionally, the Magazine was presumably purchased by the Shooter in Indiana, whether through a brick-and-mortar store or sold online and shipped to him, and any advertisements he would have seen for the Magazine would have been in Indiana. Finally, South Carolina has no interest in the social policies of Indiana regarding products like the Magazine.

### C. Subjecting Calabro to Personal Jurisdiction in South Carolina in this Case Would Violate Due Process

The Supreme Court has held that the Due Process Clause does not permit the exercise of personal jurisdiction over a defendant when the plaintiffs are not residents of the forum state, do not claim to have suffered harm in that state, and all "conduct giving rise to [their] claims occurred elsewhere." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255, 265 (2017) ("What is needed—and what is missing here—is a connection between the forum and the specific claims at issue."). Using the *Bristol-Myers* analysis, none of the Plaintiffs are residents of South Carolina or claim that they have suffered any harm in South Carolina – or even that they have any connection to South Carolina; Calabro is not a resident of South Carolina; and all of the alleged conduct giving rise to Plaintiffs' claims occurred in Indiana, or arguably in New York if Calabro's work for ATI is somehow considered a connection to their claims. Due process therefore prohibits the exercise of personal jurisdiction over Calabro in South Carolina in connection with the claims in this case.

<u>**CONCLUSION**</u>

For the above reasons, the ATI Defendants respectfully request that this Court grant their motion and dismiss the case in its entirety against the ATI Defendants, and grant such further relief as it deems just and proper.

Dated: February 25, 2026

Respectfully submitted,

ROBINSON GRAY STEPP & LAFFITTE, LLC

By:    */s/ J. Michael Montgomery*
J. Michael Montgomery
ID No. 10290
mmontgomery@robinsongray.com
Post Office Box 11449
Columbia, South Carolina   29211
(803) 929-1400


and

Christopher Renzulli (*pro hac vice*)
Jeffrey M. Malsch (*pro hac vice*)
Justin Gottuso (pro hac vice)
RENZULLI LAW FIRM, LLP
One North Broadway, Suite 1005
White Plains, New York 10601

*Counsel for Defendants American Tactical, Inc., Anthony DiChario, and Joseph Calabro*