# Exhibit A

Electronically Filed
2/8/2022 12:21 PM
Steven D. Grierson
CLERK OF THE COURT

TRAN

DISTRICT COURT
CLARK COUNTY, NEVADA
* * * * *

| | | |
|---|---|---|
| DION GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. A-21-838762-C |
| | ) | DEPT NO. XXIX |
| vs. | ) | |
| | ) | |
| KYUNG CHANG INDUSTRY USA, INC.) | | |
| DBA KCI USA, | ) | |
| | ) | **TRANSCRIPT OF** |
| | ) | **PROCEEDINGS** |
| Defendant. | ) | |
| | ) | |
| AND RELATED PARTIES | ) | |

BEFORE THE HONORABLE DAVID M. JONES, DISTRICT COURT JUDGE

TUESDAY, JANUARY 18, 2022

**DEFENDANT'S MOTION TO DISMISS**

**PLAINTIFF'S MOTION TO ASSOCIATE COUNSEL (JONATHAN ELIAS LOWY, ESQ.) ON ORDER SHORTENING TIME**

SEE NEXT PAGE FOR APPEARANCES

RECORDED BY: ANGELICA MICHAUX, COURT RECORDER
TRANSCRIBED BY:  JD REPORTING, INC.

1

A-21-838762-C | Green v. KCI USA | Motions | 2022-01-18

## A P P E A R A N C E S (via BlueJeans)

FOR THE PLAINTIFFS:                    SEAN K. CLAGGETT, ESQ.
                                       JOSEPH N. MOTT, ESQ.
                                       JONATHAN E. LOWY, ESQ.
                                       *Pro Hac Vice* - Pending
                                       C. BENJAMIN COOPER, ESQ.
                                       *Pro Hac Vice* - Pending
                                       SEAN R. ALTO, ESQ.
                                       *Pro Hac Vice*
                                       EMMA RODDY, ESQ.


FOR THE ESTATE OF NICHOLAS             RICHARD F. KLINEBURGER, III, ESQ.
P. CUMER, RONALD CUMER,                *Pro Hac Vice*
AND VICKY CUMER:


FOR KYUNG CHANG INDUSTRY               CODY S. MOUNTEER, ESQ.
USA, INC. dba KCI USA:                 BRIAN R. HARDY, ESQ.


FOR THE UNITED STATES:                 JODY LOWENSTEIN, ESQ.
                                       SKYLER H. PEARSON, ESQ.

**LAS VEGAS, CLARK COUNTY, NEVADA, JANUARY 18, 2022, 9:27 A.M.**

**\* \* \* \* \***

THE COURT:  Page 14 is A-21-838762, Green versus Chang Industries.

Who do I have here for the plaintiff on Green versus Chang?

MR. CLAGGETT:  Good morning, Your Honor.  Sean Claggett on behalf of the plaintiffs.

THE COURT:  Okay.

MR. LOWY:  And, Your Honor, Jon Lowy on behalf of the plaintiffs, but my *pro hac* motion is supposed to be heard this morning.

THE COURT:  Correct.

Defendants.

MR. HARDY:  Yeah, Brian Hardy with the law firm of Marquis Aurbach Coffing on behalf of defendant KCI.

MR. MOUNTEER:  Good morning, Your Honor.  Cody Mounteer here on behalf of the defendants with Brian Hardy.

THE COURT:  Okay.  Anyone else going to make an appearance on this matter?

MR. LOWENSTEIN:  Your Honor, this is Jody Lowenstein with the United States Department of Justice on behalf of the United States.  We filed a motion to intervene in this matter, and I'm also joined by Skyler Pearson, who is with the United States Attorney's Office in the District of Nevada.

THE COURT:  Thank you, Counsels.  I saw your motion to intervene.

MR. LOWENSTEIN:  Thank you, Your Honor.

THE COURT:  Dealing with --

MR. CLAGGETT:  Judge, I want to be --

THE COURT:  Go ahead.

MR. CLAGGETT:  Judge, I want to be heard.  Joey Mott from my office is also on the call.

THE COURT:  All right.  Thank you.  And you too, Mr. Mott.

MR. KLINEBURGER:  Your Honor, Richard F. Klineburger, III, from the firm of Klineburger & Nussy for plaintiffs.  I'm not making any argument.  I'm just here along with counsel.  I am pro hac vice, but I'm not making any argument, and my appearance is just here for the plaintiffs as well.

THE COURT:  Thank you very much.

MR. KLINEBURGER:  Thank you, Judge.

MR. ALTO:  Good morning, Your Honor.  Sean Alto also on behalf of the plaintiffs.  I've been *pro hac*'d in as well.

THE COURT:  Okay.

MR. COOPER:  And, Judge, same thing.  Good morning. Ben Cooper, same situation.

THE COURT:  Okay.

MS. RODDY:  And good morning, Your Honor.  This is Emma Roddy on behalf of John Sloan, who is appearing on behalf

A-21-838762-C | Green v. KCI USA | Motions | 2022-01-18

plaintiffs. His *pro hac* is pending in this matter is well.

THE COURT: Thank you very much. I think that's everyone on my list.

And everyone, if you could just speak up a little bit as you can imagine, as the COVID is going through, the Court does not -- this Judge does not have COVID. This Judge is severely under the weather and has been for a couple weeks. So I'm dealing with a monster ear infection that I can barely -- I feel like I'm in a tidal wave every minute of my day.

Counsel, in regards to this, the *pro hac vice* motion that was set for today's date has hereby been granted. It is appropriate. It's been set forth. So, Counsel, go ahead and prepare that order.

Now, let's deal with the motion to dismiss. And, Counsel, I can tell you this, and just to kind of give you guys some kind of understanding as where the Court is reviewing this, I have some real issues and quandary with whether or not this type of magazine is, you know, as you guys are going to say is a component part, and that's where I have some real issues in regards to that. I want that to be addressed extensively because that's one of the biggest areas I have some issues with, dealing with component parts in regards to the manufacturing of this weapon.

Also, as all of you guys should be aware, of course,

the *Colt* decision that came out by the Nevada Supreme Court and it's, I believe, limited in regards to what it does in impact on this case, but that's what the Court is really looking at, and I understand the United States' opinion in regards to constitutionality, and we'll deal with that at the very end because that's a whole 'nother issue.  But let's deal with the motion to dismiss in regards to that.

Go ahead, Counsel.

MR. HARDY:  Yes, Your Honor.  I understand that you read everything that's come in before you, and you have a question specifically as to whether the magazine is a qualified product under the Protection of Lawful Commerce in Arms Act or the PLCAA.

I want to focus on that issue because I think that's the issue that the Court's raised.

With respect to whether the magazine is a qualified product, first of all, the pleading and bare conclusion that the magazine is not a component part of the firearm is just insufficient.  Those are just a pleading and conclusory statement.

The magazine, as we've talked about it and what was looked at, and I think if you look at *Prescott versus Slide Fire*, where they found the bump stock in question was a component of a firearm because they looked at, among other things, the ATF guidebook, and if we look at that same ATF

guidebook, which was looked at in the *Prescott* case, you'll see the terminology. It says that,

An illustration exhibits the primary characteristics of a firearm, and the component parts are applicable in a revised configuration.

So it identifies in the ATF guidebook that a magazine is a component of a firearm, and components are protected under the PLCAA. In particular, manufacturers of those components are protected underneath the PLCAA. The configuration or whether that magazine holds one round or whether it holds a hundred rounds is irrelevant in that conclusion. The fact is is that it is a magazine. It is a component part, much like the bump stock was deemed to be a component part in the *Prescott* case.

We believe, and I think the law supports the fact, that this is a component, irrelevant of whether it modifies or allows the firearm to function differently. In the *Prescott* case you had the bump stock, which allowed the firearm to function differently than a standard stock, but it was deemed to be a component part.

Here we have a magazine, which irrespective of whether it holds one round or a hundred rounds, is a component, as defined by the ATF guidebook and others, and other courts in the United States has been defined as a component of the firearm. And we would argue that it is a qualified component,

and it is a qualified product under the PLCAA and is entitled to protection and KCI is entitled to the protections of the PLCAA --

THE COURT:  Well, Counsel, let me stop you there. Counsel, if I could let me stop you there.

MR. HARDY:  Yeah.

THE COURT:  Then what is an accessory to a firearm? Would a -- let's, for example, I take off my iron sights off of my rifle, and I put on a, I don't know, a red dot scope.  Is that a component part, or is that now an accessory?

MR. HARDY:  I think you'd be looking at an accessory at that point in time because it doesn't provide the essential functions of a firearm.  If you --

THE COURT:  It allows you to aim where you need to aim in order to shoot the gun to hit what you want it to hit and not hit something else.  Isn't that a component part?

MR. HARDY:  I think what you're talking about there is, I guess, the analysis you're giving is if you take off the iron sights so that there's no other way to aim, then perhaps you would be able to -- you've now replaced the essential component part, i.e., the sights, with a new variation on the sight, perhaps something that's enhancing the sight picture.

One of the problems that I think with that is if you look at the firearm, there are a number of firearms that come without any essential sighting the picture.  (Indiscernible)

A-21-838762-C | Green v. KCI USA | Motions | 2022-01-18

you look down the barrel.  For example, you've got a shotgun. You've got a smooth bore muzzleloader that don't come with a sight.  So whether a sight is an essential function or not, I don't know if I can, you know, lead into your analysis on that particular issue --

THE COURT:  Okay.  So can I shoot -- can I shoot the AR-15 without a cartridge in it, without a magazine in it?

MR. HARDY:  Can you -- you can load the AR-15 --

THE COURT:  With a single round, put a single round in the chamber, load it and fire it, so that magazine is not essential to discharging the bullet from this gun.  It's not -- it's not a necessity in order for this gun to function.

MR. HARDY:  The -- what you have said is that it's essential.  That is not the analysis.  The analysis is whether it's a component part.  And in this case it is a component part.  It is deemed to be a component part.  It's a part of the PLCAA, and you'll go back and look at the, again, go back and look at under *Prescott* and look at the ATF guidebook on what it defines as a component part, and a magazine is defined as a component part.  It says nothing as to what the number of rounds that are utilized in order to be -- that are contained within the magazine to breach a definition of whether it is or is not a component part.

THE COURT:  Okay.  Anything else, Counsel?

MR. HARDY:  What I think would be an accessory, if we

JD Reporting, Inc.

were to look at something, for example, a foregrip; right?  If you were to put an accessory, in addition on there, a foregrip on the front of it in order to be able to have a pistol grip on the front of it, those are attachments that are accessories that are not necessary --

THE COURT:  Oh, I agree, Counsel.  That -- Counsel, I agree.  That's an easy one, just like a strap, a shoulder strap is an easy thing for an accessory.  It's not essential.  But that's why I used the sight as something very specific.  Because for this gun, an AR-15 does have an iron sight attached to it, and you usually don't remove the sight.  You just stick on a better scope if you want to, and now you're saying, well, that may or may not be an accessory.  It might be -- I think anybody that would utilize the gun would say a sight.  We're not talking about a shotgun that's used for a completely different purpose, but a rifle, a long rifle, a rifle that used specifically, and you're now saying, well, the apparatus used for aiming that rifle may or may not be.

So I'm kind of curious because I can fire, if I wish, if I am a gun enthusiast, and I want to go to a range, for example, and I want to shoot my AR-15 and sight it in for hunting, I don't have to stick in a cartridge.  I may be the type of person that wants to fire one single bullet, check how it fired.  Go downrange, check it out, bring back.  Fire one single bullet and do it on and on again and, for example,

there, it allows me to use the gun exactly how the manufacturers set it to be used.  I'm firing the gun.  I don't need a magazine to do any of that.  It doesn't prevent it.

There are guns that cannot be fired without those, but this one would allow me to fire the gun with one bullet. How is that now not changing and adding an accessory where we're now saying, look, I now want to add to it a convenience and allow you to fire either 10, 15, 40 or a hundred rounds without having to put in a bullet into the chamber one at a time?

That's what I'm having the issue with, and I understand the ATF guidelines, and I looked at those in detail on this, as you can imagine, I spent most of my weekend on this case, and I'm still -- I'm still kind of torn here and having a hard time understanding the difference between those two.

The bump stock, Counsel, I don't think any of us who knowing about long rifles are going to shoot a rifle without a stock on it.  It could be extremely hazardous I would imagine to shoot a -- I don't want to take -- saw my stock off my thirty-aught-six, and go shoot it.  I don't think my shoulder would survive.  So that's a different story there.  That is a completely design component that is the product in order to utilize it.  It would be unsafe and basically unmanageable to use a rifle for its intended purpose without a stock on it, but the magazine is where I'm having some difficulties.

A-21-838762-C | Green v. KCI USA | Motions | 2022-01-18

MR. HARDY:  I like your analysis there for a second, Your Honor, if I could address kind of what you said there because I think it's appropriate in the fact that it would be uncomfortable to shoot that firearm without a stock on it.

Similarly, if you look at the packaging, when you receive an AR-15, if you open up your brand-new AR-15 and you open up the package, enclosed in that package is a magazine. In every AR-15 they ship with a magazine.  The reason for that is, if you've ever tried to load an AR-15 by hand where you've got to pull it back.  You've got to lock the stock.  You've got to try to work into the chamber a fire -- it's a very difficult process to try to fire that without a magazine.  The most common feature is, even if you're going to do it once, you will load the ammunition into the magazine, insert the magazine into the rifle and then pull back the pullback mechanism and allow it to go ahead and chamber that round.  That's because that is how it's meant to function.

Can you do it?  Yes, but is it an extreme circumstance that you would have to do that?  There's a number of other factors.  Yes.  In fact, if you look at how an AR-15 manufacturer and you look at the manufacturing book that comes with the AR-15, it will tell you load your ammunition into the magazine, put the magazine up into the firearm.  Then you go ahead and you pull back and you load the firearm.  That's the process that's recommended by the manufacturer.  That's the

process that is undertaken by everyone, and only in some type of an extreme circumstance would you actually ever load it by pulling back the -- pulling back the slide --

THE COURT:  Pull mechanism.

MR. HARDY:  Go ahead, locking the slide at that point in time so that you don't snap your finger off as you put it in there, slide in through the chamber, a round into the muzzle and then go ahead and allowing it to be chambered back into the process and shooting it one at a time.  That process would be extremely difficult.  It would be abnormal for somebody to do that, especially with an AR-15.

If you wanted to do a single shot, you would shoot it single.  You could then drop the magazine.  You could do it a number of different ways, but it's meant to be used with a magazine.  It is not meant to be used without a magazine.  Just because it can be used it doesn't mean that that's how it was intended to be used.  It is intended to be used with a magazine.  That's why the manufacturer ships it with a magazine.  That's why inside of all the user guides it says to utilize the magazine.  That is what happens here.  So it is a component part.

THE COURT:  So intent of the manufacturer now comes into play because, and I'm not sure about this because I don't know what particular AR was involved in this shooting, but if the intent of the manufacturer, what about when you hear, and I

A-21-838762-C | Green v. KCI USA | Motions | 2022-01-18

don't know again, if this one had it or not, where it tells you not to basically shoot an excessive amount of bullets because you can overheat the mechanism, and it can cause failure.  So a lot of people who own these AR-15s don't go out and buy very large rounds -- or excuse me, very large magazines, such as one that shoots a hundred rounds because the manufacturer's intent says do not overheat this gun by discharging an enormous amount of ammunition through it in one particular time.  So does the intent of the manufacturer now come into play?

MR. HARDY:  Your Honor, no.  What I'm just using that as an example of showing why this is a component part.

But what we would look at, and I disagree with your analysis that people don't go out and buy larger capacity magazines.  They do it all the time.  It happens all across this country and in places where there have become concerns about that, states will go ahead and exercise the state's rights if they would like to do so and whether that's permissible or not or constitutional or not is going to be decided hopefully here shortly by the U.S. Supreme Court based upon the capacity ban out of California.

But there are states that have created capacity bands, and those states can undertake that.  Nevada has not done that; right?  Ohio hasn't done that.  This was a legally, lawfully purchased magazine that was a component part of the firearm.

Now, whether or not the -- now, you addressed the issue of whether there's concerns because the manufacturer may have said that they're, you know, shooting too many rounds too quickly, but there's nothing to indicate that you would have to shoot a hundred rounds quickly. There is a convenience of having all of your ammunition simply loaded in a single source, and you can shoot them one at a time. Nothing says that this firearm or no allegations in this firearm that it was full auto or that it was anything about it, you know, being rapidly fired in any type of manner that would have allowed it to overheat if that's the concern. Those aren't the allegations here.

The question is whether this magazine is a qualified product under the PLCAA, and I believe, and the law supports the fact that it is a qualified product under the PLCAA and is entitled to the protections thereunder.

THE COURT: Okay. Anything else, Counsel, you need to add?

MR. HARDY: Your Honor, I think you've read -- and I know you fully read all of our briefing. We believe that we have the protections afforded there. We also believe -- we also argued the fact that there are -- not only does the statute apply, but we also believe that the State statute applies to protect these issues, as well as there's a number of claims that we've identified in our pleadings that need to be stricken simply because they are not supported in Nevada case

A-21-838762-C | Green v. KCI USA | Motions | 2022-01-18

law.

And I'll reserve any time to address those later on, or if you have questions, I'm happy to address them at this time.

THE COURT: Thank you, Counsel.

And the other issue is, I think are -- those ones I don't have the biggest issue with. This is the one that really I had the greatest difficulty going through is because it becomes so close as to what becomes an accessory versus what is truly, truly a needed necessary part for this gun to function, and that's where I have a hard time because this gun can function. It can discharge a bullet without a magazine in it. It's not an essential part where it prevents it from doing it, i.e., if it didn't have a barrel in it, well, we would have a whole different question here.

But when you talk about something that is required by the manufacturer, no, because it can discharge by one, and it's something that basically, you know, we can start to get really argumentative about, you know, are sights that -- the bump stock case I think by far is your best case in regards to the Court basically said a bump stock, which a lot of jurisdictions I know have outlawed because of what it does to the gun itself, and the bump stock, but shooting a rifle without a stock, I think -- I don't know if there's a manufacturer out there that would say, yes, that is a good idea, and the intent of the

manufacturer was never to have a long rifle shot without a stock on it.  They don't provide for that.  They don't even modify it that way.  You can't get an option to do that, and I think anybody who's ever fired a long rifle would know it would be stupid to fire a gun like that without a stock on it.

But let me hear from the other side in regards to that.

Go ahead.

MR. LOWY:  Thank you, Your Honor.  Jonathan Lowy for the plaintiffs.

A few things.  I mean, first, it's important to recognize where we're at in this case, and this is a motion to dismiss, and the only issue is whether plaintiffs are entitled to proceed to discovery because there was a lot of discussion about really facts between Your Honor and defense counsel.

KCI, if Your Honor denies this motion to dismiss, which I think you should, KCI can renew these arguments on summary judgment with a full factual record.  So it's not a question of whether they can make these arguments.  It's just a question of whether Your Honor will have the benefit of the facts.

And it's important to know also I think that KCI has moved the goal posts here.

Now, in their initial motion to dismiss, and this is at page 9, they wrote, the magazine is a component part of a

firearm as the subject firearm neither would nor could operate without the magazine.  That was their argument.  They were recognizing that if it was not a necessary element of the firearm it would not be a component --

THE COURT:  Counsel, that's exactly why --

MR. LOWY:  -- and they are asking --

THE COURT:  Counsel, that's exactly why I asked him the question.  I read the brief.  That's exactly why my question was what it is.  Is this particular gun can shoot without this magazine in it.  I mean, I thought that's what I just spent 10 minutes talking about.

MR. LOWY:  Right.  Exactly, Your Honor, and I just note that the argument that's being made here, that it's -- that the gun could fire without a magazine, but it would be difficult and not what you should do.  That's contrary to their initial motion.

But I agree, Your Honor, you focused on the key issue.  So, you know, my view of the *Prescott* case is that, one, I actually think it's incorrect in some respects because even if a stock is essential, I think if it's a replaceable stock that changes the function of the gun in some way, it's not simply a component.  It's no longer just a replacement part.

But even under *Prescott*, the motion should be dismissed because *Prescott*, what it was looking at, as Your

Honor has noted is, is this actually essential, and the magazine is not essential.

And another thing, another argument that they make in their briefs is, and this is in the reply at page 3, that they say this is a component because there is no use for the magazine other than when it's combined with a gun, and that is totally irrelevant to whether it's a component of the gun. I mean, fuzzy dice and a cell phone holder may have no other function than being, you know, part of a car. They're not components of a car though. The question is, is it essential to the car, not is it essential to the magazine. So it's not essential.

And then the other way to look at it, Your Honor, and you brought up the intent of the manufacturer. That's interesting because federal law, and particularly this is 27 CFR § 53.61, which is a tax regulation, says that component parts of a firearm are those, I'm paraphrasing, but saying if it's -- if they're included by the manufacturer or importer, basically in the box, that's a component part, but if it's not, then it's an accessory.

So that means that even if the magazine, even if you were to say that the magazine that's included in the box of the gun is a component, which I don't think it is, but the one that you get, you know, from another vendor is an accessory, and that's under the federal tax law, which is a lot clearer

A-21-838762-C | Green v. KCI USA | Motions | 2022-01-18

statement, by the way, than the ATF guidebook.

So I think, again, if you just look at the definition of what component part is, that means it's essential. This isn't essential.

If you look at the *Prescott* case, it's not like a stock because it's not essential.

If you look at the federal tax code, it's not included in the box. It's not included with the manufacturer.

So for all those reasons, it's not a component part.

THE COURT: All right. Counsel, I also need you to address the negligent entrustment and the nuisance actions because those are some other actions that I have some real quandaries with how we have a negligent entrustment action in regards to this case.

MR. LOWY: So a couple things on that, Your Honor. I mean, first, we concede that Nevada case law, when they've looked at negligent entrustment actions, and that's -- I think it's all -- maybe I'm wrong, but I think it's all about cars. Maybe there's some other fact patterns.

THE COURT: It's usually about the automobile industry, yes.

MR. LOWY: Yeah. They've all -- we agree that they've all said, you know, you have to have this ability to control the item. However, and we concede that that cuts against us; however, they haven't looked at -- Nevada courts

have not looked at a case like ours, and other states have looked at gun cases, and they've actually -- in the Supreme Court of Missouri in Delana versus Odessa (phonetic) case, the Supreme Court Kansas in *Shirley v. Glass* case. Both of those had those same sorts of bad precedent involving cars, and they said, this doesn't apply anymore. That's -- the restatement torts is beyond that and doesn't accept that. And also, when you're dealing with a lethal product like a gun, it doesn't make sense to apply those rules, and they accepted a negligent entrustment rule. So we think that that's the better course, and that's what should be applied here.

But the other important point though is that negligent entrustment is a defined exception under the PLCAA, and so what Congress did in PLCAA, it's not creating a cause of action. The Nevada courts can determine what's a negligent entrustment action here; however, they -- PLCAA does define what negligent entrustment is and says that if you -- if your case comes under that definition, it's not a qualified civil liability action, and that means it's not barred by the PLCAA.

And so even if -- even if we were not allowed to pursue the negligent entrustment action, since we've come under the 7903, paren, 5D, which is the definition of negligent entrustment, that means that they don't get protected by the PLCAA, and we could proceed at least in our negligence action and any others that were allowed under state common law.

A-21-838762-C | Green v. KCI USA | Motions | 2022-01-18

And then finally, on the public nuisance action, I mean, their only argument is that there is no private right of action under the State public nuisance statute, and they cite a federal case on that. We think that decision is wrong. There's no analysis in it, and it actually -- I believe it's a case where no party even argued that, and then the Court said, I'm basing this on something that the Courts come up with. So there wasn't even any briefing apparently on the issue. The Court just, in I think one sentence said there's no private right of action.

I think that's an incorrect decision. It should have had the benefit of briefing. We didn't put much briefing on it because there was so much other stuff to brief on, but, you know, if you look at some of the Nevada Supreme Court cases, they indicate that they I think likely would allow private right of action. There's nothing in the statute that prohibits a private right of action, and generally in states across the country, there are private right of actions for public nuisance statutes like this.

Often gun cases and, for example, Supreme Court of Indiana in the *City of Gary versus Smith & Wesson* case, accepted a public nuisance action against gun companies and then later on the Courts -- the Court of Appeals in that case held that because of that violation of public nuisance statute there was no protection under the PLCAA --

THE COURT: And you think that the Nevada Supreme Court, after the *Colt* decision would actually go the other way and say that there might be a basis for a public nuisance? Did you read the *Colt* decision, Counselor?

A    I did, Your Honor, and I agree that that's -- that that is a -- I think that they're two separate questions. I mean, one is, is there a case that's barred by -- by that statute. And the separate question is does the public nuisance statute allow for private right of action. I do think that the Court would find that there's a private right of action.

The next question is, would -- what sort of action would be allowed against a gun company, and I think that that -- as far as the *Parsons versus Colt* case, one, I mean, that statute has absolutely no application to our case because, unlike the PLCAA that says it's protecting firearms, ammunition and component parts, here the statute just says firearms, ammunition.

So it pointedly does not say, it certainly doesn't say accessories, which we think this is. It doesn't even say component parts, and even KCI is not arguing that this hundred round magazine is a firearm or ammunition. It's neither. So there's no way that the statute applies.

THE COURT: So you're saying basically the public nuisance argument doesn't fit if it's a gun or it's a bullet, but it does fit if it's a hundred round magazine?

JD Reporting, Inc.

23

MR. LOWY: Well, I would think -- well, I would argue it a little bit differently, Your Honor, because I -- because partially --

THE COURT: Well, that's as simple as I can make it, Counselor. You're basically saying the public nuisance applies -- might apply to a gun and a bullet, but it doesn't apply to a magazine that holds the bullets that goes into the gun.

MR. LOWY: Well, I think that the Nevada statute, 41.131, by that *Parsons* considered, what it says is, is that you can't hold a gun or ammunition manufacturer seller liable based on the gun's inherent ability to cause harm. So you can't just say sort of you're selling guns. Guns can kill people. You should be liable, and that basically was the argument in *Parsons*. It was these are assault weapons. They kill people, period, end of story. They should be liable.

That isn't our only argument. And one of our arguments, and the complaint makes it real clear is that even if there's a legitimate basis to sell a hundred round magazines to the general public, you've got to do it in a reasonable way. You've got to use reasonable care, and they did it in an unreasonable way in their marketing and in their directing people to online sales with absolutely no standards.

So that's -- those theories are not about the inherent ability to cause harm. That's about their

unreasonable sales practices.  So that's a different argument, and that is not prohibited by those sorts of causes of action, even if it was against a gun company or ammunition company. Those causes of action are not prohibited by NRS 41.131.

THE COURT:  All right.  Anything else, Counselor?

MR. LOWY:  We'll you know, rely on our pleadings and happy to answer any other questions, Your Honor.

THE COURT:  Okay.  Let me have a reply.

MR. HARDY:  Yes, Your Honor.  A couple of things.

First of all, and I want to make sure that we're very clear.  This is a component part of this firearm.  This firearm, as you've described it, is an AR-15.  It is defined by ATF as a semiautomatic firearm, which is in a different category than that of a single shot firearm, i.e., bolt action or other firearm.

So when you're referencing your 30-aught-6 with your bolt action, it is a much different firearm than what we are talking about here, a semiautomatic firearm.  Semiautomatic by definition means that it does shoot multiple rounds.  It's intended to do so, and so the intent of this semiautomatic firearm is only fulfilled when it has a number of, and that number is not defined, but a number of bullets inside of a magazine.  This is an essential component part of this firearm.

There's a big difference, and I think you can agree that if we're talking about a single action firearm versus a

A-21-838762-C | Green v. KCI USA | Motions | 2022-01-18

semiautomatic, which are defined terms by the federal government and by ATF, and this is a semiautomatic weapon that requires, and by definition has multiple rounds that will be fired through it, which requires a magazine to hold those multiple rounds.

So if we're looking at something as a matter of necessity, by definition, this firearm requires a magazine that holds more than one bullet.

Secondly, Your Honor, is the fact that we talked a little bit about it being a -- NRS 41.  I go back to the *Parsons* case, and I just want to make sure that we're clear on the *Parsons* case, and I can tell the Court has read the *Parsons* case.

The legislature has passed numerous statutes related to firearms, and the *Parsons* case clearly says that the legislature wants to expand something, it can do it.  In fact, it said that we urge the legislature to act if it did not mean to provide immunity in situations like this one.  If the legislature wants to provide these immunities, wants to allow for these specific things, then they need to speak on that, but they haven't, and this is the immunity that is here today, and it protects us in this particular action in addition to the protections afforded by the PLCAA that we've discussed in our briefing.

Thank you, Your Honor.

A-21-838762-C | Green v. KCI USA | Motions | 2022-01-18

THE COURT: And, Counsel, you know, Justice Pickering was very adamant in her opinion. She was basically dealing with, as you can imagine, these types of rifles and the belief out there that they don't have any specific use other than, you know, mass destruction on human beings and all that stuff, and that's what Pickering was trying to say is, look, if the legislature thinks these types of guns that allow this type of progressive, I would say, distribution of bullets across a wide variety of people in a small time period, she was saying then the legislature ought to act on that. I think that's different than when we deal with component manufacturers and dealing with these particular things.

I mean, I think if, you know, whoever whether it be Bushmaster or whoever built this particular AR thought a hundred round magazine was a really good idea, they probably would have bought it as part of the gun.

You want to go out and spend a hundred dollars in 25 seconds dispersing those rounds, go for it, and there you go.

And I understand that, and there's some real differences in regards to that, and that's my quandary in this thing is, is when you talk about component parts, it really is, as you said originally in your brief, something that is a requirement for the gun to be used. Without it, it doesn't work. Well, yes, it does. This gun will work without a magazine in it. It clearly does work.

JD Reporting, Inc.

27

Does it work to the intent of the consumer?  Probably not because most individuals who buy AR-15s probably don't go out and decide they're going to use them to fulfill one of their deer tags.  Not a very good gun to use to shoot deer.  And they just go out, and they're weekend guys or gals who want to go out and discharge firearms.  That's fine.  There is a public that desires that, and that's why this gun may or may not have been created.

But my biggest issue I'm still having a quandary with is, is this truly a component part man, and that's my part is it.

The other part I really have a hard time, and I disagree with plaintiffs' counsel in the negligent entrustment.  There's no way that I can see that this Court could ever see where the control that is necessary under a negligent entrustment could possibly take place in this part.  There's no way that in this scenario this manufacturer could have some control even if, Counsel, they had all the restrictions in their media and in their publicity and in theirselves.  They checked.  They did some type of screening on whether or not this person should or should not have a hundred round magazine.

In this scenario, it's not the purchaser who utilized this magazine.  That purchaser may have qualified.  That purchaser may have qualified under the strictest, most strict rules you could possibly come up with in order to give it to

A-21-838762-C | Green v. KCI USA | Motions | 2022-01-18

this individual, but then that individual then sells it secondhand or gives it to someone else. They've lost -- the manufacturer has now lost control in regards to that, and based on that, the negligent entrustment motion to dismiss is granted.

The other parts I'm going to take under consideration. I'll have an answer to you guys hopefully at the beginning of next week.

It's one of those ones I'm really -- I'm really torn. The *Prescott* case is causing me some real quandaries in how they went through that. I'm actually going to do something I don't do very rarely. I'm going to pull all the briefing that I can on *Prescott* to get an understanding as to what the understanding of the Judges where they ruled on that one because I think that's my biggest hurdle.

Without *Prescott*, I think this would have been a much easier motion for me. I would have denied it without *Prescott*, but *Prescott*, a bump stock is a modification to a normal stock. It's a very specific modification, but it does allow that gun to be used, and I think there's a real issue in regards to that portion of it.

So, Counsel, I know you guys are all waiting on this one. I've got it looks like half of the entire bar of the United States in here. I'm going to be more than happy to.

In regards to the constitutionality, Counsel, I'm

JD Reporting, Inc.

29

going to deal with that one also.

Does the United States think that they need to be heard on that matter?

MR. LOWENSTEIN: Thank you, Your Honor.

Your Honor, I think it's just important to emphasize. The only thing I'd like to say up front, and we appreciate Your Honor allowing us to appear here and present our view.

I think it's just important to emphasize that the United States' interest in this case is limited to the constitutional issues.

THE COURT: Right.

MR. LOWENSTEIN: We take no position on whether any of plaintiffs' claims fall within the scope of the Protection of Lawful Commerce in Arms Act, whether any of plaintiffs' claims fall within any of the exceptions of the statute.

And, Your Honor, as I think we laid out and discussed and outlined in our brief, there is a considerable body of case law that I think adequately addresses the constitutionality of PLCAA, and we just urge the Court to follow that large line of, you know, uniform case law that upholds PLCAA's constitutionality on virtual identical arguments that are advanced here by the plaintiffs.

And I'm happy to answer any questions that Your Honor may have or speak to any constitutional issues that you would like me to speak to, Your Honor.

THE COURT: And I agree with you, Counsel.

Plaintiff counsel, do you want to add anything in regards so that, in regards to the constitutionality of it?

I mean, Counsel, I understand that it was in the part of the brief, but I do not see anywhere here, and even stretching it to the limit of which you could possibly, even with the creative minds I know that you have on your side, to say that PLCAA is unconstitutional on its face as it sets here. I don't see that. I don't see anything that even gets you there.

MR. LOWY: Well, Your Honor, and respectfully, we disagree, as we say in our briefs. I would mostly add to your reading pile the *Gustafson* case, which, in Pennsylvania, which, as we note in our brief, has been withdrawn. It was an appellate decision. It was withdrawn pending *en banc* review.

THE COURT: Right.

MR. LOWY: But we still think it's persuasive. That was an appellate panel that found that PLCAA is unconstitutional, that it's a violation of mostly on Commerce Clause grounds. And when it's laid out there, I actually think it's pretty clear that PLCAA is unconstitutional.

Just real quick, I mean, one, the Commerce Clause, the Supreme Court Commerce Clause authority is really clear, particularly after the Obamacare decision that for Congress to exercise its Commerce Clause authority, it's got to regulate

A-21-838762-C | Green v. KCI USA | Motions | 2022-01-18

active commerce. And what it does in PLCAA -- PLCAA is a very unusual statute. I mean, the -- every other preemption law that Congress has ever enacted regulates an industry, and then what it says is, like, you've got to put in airbags, and if you do that, a state can't hold you liable saying, you know, you didn't do a good enough job. We preempt conflicting civil actions.

PLCAA does not regulate the gun industry in any way whatsoever. The only people it regulates are, one, it regulates litigants, like these families who lost loved ones, and it says you shall not bring lawsuits. Now, they're not engaged in any sort of commerce.

Two, it regulates Your Honor, because it says you shall dismiss this lawsuit. We don't like it. Congress doesn't like it. You're not engaged in commerce either, Your Honor.

It also regulates the State legislature in some way because it says through the predicate exception, look, if you want to hold some gun companies liable under some circumstances, you've got to create a statute, and that makes a predicate violation, but if you're going to rely on courts, then we're not going to let you hold them liable in certain circumstances.

So again, the legislature, they're not engaged in commerce. So there is no legitimate Commerce Clause authority.

A-21-838762-C | Green v. KCI USA | Motions | 2022-01-18

That's end of story. Then there's no legitimate authority to enact this law.

But then there's also major Tenth Amendment issues in particular, and there's no precedent for any statute like this. I mean, for one thing, what it does on the Tenth Amendment standpoint is Congress is defining what is a legitimate common-law action, which Congress has absolutely no business doing, and *Erie Railroad* makes clear there's no federal common law, and it's of no import to the federal government, whether a state chooses to use its legislature or its courts to make law. That's just up to the states.

Well, PLCAA interferes with both of those. For one thing, it says in the findings, you know, there are certain causes of action against gun companies that we think are unfounded under centuries of common law. So therefore, Your Honor, you've got to dismiss them. Well, that's not up to Nancy Pelosi or McCarthy or anyone else to decide or the president to decide whether it's legitimate common-law action. It's up to the state, and so that's one Tenth Amendment violation.

THE COURT: And I think --

MR. LOWY: -- another 10th amendment --

Yeah.

THE COURT: -- the Nevada Supreme Court recently kind of gave you their opinion about that and what they think should

A-21-838762-C | Green v. KCI USA | Motions | 2022-01-18

or should not be done, didn't they?

MR. LOWY: But that's -- that was the question of the state is deciding.

The problem with PLCAA -- I mean, a state can -- if a state wants to get rid of certain common-law actions, the state can do it, but Congress can't do it in this way where they're not regulating the industry. So, I mean, so that's -- so I think all of those are actually pretty clear, and once courts get around to it, as the *Gustafson* case understood it, I think it's pretty clear that it is unconstitutional.

And the other Tenth Amendment problem is what it does with this predicate violation. Because what it's doing is it's interfering with how states choose to make their law. Again, *Erie Railroad* says up to the state to decide whether you make your law through your courts in common law or through the legislature.

But now Congress is coming around and saying, you know, if you create a predicate violation through the legislature, we're going to allow some cases that we wouldn't allow if you choose to rely on the common-law courts. Again, the state can decide to do that.

But Congress has absolutely no business telling states we prefer one branch of your legislature more than the other. We don't like your courts. We don't trust your courts. We trust your legislature. That's not Congress's business.

A-21-838762-C | Green v. KCI USA | Motions | 2022-01-18

They can think that, but they don't -- they have no business telling states what to do.

So in addition to the other arguments we make --

THE COURT: And I appreciate -- I appreciate that, Counsel. Counsel, I appreciate that, but it sounds like Pennsylvania itself doesn't even think what you're thinking. Pennsylvania itself is really in a quandary already by pulling back that case and saying, look, we're going to do *en banc* on it. It seems to me that you're looking at a case where basically the state of Pennsylvania is already questioning its own court in regards to its decision.

Anything else that anybody else needs to bring before this Court? I want to make sure everybody has a right to speak and that we've got all the things out.

MR. HARDY: Your Honor, just to address the Commerce Clause issue. Again, the specific of the PLCAA says that it involves firearms, including any antique firearm or ammunition or a component part of the firearm or ammunition that has been shipped or transported in interstate or foreign commerce. That language comes directly out of the statute. This is the exact example of that. A product that was imported and manufactured and then sold from the state of Nevada into Ohio where it was actually then resold to a federal firearms licensee who then sold it to a consumer in Ohio who then sold it to another consumer.

JD Reporting, Inc.

A-21-838762-C | Green v. KCI USA | Motions | 2022-01-18

This was engaged in commerce, this particular product was, and the statute itself contemplates interstate commerce within it, and so we believe that the Commerce Clause does not exceed the authority --

THE COURT: And, I mean, Counsel, I agree with you on that matter. I don't see it in regards to that. I don't -- and looking at the way that the Nevada Supreme Court has just recently ruled on -- and I know it's not the same case on point, but it clearly showed you what the Nevada Supreme Court's opinion was in regards to this type of legislation and what they are willing to do.

I'll have an answer to you on the rest of the motions on it, guys, by hopefully by the beginning of next week. Thank you.

Everyone please stay safe.

(Proceedings concluded at 10:14 a.m.)

-oOo-

ATTEST: I do hereby certify that I have truly and correctly transcribed the audio/video proceedings in the above-entitled case to the best of my ability.

*Dana P. Williams*

Dana L. Williams
Transcriber

JD Reporting, Inc.

36

MR. ALTO: [1] 4/18
MR. CLAGGETT: [3] 3/7 4/5 4/7
MR. COOPER: [1] 4/21
MR. HARDY: [14] 3/15 6/9 8/6 8/11 8/17 9/8 9/13 9/25 12/1 13/5 14/10 15/18 25/9 35/15
MR. KLINEBURGER: [2] 4/11 4/17
MR. LOWENSTEIN: [4] 3/21 4/3 30/4 30/12
MR. LOWY: [13] 3/10 17/9 18/6 18/12 20/15 20/22 24/1 24/9 25/6 31/11 31/17 33/22 34/2
MR. MOUNTEER: [1] 3/17
MS. RODDY: [1] 4/24
THE COURT: [40]

**'**

'nother [1] 6/6

**-**

-oOo [1] 36/17

**1**

10 [2] 11/8 18/11
10:14 a.m [1] 36/16
10th [1] 33/22
14 [1] 3/3
15 [13] 9/7 9/8 10/10 10/21 11/8 12/6 12/6 12/8 12/9 12/20 12/22 13/11 25/12
15s [2] 14/4 28/2
18 [2] 1/14 3/1

**2**

2022 [2] 1/14 3/1
25 [1] 27/17
27 CFR [1] 19/16

**3**

30-aught-6 [1] 25/16

**4**

40 [1] 11/8
41 [1] 26/10
41.131 [2] 24/10 25/4

**5**

53.61 [1] 19/16
5D [1] 21/22

**7**

7903 [1] 21/22

**8**

838762 [1] 3/3

**9**

9:27 [1] 3/1

**A**

a.m [2] 3/1 36/16
ability [4] 20/23 24/12

24/25 36/20
able [2] 8/20 10/3
abnormal [1] 13/10
about [21] 6/21 8/17 10/15 11/17 13/23 13/25 14/16 15/9 16/16 16/19 17/15 18/11 20/18 20/20 24/24 24/25 25/18 25/25 26/10 27/21 33/25
above [1] 36/19
above-entitled [1] 36/19
absolutely [4] 23/14 24/23 33/7 34/22
accept [1] 21/7
accepted [2] 21/9 22/22
accessories [2] 10/4 23/19
accessory [11] 8/7 8/10 8/11 9/25 10/2 10/8 10/13 11/6 16/9 19/20 19/24
across [3] 14/14 22/17 27/8
act [4] 6/12 26/17 27/10 30/14
action [24] 20/13 21/15 21/16 21/19 21/21 21/24 22/1 22/3 22/10 22/16 22/17 22/22 23/9 23/10 23/11 25/2 25/4 25/14 25/17 25/25 26/22 33/7 33/14 33/18
actions [6] 20/11 20/12 20/17 22/18 32/7 34/5
active [1] 32/1
actually [10] 13/2 18/19 19/1 21/2 22/5 23/2 29/11 31/20 34/8 35/23
adamant [1] 27/2
add [4] 11/7 15/17 31/2 31/12
adding [1] 11/6
addition [3] 10/2 26/22 35/3
address [5] 12/2 16/2 16/3 20/11 35/15
addressed [2] 5/21 15/1
addresses [1] 30/18
adequately [1] 30/18
advanced [1] 30/22
afforded [2] 15/20 26/23
after [2] 23/2 31/24
again [8] 9/17 10/25 14/1 20/2 32/24 34/13 34/20 35/16
against [5] 20/25 22/22 23/12 25/3 33/14
agree [8] 10/6 10/7 18/17 20/22 23/5 25/24 31/1 36/5
ahead [9] 4/6 5/13 6/8 12/16 12/24 13/5 13/8 14/16 17/8

aim [3] 8/14 8/15 8/19
aiming [1] 10/18
airbags [1] 32/4
all [22] 4/9 5/25 6/17 13/19 14/14 14/14 15/6 15/19 20/9 20/10 20/18 20/18 20/22 20/23 25/5 25/10 27/5 28/18 29/12 29/22 34/8 35/14
allegations [2] 15/8 15/11
allow [10] 11/5 11/8 12/15 22/15 23/9 26/19 27/7 29/19 34/19 34/20
allowed [5] 7/18 15/10 21/20 21/25 23/12
allowing [2] 13/8 30/7
allows [3] 7/17 8/14 11/1
along [1] 4/13
already [2] 35/7 35/10
also [13] 3/24 4/8 4/18 5/25 15/20 15/21 15/22 17/22 20/10 21/7 30/1 32/17 33/3
ALTO [2] 2/5 4/18
am [2] 4/14 10/20
amendment [5] 33/3 33/5 33/19 33/22 34/11
ammunition [11] 12/14 12/22 14/8 15/6 23/15 23/17 23/21 24/11 25/3 35/17 35/18
among [1] 6/24
amount [2] 14/2 14/7
analysis [7] 8/18 9/4 9/14 9/14 12/1 14/13 22/5
ANGELICA [1] 1/24
another [5] 19/3 19/3 19/24 33/22 35/24
answer [4] 25/7 29/7 30/23 36/12
antique [1] 35/17
any [20] 4/13 4/14 8/25 11/3 11/16 15/10 16/2 21/25 22/8 25/7 27/4 30/12 30/14 30/15 30/23 30/24 32/8 32/12 33/4 35/17
anybody [3] 10/14 17/4 35/12
anymore [1] 21/6
anyone [2] 3/19 33/17
anything [7] 9/24 15/9 15/16 25/5 31/2 31/9 35/12
anywhere [1] 31/5
apparatus [1] 10/17
apparently [1] 22/8
Appeals [1] 22/23
appear [1] 30/7
appearance [2] 3/20 4/15
APPEARANCES [1] 1/18
appearing [1] 4/25
appellate [2] 31/15 31/18

applicable [1] 7/5
application [1] 23/14
applied [1] 21/11
applies [3] 15/23 23/22 24/6
apply [5] 15/22 21/6 21/9 24/6 24/7
appreciate [4] 30/6 35/4 35/4 35/5
appropriate [2] 5/13 12/3
AR [16] 9/7 9/8 10/10 10/21 12/6 12/6 12/8 12/9 12/20 12/22 13/11 13/24 14/4 25/12 27/14 28/2
AR-15 [12] 9/7 9/8 10/10 10/21 12/6 12/6 12/8 12/9 12/20 12/22 13/11 25/12
AR-15s [2] 14/4 28/2
are [35] 5/19 6/19 7/5 7/7 7/9 8/24 9/21 9/21 10/4 10/4 10/5 11/4 11/17 14/21 15/21 15/25 16/6 16/19 17/13 18/6 19/17 20/12 22/18 24/15 24/24 25/4 25/17 26/1 29/22 30/21 32/9 33/13 33/14 34/8 36/11
areas [1] 5/22
aren't [1] 15/11
argue [2] 7/25 24/1
argued [2] 15/21 22/6
arguing [1] 23/20
argument [10] 4/13 4/14 18/2 18/13 19/3 22/2 23/24 24/15 24/17 25/1
argumentative [1] 16/19
arguments [5] 17/17 17/19 24/18 30/21 35/3
Arms [2] 6/12 30/14
around [2] 34/9 34/17
as [40]
asked [1] 18/7
asking [1] 18/6
assault [1] 24/15
ASSOCIATE [1] 1/16
at [43]
ATF [9] 6/25 6/25 7/6 7/23 9/18 11/12 20/1 25/13 26/2
attached [1] 10/10
attachments [1] 10/4
ATTEST [1] 36/18
Attorney's [1] 3/25
audio [1] 36/19
audio/video [1] 36/19
aught [2] 11/20 25/16
Aurbach [1] 3/16
authority [5] 31/23 31/25 32/25 33/1 36/4
auto [1] 15/8
automobile [1] 20/20
aware [1] 5/25

**B**

back [11] 9/17 9/17 10/24 12/10 12/15 12/24 13/3 13/3 13/8 26/10 35/8
bad [1] 21/5
ban [1] 14/20
banc [2] 31/15 35/8
bands [1] 14/22
bar [1] 29/23
bare [1] 6/17
barely [1] 5/9
barred [2] 21/19 23/7
barrel [2] 9/1 16/14
based [3] 14/19 24/12 29/3
basically [10] 11/23 14/2 16/18 16/21 19/19 23/23 24/5 24/14 27/2 35/10
basing [1] 22/7
basis [2] 23/3 24/19
be [48]
because [37]
become [1] 14/15
becomes [2] 16/9 16/9
been [9] 4/19 5/7 5/12 5/13 7/24 28/8 29/16 31/14 35/18
before [3] 1/13 6/10 35/12
beginning [2] 29/8 36/13
behalf [8] 3/8 3/10 3/16 3/18 3/22 4/19 4/25 4/25
being [4] 15/9 18/13 19/9 26/10
beings [1] 27/5
belief [1] 27/3
believe [8] 6/2 7/15 15/13 15/19 15/20 15/22 22/5 36/3
Ben [1] 4/22
benefit [2] 17/20 22/12
BENJAMIN [1] 2/4
best [2] 16/20 36/20
better [2] 10/12 21/10
between [2] 11/15 17/15
beyond [1] 21/7
big [1] 25/24
biggest [4] 5/22 16/7 28/9 29/15
bit [3] 5/5 24/2 26/10
bit as [1] 5/5
BlueJeans [1] 2/1
body [1] 30/17
bolt [2] 25/14 25/17
book [1] 12/21
bore [1] 9/2
both [2] 21/4 33/12
bought [1] 27/16
box [3] 19/19 19/22 20/8
branch [1] 34/23
brand [1] 12/6
brand-new [1] 12/6

**B**
breach [1] 9/22
BRIAN [3] 2/11 3/15 3/18
brief [6] 18/8 22/13 27/22 30/17 31/5 31/14
briefing [6] 15/19 22/8 22/12 22/12 26/24 29/12
briefs [2] 19/4 31/12
bring [3] 10/24 32/11 35/12
brought [1] 19/14
built [1] 27/14
bullet [9] 9/11 10/23 10/25 11/5 11/9 16/12 23/24 24/6 26/8
bullets [4] 14/2 24/7 25/22 27/8
bump [8] 6/23 7/13 7/18 11/16 16/19 16/21 16/23 29/18
Bushmaster [1] 27/14
business [4] 33/7 34/22 34/25 35/1
but [47]
buy [3] 14/4 14/13 28/2

**C**
California [1] 14/20
call [1] 4/8
came [1] 6/1
can [36] 5/5 5/8 5/16 9/4 9/6 9/6 9/8 9/8 10/19 11/13 12/18 13/16 14/3 14/3 14/22 15/7 16/11 16/12 16/17 16/18 17/17 17/19 18/9 21/15 24/4 24/13 25/24 26/12 26/16 27/3 28/14 29/13 34/4 34/6 34/21 35/1
can't [5] 17/3 24/11 24/13 32/5 34/6
cannot [1] 11/4
capacity [3] 14/13 14/20 14/21
car [3] 19/9 19/10 19/11
care [1] 24/21
cars [2] 20/18 21/5
cartridge [2] 9/7 10/22
case [40]
cases [4] 21/2 22/14 22/20 34/19
category [1] 25/14
cause [4] 14/3 21/14 24/12 24/25
causes [3] 25/2 25/4 33/14
causing [1] 29/10
cell [1] 19/8
centuries [1] 33/15
certain [3] 32/22 33/13 34/5
certainly [1] 23/18
certify [1] 36/18
CFR [1] 19/16

chamber [5] 9/10 11/9 12/11 12/16 13/7
chambered [1] 13/8
CHANG [4] 1/7 2/10 3/4 3/6
changes [1] 18/21
changing [1] 11/6
characteristics [1] 7/4
check [2] 10/23 10/24
checked [1] 28/20
choose [2] 34/13 34/20
chooses [1] 33/10
circumstance [2] 12/19 13/2
circumstances [2] 32/20 32/23
cite [1] 22/3
City [1] 22/21
civil [2] 21/18 32/6
CLAGGETT [2] 2/2 3/8
claims [3] 15/24 30/13 30/15
CLARK [2] 1/2 3/1
Clause [7] 31/20 31/22 31/23 31/25 32/25 35/16 36/3
clear [8] 24/18 25/11 26/11 31/21 31/23 33/8 34/8 34/10
clearer [1] 19/25
clearly [3] 26/15 27/25 36/9
close [1] 16/9
code [1] 20/7
CODY [2] 2/10 3/17
Coffing [1] 3/16
Colt [4] 6/1 23/2 23/4 23/13
combined [1] 19/6
come [7] 6/10 8/24 9/2 14/9 21/21 22/7 28/25
comes [4] 12/21 13/22 21/18 35/20
coming [1] 34/17
commerce [16] 6/12 30/14 31/19 31/22 31/23 31/25 32/1 32/12 32/15 32/25 32/25 35/15 35/19 36/1 36/2 36/3
common [9] 12/13 21/25 33/7 33/8 33/15 33/18 34/5 34/15 34/20
common-law [4] 33/7 33/18 34/5 34/20
companies [3] 22/22 32/19 33/14
company [3] 23/12 25/3 25/3
complaint [1] 24/18
completely [2] 10/15 11/22
component [44]
components [3] 7/7 7/8 19/10
concede [2] 20/16 20/24
concern [1] 15/11
concerns [2] 14/15 15/2

concluded [1] 36/16
conclusion [2] 6/17 7/11
conclusory [1] 6/19
configuration [2] 7/5 7/9
conflicting [1] 32/6
Congress [9] 21/14 31/24 32/3 32/14 33/6 33/7 34/6 34/17 34/22
Congress's [1] 34/25
considerable [1] 30/17
consideration [1] 29/7
considered [1] 24/10
constitutional [3] 14/18 30/10 30/24
constitutionality [5] 6/5 29/25 30/18 30/21 31/3
consumer [3] 28/1 35/24 35/25
contained [1] 9/21
contemplates [1] 36/2
contrary [1] 18/15
control [4] 20/24 28/15 28/18 29/3
convenience [2] 11/7 15/5
COOPER [2] 2/4 4/22
Correct [1] 3/13
correctly [1] 36/18
could [14] 5/4 8/5 11/18 12/2 13/13 13/13 18/1 18/14 21/24 28/14 28/16 28/17 28/25 31/6
counsel [29] 1/16 4/13 5/11 5/13 5/16 6/8 8/4 8/5 9/24 10/6 10/6 11/16 15/16 16/5 17/15 18/5 18/7 20/10 27/1 28/13 28/18 29/22 29/25 31/1 31/2 31/4 35/5 35/5 36/5
Counselor [3] 23/4 24/5 25/5
Counsels [1] 4/1
country [2] 14/15 22/18
COUNTY [2] 1/2 3/1
couple [3] 5/7 20/15 25/9
course [2] 5/25 21/10
court [26] 1/2 1/13 1/24 5/6 5/17 6/1 6/3 14/19 16/21 21/3 21/4 22/6 22/9 22/14 22/20 22/23 23/2 23/10 26/12 28/14 30/19 31/23 33/24 35/11 35/13 36/7
Court's [2] 6/15 36/10
courts [12] 7/23 20/25 21/15 22/7 22/23 32/21 33/10 34/8 34/15 34/20 34/24 34/24
COVID [2] 5/5 5/6
create [2] 32/20 34/18
created [2] 14/21 28/8
creating [1] 21/14

creative [1] 31/7
CUMER [3] 2/8 2/8 2/9
curious [1] 10/19
cuts [1] 20/24

**D**
Dana [1] 36/23
date [1] 5/12
DAVID [1] 1/13
day [1] 5/10
dba [2] 1/8 2/11
deal [5] 5/15 6/5 6/6 27/11 30/1
dealing [6] 4/4 5/8 5/23 21/8 27/2 27/11
decide [5] 28/3 33/17 33/18 34/14 34/21
decided [1] 14/19
deciding [1] 34/3
decision [8] 6/1 22/4 22/11 23/2 23/4 31/15 31/24 35/11
deemed [3] 7/13 7/19 9/16
deer [2] 28/4 28/4
defendant [2] 1/9 3/16
DEFENDANT'S [1] 1/15
defendants [2] 3/14 3/18
defense [1] 17/15
define [1] 21/16
defined [7] 7/23 7/24 9/19 21/13 25/12 25/22 26/1
defines [1] 9/19
defining [1] 33/6
definition [7] 9/22 20/2 21/18 21/22 25/19 26/3 26/7
Delana [1] 21/3
denied [1] 29/17
denies [1] 17/16
Department [1] 3/22
DEPT [1] 1/6
described [1] 25/12
design [1] 11/22
desires [1] 28/7
destruction [1] 27/5
detail [1] 11/12
determine [1] 21/15
dice [1] 19/8
did [6] 21/14 23/3 23/5 24/21 26/17 28/20
didn't [4] 16/14 22/12 32/6 34/1
difference [2] 11/15 25/24
differences [1] 27/20
different [8] 10/16 11/21 13/14 16/15 25/1 25/13 25/17 27/10
differently [3] 7/17 7/19 24/2
difficult [3] 12/11 13/10 18/15
difficulties [1] 11/25
difficulty [1] 16/8
DION [1] 1/4

directing [1] 24/22
directly [1] 35/20
disagree [3] 14/12 28/13 31/12
discharge [3] 16/12 16/17 28/6
discharging [2] 9/11 14/7
discovery [1] 17/14
discussed [2] 26/23 30/16
discussion [1] 17/14
dismiss [9] 1/15 5/15 6/7 17/13 17/16 17/24 29/4 32/14 33/16
dismissed [1] 18/25
dispersing [1] 27/18
distribution [1] 27/8
DISTRICT [3] 1/2 1/13 3/25
do [31] 3/5 10/25 11/3 12/13 12/18 12/19 13/10 13/12 13/13 14/7 14/14 14/17 17/3 18/15 23/9 24/20 25/20 26/16 29/11 29/12 31/2 31/5 32/5 32/6 34/6 34/21 35/2 35/8 36/11 36/18
does [22] 5/6 5/6 6/2 10/10 14/8 15/21 16/22 21/16 23/8 23/18 23/25 25/19 27/24 27/25 28/1 29/19 30/2 32/1 32/8 33/5 34/11 36/3
doesn't [13] 8/12 11/3 13/16 21/6 21/7 21/8 23/18 23/19 23/24 24/6 27/23 32/15 35/6
doing [3] 16/13 33/8 34/12
dollars [1] 27/17
don't [31] 8/9 9/2 9/4 10/11 10/22 11/2 11/16 11/19 11/20 13/6 13/23 14/1 14/4 14/13 16/7 16/24 17/2 17/2 19/23 21/23 27/4 28/2 29/12 31/9 31/9 32/14 34/24 34/24 35/1 36/6 36/6
done [3] 14/23 14/23 34/1
dot [1] 8/9
down [1] 9/1
downrange [1] 10/24
drop [1] 13/13

**E**
ear [1] 5/8
easier [1] 29/17
easy [2] 10/7 10/8
either [2] 11/8 32/15
element [1] 18/3
ELIAS [1] 1/16
else [9] 3/19 8/16 9/24 15/16 25/5 29/2 33/17 35/12 35/12
EMMA [2] 2/6 4/25
emphasize [2] 30/5

**E**

emphasize... [1] 30/8
en [2] 31/15 35/8
enact [1] 33/2
enacted [1] 32/3
enclosed [1] 12/7
end [3] 6/5 24/16 33/1
engaged [4] 32/12 32/15 32/24 36/1
enhancing [1] 8/22
enormous [1] 14/7
enough [1] 32/6
enthusiast [1] 10/20
entire [1] 29/23
entitled [5] 8/1 8/2 15/15 17/13 36/19
entrustment [12] 20/11 20/13 20/17 21/10 21/13 21/16 21/17 21/21 21/23 28/13 28/16 29/4
Erie [2] 33/8 34/14
especially [1] 13/11
ESQ [12] 1/16 2/2 2/2 2/3 2/4 2/5 2/6 2/8 2/10 2/11 2/13 2/13
essential [18] 8/12 8/20 8/25 9/3 9/11 9/14 10/8 16/13 18/20 19/1 19/2 19/10 19/11 19/12 20/3 20/4 20/6 25/23
ESTATE [1] 2/8
even [19] 12/13 17/2 18/20 18/24 19/21 19/21 21/20 21/20 22/6 22/8 23/19 23/20 24/18 25/3 28/18 31/5 31/6 31/9 35/6
ever [5] 12/9 13/2 17/4 28/14 32/3
every [3] 5/9 12/8 32/2
everybody [1] 35/13
everyone [4] 5/3 5/4 13/1 36/15
everything [1] 6/10
exact [1] 35/20
exactly [5] 11/1 18/5 18/7 18/8 18/12
example [8] 8/8 9/1 10/1 10/21 10/25 14/11 22/20 35/21
exceed [1] 36/4
exception [2] 21/13 32/18
exceptions [1] 30/15
excessive [1] 14/2
excuse [1] 14/5
exercise [2] 14/16 31/25
exhibits [1] 7/3
expand [1] 26/16
extensively [1] 5/22
extreme [2] 12/18 13/2
extremely [2] 11/18 13/10

**F**

face [1] 31/8

fact [9] 7/11 7/15 12/3 12/20 15/14 15/21 20/19 26/9 26/16
factors [1] 12/20
facts [2] 17/15 17/21
factual [1] 17/18
failure [1] 14/3
fall [2] 30/13 30/15
families [1] 32/10
far [2] 16/20 23/13
feature [1] 12/13
federal [8] 19/15 19/25 20/7 22/4 26/1 33/8 33/9 35/23
feel [1] 5/9
few [1] 17/11
filed [1] 3/23
finally [1] 22/1
find [1] 23/10
findings [1] 33/13
fine [1] 28/6
finger [1] 13/6
fire [11] 6/23 9/10 10/19 10/23 10/24 11/5 11/8 12/11 12/12 17/5 18/14
firearm [34] 6/18 6/24 7/4 7/7 7/17 7/18 7/25 8/7 8/13 8/24 12/4 12/23 12/24 14/25 15/8 15/8 18/1 18/1 18/4 19/17 23/21 25/11 25/12 25/13 25/14 25/15 25/17 25/18 25/21 25/23 25/25 26/7 35/17 35/18
firearms [7] 8/24 23/15 23/16 26/15 28/6 35/17 35/23
fired [5] 10/24 11/4 15/9 17/4 26/4
firing [1] 11/2
firm [2] 3/15 4/12
first [4] 6/17 17/11 20/16 25/10
fit [2] 23/24 23/25
focus [1] 6/14
focused [1] 18/17
follow [1] 30/19
foregrip [2] 10/1 10/2
foreign [1] 35/19
forth [1] 5/13
found [2] 6/23 31/18
front [3] 10/3 10/4 30/6
fulfill [1] 28/3
fulfilled [1] 25/21
full [2] 15/8 17/18
fully [1] 15/19
function [9] 7/17 7/19 9/3 9/12 12/17 16/10 16/12 18/21 19/9
functions [1] 8/13
fuzzy [1] 19/8

**G**

gals [1] 28/5
Gary [1] 22/21
gave [1] 33/25
general [1] 24/20

generally [1] 22/17
get [7] 16/18 17/3 19/24 21/23 29/13 34/5 34/9
gets [1] 31/9
give [2] 5/16 28/25
gives [1] 29/2
giving [1] 8/18
Glass [1] 21/4
go [24] 4/6 5/13 6/8 9/17 9/17 10/20 10/24 11/20 12/16 12/23 13/5 13/8 14/4 14/13 14/16 17/8 23/2 26/10 27/17 27/18 27/18 28/2 28/5 28/6
goal [1] 17/23
goes [1] 24/7
going [17] 3/19 5/5 5/19 11/17 12/13 14/18 16/8 28/3 29/6 29/11 29/12 29/24 30/1 32/21 32/22 34/19 35/8
good [9] 3/7 3/17 4/18 4/21 4/24 16/25 27/15 28/4 32/6
got [13] 9/1 9/2 12/10 12/10 12/10 24/20 24/21 29/23 31/25 32/4 32/20 33/16 35/14
government [2] 26/2 33/9
granted [2] 5/12 29/5
greatest [1] 16/8
GREEN [3] 1/4 3/3 3/5
grip [1] 10/3
grounds [1] 31/20
guess [1] 8/18
guidebook [6] 6/25 7/1 7/6 7/23 9/18 20/1
guidelines [1] 11/12
guides [1] 13/19
gun [39]
gun's [1] 24/12
guns [4] 11/4 24/13 24/13 27/7
Gustafson [2] 31/13 34/9
guys [7] 5/16 5/19 5/25 28/5 29/7 29/22 36/13

**H**

hac [8] 2/3 2/4 2/5 2/8 3/11 4/14 5/1 5/11
hac'd [1] 4/19
had [6] 7/18 14/1 16/8 21/5 22/12 28/18
half [1] 29/23
hand [1] 12/9
happens [2] 13/20 14/14
happy [4] 16/3 25/7 29/24 30/23
hard [3] 11/15 16/11 28/12
HARDY [3] 2/11 3/15 3/18
harm [2] 24/12 24/25
has [19] 5/7 5/12 7/24

14/22 17/22 19/1 23/14 25/21 26/3 26/12 26/14 29/3 31/14 32/3 33/7 34/22 35/13 35/18 36/7
hasn't [1] 14/23
have [51]
haven't [2] 20/25 26/21
having [6] 11/9 11/11 11/14 11/25 15/6 28/9
hazardous [1] 11/18
hear [2] 13/25 17/6
heard [3] 3/11 4/7 30/3
held [1] 22/24
her [1] 27/2
here [22] 3/5 3/18 4/13 4/15 7/21 11/14 13/20 14/19 15/11 16/15 17/23 18/13 21/11 21/16 23/16 25/18 26/21 29/24 30/7 30/22 31/5 31/8
hereby [2] 5/12 36/18
him [1] 18/7
hirley [1] 21/4
His [1] 5/1
hit [3] 8/15 8/15 8/16
hold [5] 24/11 26/4 32/5 32/19 32/22
holder [1] 19/8
holds [5] 7/10 7/10 7/22 24/7 26/8
Honor [38]
HONORABLE [1] 1/13
hopefully [3] 14/19 29/7 36/13
how [9] 10/23 11/1 11/6 12/17 12/20 13/16 20/13 29/10 34/13
however [3] 20/24 20/25 21/16
human [1] 27/5
hundred [11] 7/11 7/22 11/8 14/6 15/5 23/20 23/25 24/19 27/15 27/17 28/21
hunting [1] 10/22
hurdle [1] 29/15

**I**

I'd [1] 30/6
I'll [3] 16/2 29/7 36/12
I'm [27] 3/24 4/12 4/13 4/14 5/8 5/9 10/19 11/2 11/11 11/14 11/14 11/25 13/23 14/10 16/3 19/17 20/18 22/7 28/9 29/6 29/9 29/9 29/11 29/12 29/24 29/25 30/23
I've [2] 4/19 29/23
i.e [3] 8/21 16/14 25/14
idea [2] 16/25 27/15
identical [1] 30/21
identified [1] 15/24
identifies [1] 7/6
if [61]
III [2] 2/8 4/12
illustration [1] 7/3
imagine [4] 5/5 11/13

11/18 27/3
immunities [1] 26/19
immunity [2] 26/18 26/21
impact [1] 6/2
import [1] 33/9
important [5] 17/11 17/22 21/12 30/5 30/8
imported [1] 35/21
importer [1] 19/18
in [141]
INC [3] 1/7 1/25 2/11
included [4] 19/18 19/22 20/8 20/8
including [1] 35/17
incorrect [2] 18/19 22/11
Indiana [1] 22/21
indicate [2] 15/4 22/15
Indiscernible [1] 8/25
individual [2] 29/1 29/1
individuals [1] 28/2
Industries [1] 3/4
industry [6] 1/7 2/10 20/21 32/3 32/8 34/7
infection [1] 5/8
inherent [2] 24/12 24/25
initial [2] 17/24 18/16
insert [1] 12/14
inside [2] 13/19 25/22
insufficient [1] 6/19
intended [4] 11/24 13/17 13/17 25/20
intent [8] 13/22 13/25 14/6 14/9 16/25 19/14 25/20 28/1
interest [1] 30/9
interesting [1] 19/15
interferes [1] 33/12
interfering [1] 34/13
interstate [2] 35/19 36/2
intervene [2] 3/23 4/2
into [13] 9/4 11/9 12/11 12/14 12/14 12/22 12/23 13/7 13/8 13/23 14/9 24/7 35/22
involved [1] 13/24
involves [1] 35/17
involving [1] 21/5
iron [3] 8/8 8/19 10/10
irrelevant [3] 7/11 7/16 19/7
irrespective [1] 7/21
is [169]
isn't [3] 8/16 20/4 24/17
issue [14] 6/6 6/14 6/15 9/5 11/11 15/2 16/6 16/7 17/13 18/18 22/8 28/9 29/20 35/16
issues [7] 5/18 5/21 5/23 15/23 30/10 30/24 33/3
it [186]
it's [65]
item [1] 20/24
its [7] 11/24 31/8 31/25

**I**

its... [4] 33/10 33/10 35/10 35/11
itself [4] 16/22 35/6 35/7 36/2

**J**

JANUARY [2] 1/14 3/1
JD [1] 1/25
job [1] 32/6
JODY [2] 2/13 3/21
Joey [1] 4/7
John [1] 4/25
joined [1] 3/24
Jon [1] 3/10
JONATHAN [3] 1/16 2/3 17/9
JONES [1] 1/13
JOSEPH [1] 2/2
JUDGE [7] 1/13 4/5 4/7 4/17 4/21 5/6 5/6
Judges [1] 29/14
judgment [1] 17/18
jurisdictions [1] 16/21
just [27] 4/13 4/15 5/4 5/16 6/18 6/19 10/7 10/11 13/15 14/10 17/19 18/11 18/12 18/22 20/2 22/9 23/16 24/13 26/11 28/5 30/5 30/8 30/19 31/22 33/11 35/15 36/7
Justice [2] 3/22 27/1

**K**

Kansas [1] 21/4
KCI [8] 1/8 2/11 3/16 8/2 17/16 17/17 17/22 23/20
key [1] 18/17
kill [2] 24/13 24/16
kind [6] 5/16 5/17 10/19 11/14 12/2 33/24
KLINEBURGER [3] 2/8 4/11 4/12
know [31] 5/19 8/9 9/4 9/4 13/24 14/1 15/3 15/9 15/19 16/18 16/19 16/22 16/24 17/4 17/22 18/18 19/9 19/24 20/23 22/14 25/6 27/1 27/5 27/13 29/22 30/20 31/7 32/5 33/13 34/18 36/8
knowing [1] 11/17
KYUNG [2] 1/7 2/10

**L**

laid [2] 30/16 31/20
language [1] 35/20
large [3] 14/5 14/5 30/19
larger [1] 14/13
LAS [1] 2/14
later [2] 16/2 22/23
law [22] 3/15 7/15 15/13 16/1 19/15 19/25 20/16 21/25 30/18 30/20 32/2 33/2 33/7 33/9 33/10 33/15 33/18

34/5 34/13 34/15 34/15 34/20
Lawful [2] 6/12 30/14
lawfully [1] 14/24
lawsuit [1] 32/14
lawsuits [1] 32/11
lead [1] 9/4
least [1] 21/24
legally [1] 14/23
legislation [1] 36/10
legislature [13] 26/14 26/16 26/17 26/19 27/7 27/10 32/17 32/24 33/10 34/16 34/19 34/23 34/25
legitimate [5] 24/19 32/25 33/1 33/6 33/18
let [5] 8/4 8/5 17/6 25/8 32/22
let's [3] 5/15 6/6 8/8
lethal [1] 21/8
liability [1] 21/19
liable [6] 24/11 24/14 24/16 32/5 32/19 32/22
licensee [1] 35/23
like [21] 5/9 7/12 10/7 12/1 14/17 17/5 20/5 21/1 21/8 22/19 26/18 29/23 30/6 30/25 32/4 32/10 32/14 32/15 33/4 34/24 35/5
likely [1] 22/15
limit [1] 31/6
limited [2] 6/2 30/9
line [1] 30/19
list [1] 5/3
litigants [1] 32/10
little [3] 5/4 24/2 26/10
load [7] 9/8 9/10 12/9 12/14 12/22 12/24 13/2
loaded [1] 15/6
lock [1] 12/10
locking [1] 13/5
long [4] 10/16 11/17 17/1 17/4
longer [1] 18/22
look [21] 6/22 6/25 8/24 9/1 9/17 9/18 9/18 10/1 11/7 12/5 12/20 12/21 14/12 19/13 20/2 20/5 20/7 22/14 27/6 32/18 35/8
looked [8] 6/22 6/24 7/1 11/12 20/17 20/25 21/1 21/2
looking [6] 6/3 8/11 18/25 26/6 35/9 36/7
looks [1] 29/23
lost [3] 29/2 29/3 32/10
lot [4] 14/4 16/21 17/14 19/25
loved [1] 32/10
LOWENSTEIN [2] 2/13 3/21
LOWY [4] 1/16 2/3 3/10 17/9

**M**

made [1] 18/13

magazine [50]
magazines [3] 14/5 14/14 24/19
major [1] 33/3
make [12] 3/19 17/19 19/3 21/9 24/4 25/10 26/11 33/10 34/13 34/14 35/3 35/13
makes [3] 24/18 32/20 33/8
making [2] 4/13 4/14
man [1] 28/10
manner [1] 15/10
manufactured [1] 35/21
manufacturer [16] 12/21 12/25 13/18 13/22 13/25 14/9 15/2 16/17 16/24 17/1 19/14 19/18 20/8 24/11 28/17 29/3
manufacturer's [1] 14/6
manufacturers [3] 7/8 11/2 27/11
manufacturing [2] 5/24 12/21
many [1] 15/3
marketing [1] 24/22
Marquis [1] 3/16
mass [1] 27/5
matter [6] 3/20 3/23 5/1 26/6 30/3 36/6
may [12] 10/13 10/13 10/18 10/18 10/22 15/2 19/8 28/7 28/7 28/23 28/24 30/24
maybe [2] 20/18 20/19
McCarthy [1] 33/17
me [11] 8/4 8/5 11/1 11/5 14/5 17/6 25/8 29/10 29/17 30/25 35/9
mean [17] 13/16 17/11 18/10 19/8 20/16 22/2 23/7 23/13 26/17 27/13 31/4 31/22 32/2 33/5 34/4 34/7 36/5
means [5] 19/21 20/3 21/19 21/23 25/19
meant [3] 12/17 13/14 13/15
mechanism [3] 12/15 13/4 14/3
media [1] 28/19
MICHAUX [1] 1/24
might [3] 10/13 23/3 24/6
minds [1] 31/7
minute [1] 5/9
minutes [1] 18/11
Missouri [1] 21/3
modification [2] 29/18 29/19
modifies [1] 7/16
modify [1] 17/3
monster [1] 5/8
more [3] 26/8 29/24 34/23
morning [6] 3/7 3/12

3/17 4/18 4/21 4/24
most [4] 11/13 12/12 28/2 28/24
mostly [2] 31/12 31/19
motion [15] 1/15 1/16 3/11 3/23 4/1 5/11 5/15 6/7 17/12 17/16 17/24 18/16 18/24 29/4 29/17
motions [1] 36/12
MOTT [3] 2/2 4/7 4/10
MOUNTEER [2] 2/10 3/18
moved [1] 17/23
Mr. [1] 4/10
Mr. Mott [1] 4/10
much [7] 4/16 5/2 7/12 22/12 22/13 25/17 29/16
multiple [3] 25/19 26/3 26/5
muzzle [1] 13/7
muzzleloader [1] 9/2
my [19] 3/11 4/8 4/14 5/3 5/9 8/8 8/9 10/21 11/13 11/19 11/19 11/20 18/8 18/18 27/20 28/9 28/10 29/15 36/20

**N**

Nancy [1] 33/17
necessary [4] 10/5 16/10 18/3 28/15
necessity [2] 9/12 26/7
need [7] 8/14 11/3 15/16 15/24 20/10 26/20 30/2
needed [1] 16/10
needs [1] 35/12
negligence [1] 21/24
negligent [12] 20/11 20/13 20/17 21/9 21/13 21/15 21/17 21/21 21/22 28/13 28/15 29/4
neither [2] 18/1 23/21
NEVADA [16] 1/2 3/1 3/25 6/1 14/22 15/25 20/16 20/25 21/15 22/14 23/1 24/9 33/24 35/22 36/7 36/9
never [1] 17/1
new [2] 8/21 12/6
next [4] 1/18 23/11 29/8 36/13
NICHOLAS [1] 2/8
no [28] 1/5 1/6 8/19 14/10 15/8 16/17 18/22 19/5 19/8 22/2 22/5 22/6 22/9 22/25 23/14 23/22 24/23 28/14 28/16 30/12 32/25 33/1 33/4 33/7 33/8 33/9 34/22 35/1
nor [1] 18/1
normal [1] 29/18
not [77]
note [2] 18/13 31/14
noted [1] 19/1
nothing [4] 9/20 15/4 15/7 22/16

now [16] 5/15 8/10 8/20 10/12 10/17 11/6 11/7 11/7 13/22 14/9 15/1 15/1 17/24 29/3 32/11 34/17
NRS [2] 25/4 26/10
NRS 41 [1] 26/10
NRS 41.131 [1] 25/4
nuisance [10] 20/11 22/1 22/3 22/18 22/22 22/24 23/3 23/8 23/24 24/5
number [8] 8/24 9/20 12/19 13/14 15/23 25/21 25/22 25/22
numerous [1] 26/14
Nussy [1] 4/12

**O**

Obamacare [1] 31/24
Odessa [1] 21/3
off [5] 8/8 8/8 8/18 11/19 13/6
office [2] 3/25 4/8
Often [1] 22/20
Oh [1] 10/6
Ohio [3] 14/23 35/22 35/24
Okay [8] 3/9 3/19 4/20 4/23 9/6 9/24 15/16 25/8
on [69]
once [2] 12/13 34/8
one [36] 5/22 7/10 7/22 8/23 10/7 10/23 10/24 11/5 11/5 11/9 13/9 14/1 14/5 14/8 15/7 16/7 16/17 18/19 19/23 22/9 23/7 23/13 24/17 26/8 26/18 28/3 29/9 29/14 29/23 30/1 31/22 32/9 33/5 33/12 33/19 34/23
ones [3] 16/6 29/9 32/10
online [1] 24/23
only [8] 13/1 15/21 17/13 22/2 24/17 25/21 30/6 32/9
oOo [1] 36/17
open [2] 12/6 12/7
operate [1] 18/1
opinion [4] 6/4 27/2 33/25 36/10
option [1] 17/3
or [45]
order [8] 1/16 5/14 8/15 9/12 9/21 10/3 11/22 28/25
originally [1] 27/22
other [24] 6/24 7/23 8/19 12/20 16/6 17/6 19/6 19/8 19/13 20/12 20/19 21/1 21/12 22/13 23/2 25/7 25/15 27/4 28/12 29/6 32/2 34/11 34/24 35/3
others [2] 7/23 21/25
ought [1] 27/10

## O

**our [12]**  15/19 15/24 21/24 23/14 24/17 24/17 25/6 26/23 30/7 30/17 31/12 31/14
**ours [1]**  21/1
**out [15]**  6/1 10/24 14/4 14/13 14/20 16/24 27/4 27/17 28/3 28/5 28/6 30/16 31/20 35/14 35/20
**outlawed [1]**  16/22
**outlined [1]**  30/17
**overheat [3]**  14/3 14/7 15/10
**own [2]**  14/4 35/11

## P

**package [2]**  12/7 12/7
**packaging [1]**  12/5
**page [4]**  1/18 3/3 17/25 19/4
**Page 14 [1]**  3/3
**page 3 [1]**  19/4
**page 9 [1]**  17/25
**panel [1]**  31/18
**paraphrasing [1]**  19/17
**paren [1]**  21/22
**Parsons [7]**  23/13 24/10 24/15 26/11 26/12 26/12 26/15
**part [35]**  5/20 6/18 7/12 7/13 7/20 8/10 8/16 8/21 9/15 9/16 9/16 9/16 9/19 9/20 9/23 13/21 14/11 14/24 16/10 16/13 17/25 18/23 19/9 19/19 20/3 20/9 25/11 25/23 27/16 28/10 28/10 28/12 28/16 31/4 35/18
**partially [1]**  24/3
**particular [10]**  7/8 9/5 13/24 14/8 18/9 26/22 27/12 27/14 33/4 36/1
**particularly [2]**  19/15 31/24
**PARTIES [1]**  1/10
**parts [7]**  5/23 7/5 19/17 23/16 23/20 27/21 29/6
**party [1]**  22/6
**passed [1]**  26/14
**patterns [1]**  20/19
**PEARSON [2]**  2/13 3/24
**Pelosi [1]**  33/17
**pending [4]**  2/3 2/4 5/1 31/15
**Pennsylvania [4]**  31/13 35/6 35/7 35/10
**people [7]**  14/4 14/13 24/14 24/16 24/23 27/9 32/9
**perhaps [2]**  8/19 8/22
**period [2]**  24/16 27/9
**permissible [1]**  14/18
**person [2]**  10/23 28/21
**persuasive [1]**  31/17

**phone [1]**  19/8
**phonetic [1]**  21/3
**Pickering [2]**  27/1 27/6
**picture [2]**  8/22 8/25
**pile [1]**  31/13
**pistol [1]**  10/3
**place [1]**  28/16
**places [1]**  14/15
**plaintiff [3]**  1/5 3/5 31/2
**PLAINTIFF'S [1]**  1/16
**plaintiffs [10]**  2/2 3/8 3/11 4/12 4/15 4/19 5/1 17/10 17/13 30/22
**plaintiffs' [3]**  28/13 30/13 30/14
**play [2]**  13/23 14/9
**PLCAA [26]**  6/13 7/8 7/9 8/1 8/3 9/17 15/13 15/14 21/13 21/14 21/16 21/19 21/24 22/25 23/15 26/23 30/19 31/8 31/18 31/21 32/1 32/1 32/8 33/12 34/4 35/16
**PLCAA's [1]**  30/20
**pleading [2]**  6/17 6/19
**pleadings [2]**  15/24 25/6
**please [1]**  36/15
**point [4]**  8/12 13/5 21/12 36/9
**pointedly [1]**  23/18
**portion [1]**  29/21
**position [1]**  30/12
**possibly [3]**  28/16 28/25 31/6
**posts [1]**  17/23
**practices [1]**  25/1
**precedent [2]**  21/5 33/4
**predicate [4]**  32/18 32/21 34/12 34/18
**preempt [1]**  32/6
**preemption [1]**  32/2
**prefer [1]**  34/23
**prepare [1]**  5/14
**Prescott [14]**  6/22 7/1 7/14 7/17 9/18 18/18 18/24 18/25 20/5 29/10 29/13 29/16 29/17 29/18
**present [1]**  30/7
**president [1]**  33/18
**pretty [3]**  31/21 34/8 34/10
**prevent [1]**  11/3
**prevents [1]**  16/13
**primary [1]**  7/3
**private [7]**  22/2 22/9 22/15 22/17 22/18 23/9 23/10
**pro [9]**  2/3 2/4 2/5 2/8 3/11 4/14 4/19 5/1 5/11
**probably [3]**  27/15 28/1 28/2
**problem [2]**  34/4 34/11
**problems [1]**  8/23
**proceed [2]**  17/14

21/24
**proceedings [3]**  1/9 36/16 36/19
**process [5]**  12/12 12/25 13/1 13/9 13/9
**product [9]**  6/12 6/17 8/1 11/22 15/13 15/14 21/8 35/21 36/1
**progressive [1]**  27/8
**prohibited [2]**  25/2 25/4
**prohibits [1]**  22/16
**protect [1]**  15/23
**protected [3]**  7/7 7/9 21/23
**protecting [1]**  23/15
**protection [4]**  6/12 8/2 22/25 30/13
**protections [4]**  8/2 15/15 15/20 26/23
**protects [1]**  26/22
**provide [4]**  8/12 17/2 26/18 26/19
**public [11]**  22/1 22/3 22/18 22/22 22/24 23/3 23/8 23/23 24/5 24/20 28/7
**publicity [1]**  28/19
**pull [5]**  12/10 12/15 12/24 13/4 29/12
**pullback [1]**  12/15
**pulling [3]**  13/3 13/3 35/7
**purchased [1]**  14/24
**purchaser [3]**  28/22 28/23 28/24
**purpose [2]**  10/16 11/24
**pursue [1]**  21/21
**put [8]**  8/9 9/9 10/2 11/9 12/23 13/6 22/12 32/4

## Q

**qualified [9]**  6/11 6/16 7/25 8/1 15/12 15/14 21/18 28/23 28/24
**quandaries [2]**  20/13 29/10
**quandary [4]**  5/18 27/20 28/9 35/7
**question [12]**  6/11 6/23 15/12 16/15 17/19 17/20 18/8 18/9 19/10 23/8 23/11 34/2
**questioning [1]**  35/10
**questions [4]**  16/3 23/6 25/7 30/23
**quick [1]**  31/22
**quickly [2]**  15/4 15/5

## R

**Railroad [2]**  33/8 34/14
**raised [1]**  6/15
**range [1]**  10/20
**rapidly [1]**  15/9
**rarely [1]**  29/12
**read [6]**  6/10 15/18 15/19 18/8 23/4 26/12

**reading [1]**  31/13
**real [8]**  5/18 5/20 29/12 24/18 27/19 29/10 29/20 31/22
**really [11]**  6/3 16/7 16/18 17/15 27/15 27/21 28/12 29/9 29/9 31/23 35/7
**reason [1]**  12/8
**reasonable [2]**  24/20 24/21
**reasons [1]**  20/9
**receive [1]**  12/6
**recently [2]**  33/24 36/8
**recognize [1]**  17/12
**recognizing [1]**  18/3
**recommended [1]**  12/25
**record [1]**  17/18
**RECORDED [1]**  1/24
**RECORDER [1]**  1/24
**red [1]**  8/9
**referencing [1]**  25/16
**regards [18]**  5/11 5/21 5/23 6/2 6/4 6/7 16/20 17/6 20/14 27/20 29/3 29/20 29/25 31/3 31/3 35/11 36/6 36/10
**regulate [2]**  31/25 32/8
**regulates [5]**  32/3 32/9 32/10 32/13 32/17
**regulating [1]**  34/7
**regulation [1]**  19/16
**related [2]**  1/10 26/14
**rely [3]**  25/6 32/21 34/20
**remove [1]**  10/11
**renew [1]**  17/17
**replaceable [1]**  18/20
**replaced [1]**  8/20
**replacement [1]**  18/22
**reply [2]**  19/4 25/8
**REPORTING [1]**  1/25
**required [1]**  16/16
**requirement [1]**  27/23
**requires [3]**  26/3 26/4 26/7
**reserve [1]**  16/2
**resold [1]**  35/23
**respect [1]**  6/16
**respectfully [1]**  31/11
**respects [1]**  18/19
**rest [1]**  36/12
**restatement [1]**  21/6
**restrictions [1]**  28/18
**review [1]**  31/15
**reviewing [1]**  5/17
**revised [1]**  7/5
**RICHARD [2]**  2/8 4/11
**rid [1]**  34/5
**rifle [11]**  8/9 10/16 10/16 10/16 10/18 11/17 11/24 12/15 16/23 17/1 17/4
**rifles [2]**  11/17 27/3
**right [16]**  4/9 10/1 14/23 18/12 20/10 22/2 22/10 22/16 22/17 22/18 23/9 23/10 25/5

30/11 31/16 35/13
**rights [1]**  14/17
**RODDY [2]**  2/6 4/25
**RONALD [1]**  2/8
**round [11]**  7/10 7/22 9/9 9/9 12/16 13/7 23/21 23/25 24/19 27/15 28/21
**rounds [12]**  7/11 7/22 9/21 11/8 14/5 14/6 15/3 15/5 25/19 26/3 26/5 27/18
**rule [1]**  21/10
**ruled [2]**  29/14 36/8
**rules [2]**  21/9 28/25

## S

**safe [1]**  36/15
**said [10]**  9/13 12/2 15/3 16/21 20/23 21/6 22/6 22/9 26/17 27/22
**sales [2]**  24/23 25/1
**same [5]**  4/21 4/22 6/25 21/5 36/8
**saw [2]**  4/1 11/19
**say [15]**  5/20 10/14 16/25 19/5 19/22 23/3 23/18 23/19 23/19 24/13 27/6 27/8 30/6 31/8 31/12
**saying [10]**  10/12 10/17 11/7 19/17 23/23 24/5 27/9 32/5 34/17 35/8
**says [18]**  7/2 9/20 13/19 14/7 15/7 19/16 21/17 23/15 23/16 24/10 26/15 32/4 32/11 32/13 32/18 33/13 34/14 35/16
**scenario [2]**  28/17 28/22
**scope [3]**  8/9 10/12 30/13
**screening [1]**  28/20
**SEAN [4]**  2/2 2/5 3/7 4/18
**second [1]**  12/1
**secondhand [1]**  29/2
**Secondly [1]**  26/9
**seconds [1]**  27/18
**see [8]**  1/18 7/1 28/14 28/14 31/5 31/9 31/9 36/6
**seems [1]**  35/9
**sell [1]**  24/19
**seller [1]**  24/11
**selling [1]**  24/13
**sells [1]**  29/1
**semiautomatic [6]**  25/13 25/18 25/18 25/20 26/1 26/2
**sense [1]**  21/9
**sentence [1]**  22/9
**separate [2]**  23/6 23/8
**set [3]**  5/12 5/13 11/2
**sets [1]**  31/8
**severely [1]**  5/7
**shall [2]**  32/11 32/14

**S**

she [2]  27/2 27/9
ship [1]  12/8
shipped [1]  35/19
ships [1]  13/18
shoot [15]  8/15 9/6 9/6 10/21 11/17 11/19 11/20 12/4 13/12 14/2 15/5 15/7 18/9 25/19 28/4
shooting [4]  13/9 13/24 15/3 16/23
shoots [1]  14/6
SHORTENING [1]  1/16
shortly [1]  14/19
shot [3]  13/12 17/1 25/14
shotgun [2]  9/1 10/15
should [12]  5/25 17/17 18/15 18/24 21/11 22/11 24/14 24/16 28/21 28/21 33/25 34/1
shoulder [2]  10/7 11/20
showed [1]  36/9
showing [1]  14/11
side [2]  17/6 31/7
sight [9]  8/22 8/22 9/3 9/3 10/9 10/10 10/11 10/14 10/21
sighting [1]  8/25
sights [4]  8/8 8/19 8/21 16/19
Similarly [1]  12/5
simple [1]  24/4
simply [3]  15/6 15/25 18/22
since [1]  21/21
single [9]  9/9 9/9 10/23 10/25 13/12 13/13 15/6 25/14 25/25
situation [1]  4/22
situations [1]  26/18
six [1]  11/20
SKYLER [2]  2/13 3/24
slide [4]  6/22 13/3 13/5 13/7
Sloan [1]  4/25
small [1]  27/9
Smith [1]  22/21
smooth [1]  9/2
snap [1]  13/6
so [49]
sold [3]  35/22 35/24 35/24
some [20]  5/17 5/18 5/20 5/22 11/25 13/1 18/19 18/21 20/12 20/12 20/19 22/14 27/19 28/17 28/20 29/10 32/17 32/19 32/19 34/19
somebody [1]  13/10
someone [1]  29/2
something [11]  8/16 8/22 10/1 10/9 16/16 16/18 22/7 26/6 26/16 27/22 29/11

sort [3]  23/11 24/13 32/12
sorts [2]  21/5 25/2
sounds [1]  35/5
source [1]  15/6
speak [5]  5/4 26/20 30/24 30/25 35/13
specific [5]  10/9 26/20 27/4 29/19 35/16
specifically [2]  6/11 10/17
spend [1]  27/17
spent [2]  11/13 18/11
standard [1]  7/19
standards [1]  24/23
standpoint [1]  33/6
start [1]  16/18
state [15]  15/22 21/25 22/3 32/5 32/17 33/10 33/19 34/3 34/4 34/5 34/5 34/14 34/21 35/10 35/22
state's [1]  14/16
statement [2]  6/20 20/1
states [16]  2/13 3/22 3/23 3/25 7/24 14/16 14/21 14/22 21/1 22/17 29/24 30/2 33/11 34/13 34/23 35/2
States' [2]  6/4 30/9
statute [17]  15/22 15/22 22/3 22/16 22/24 23/8 23/9 23/14 23/16 23/22 24/9 30/15 32/2 32/20 33/4 35/20 36/2
statutes [2]  22/19 26/14
stay [1]  36/15
stick [2]  10/11 10/22
still [4]  11/14 11/14 28/9 31/17
stock [21]  6/23 7/13 7/18 7/19 11/16 11/18 11/19 11/24 12/4 12/10 16/20 16/21 16/23 16/23 17/2 17/5 18/20 18/21 20/6 29/18 29/18
stop [2]  8/4 8/5
story [3]  11/21 24/16 33/1
strap [2]  10/7 10/7
stretching [1]  31/6
stricken [1]  15/25
strict [1]  28/24
strictest [1]  28/24
stuff [2]  22/13 27/5
stupid [1]  17/5
subject [1]  18/1
such [1]  14/5
summary [1]  17/18
supported [1]  15/25
supports [2]  7/15 15/13
supposed [1]  3/11
Supreme [11]  6/1 14/19 21/2 21/4 22/14 22/20 23/1 31/23 33/24 36/7 36/9

sure [4]  13/23 25/10 26/11 35/13
survive [1]  11/21

**T**

tags [1]  28/4
take [6]  8/8 8/18 11/19 28/16 29/6 30/12
talk [2]  16/16 27/21
talked [2]  6/21 26/9
talking [5]  8/17 10/15 18/11 25/18 25/25
tax [3]  19/16 19/25 20/7
tell [3]  5/16 12/22 26/12
telling [2]  34/22 35/2
tells [1]  14/1
Tenth [4]  33/3 33/5 33/19 34/11
terminology [1]  7/2
terms [1]  26/1
than [11]  7/19 19/6 19/9 20/1 25/14 25/17 26/8 27/4 27/11 29/24 34/23
Thank [11]  4/1 4/3 4/9 4/16 4/17 5/2 16/5 17/9 26/25 30/4 36/13
that [251]
that's [58]
their [13]  17/24 18/2 18/15 19/4 22/2 24/22 24/22 24/25 28/4 28/19 28/19 33/25 34/13
theirselves [1]  28/19
them [5]  15/7 16/3 28/3 32/22 33/16
then [23]  8/7 8/19 12/15 12/23 13/8 13/13 19/13 19/20 22/1 22/6 22/23 26/20 27/9 29/1 29/1 32/3 32/22 33/1 33/3 35/22 35/23 35/23 35/24
theories [1]  24/24
there [34]  8/4 8/5 8/17 8/24 10/2 11/1 11/4 11/21 12/1 12/2 13/7 14/15 14/21 15/5 15/20 15/21 16/24 17/14 19/5 22/2 22/8 22/13 22/18 22/25 23/3 23/7 27/4 27/18 28/6 30/17 31/10 31/20 32/25 33/13
there's [22]  8/19 12/19 15/2 15/4 15/23 16/24 20/19 22/5 22/9 22/16 23/10 23/22 24/19 25/24 27/19 28/14 28/16 29/20 33/1 33/3 33/4 33/8
therefore [1]  33/15
thereunder [1]  15/15
these [11]  14/4 15/23 17/17 17/19 24/15 26/19 26/20 27/3 27/7 27/12 32/10
they [42]

they're [9]  15/3 19/9 19/18 23/6 28/3 28/5 32/11 32/24 34/6
they've [5]  20/16 20/22 20/23 21/2 29/2
thing [7]  4/21 10/8 19/3 27/21 30/6 33/5 33/13
things [7]  6/25 17/11 20/15 25/9 26/20 27/12 35/14
think [57]
thinking [1]  35/6
thinks [1]  27/7
thirty [1]  11/20
thirty-aught-six [1]  11/20
this [92]
those [24]  6/19 7/8 10/4 11/4 11/12 11/15 14/22 15/11 16/2 16/6 19/17 20/9 20/12 21/4 21/5 21/9 24/24 25/2 25/4 26/4 27/18 29/9 33/12 34/8
though [2]  19/10 21/12
thought [2]  18/10 27/14
through [10]  5/5 13/7 14/8 16/8 26/4 29/11 32/18 34/15 34/15 34/18
tidal [1]  5/9
time [14]  1/16 8/12 11/10 11/15 13/6 13/9 14/8 14/14 15/7 16/2 16/4 16/11 27/9 28/12
today [1]  26/21
today's [1]  5/12
too [3]  4/9 15/3 15/3
torn [2]  11/14 29/9
torts [1]  21/7
totally [1]  19/7
TRAN [1]  1/1
transcribed [2]  1/25 36/19
Transcriber [1]  36/23
TRANSCRIPT [1]  1/8
transported [1]  35/19
tried [1]  12/9
truly [4]  16/10 16/10 28/10 36/18
trust [2]  34/24 34/25
try [2]  12/11 12/12
trying [1]  27/6
TUESDAY [1]  1/14
two [3]  11/15 23/6 32/13
type [7]  5/19 10/23 13/1 15/10 27/7 28/20 36/10
types [2]  27/3 27/7

**U**

U.S [1]  14/19
uncomfortable [1]  12/4
unconstitutional [4]  31/8 31/19 31/21 34/10

under [20]  5/7 6/12 7/7 8/1 9/18 15/13 15/14 18/24 19/25 21/13 21/18 21/21 21/25 22/3 22/25 28/15 28/24 29/6 32/19 33/15
underneath [1]  7/9
understand [5]  6/4 6/9 11/12 27/19 31/4
understanding [4]  5/17 11/15 29/13 29/14
understood [1]  34/9
undertake [1]  14/22
undertaken [1]  13/1
unfounded [1]  33/15
uniform [1]  30/20
UNITED [9]  2/13 3/22 3/23 3/24 6/4 7/24 29/24 30/2 30/9
unlike [1]  23/15
unmanageable [1]  11/23
unreasonable [2]  24/22 25/1
unsafe [1]  11/23
unusual [1]  32/2
up [12]  5/4 12/6 12/7 12/23 19/14 22/7 28/25 30/6 33/11 33/16 33/19 34/14
upholds [1]  30/20
upon [1]  14/20
urge [2]  26/17 30/19
us [4]  11/16 20/25 26/22 30/7
USA [4]  1/7 1/8 2/11 2/11
use [8]  11/1 11/24 19/5 24/21 27/4 28/3 28/4 33/10
used [12]  10/9 10/15 10/16 10/17 11/2 13/14 13/15 13/16 13/17 13/17 27/23 29/20
user [1]  13/19
using [1]  14/10
usually [2]  10/11 20/20
utilize [3]  10/14 11/23 13/20
utilized [2]  9/21 28/22

**V**

variation [1]  8/21
variety [1]  27/9
VEGAS [1]  3/1
vendor [1]  19/24
versus [8]  3/3 3/5 6/22 16/9 21/3 22/21 23/13 25/25
very [13]  4/16 5/2 6/5 10/9 12/11 14/4 14/5 25/10 27/2 28/4 29/12 29/19 32/1
via [1]  2/1
vice [6]  2/3 2/4 2/5 2/8 4/14 5/11
VICKY [1]  2/9
video [1]  36/19
view [2]  18/18 30/7

**violation [6]** 22/24 31/19 32/21 33/20 34/12 34/18

**virtual [1]** 30/21

**W**

**waiting [1]** 29/22

**want [17]** 4/5 4/7 5/21 6/14 8/15 10/12 10/20 10/21 11/7 11/19 25/10 26/11 27/17 28/5 31/2 32/19 35/13

**wanted [1]** 13/12

**wants [5]** 10/23 26/16 26/19 26/19 34/5

**was [38]**

**wasn't [1]** 22/8

**wave [1]** 5/9

**way [15]** 8/19 17/3 18/21 19/13 20/1 23/2 23/22 24/20 24/22 28/14 28/17 32/8 32/17 34/6 36/7

**ways [1]** 13/14

**we [46]**

**we'll [2]** 6/5 25/6

**we're [10]** 10/14 11/7 17/12 25/10 25/25 26/6 26/11 32/22 34/19 35/8

**we've [5]** 6/21 15/24 21/21 26/23 35/14

**weapon [2]** 5/24 26/2

**weapons [1]** 24/15

**weather [1]** 5/7

**week [2]** 29/8 36/13

**weekend [2]** 11/13 28/5

**weeks [1]** 5/7

**well [16]** 4/15 4/19 5/1 8/4 10/12 10/17 15/23 16/14 24/1 24/1 24/4 24/9 27/24 31/11 33/12 33/16

**went [1]** 29/11

**were [6]** 10/1 10/2 18/2 19/22 21/20 21/25

**Wesson [1]** 22/21

**what [44]**

**what's [1]** 21/15

**whatsoever [1]** 32/9

**when [11]** 12/5 13/25 16/16 19/6 20/16 21/7 25/16 25/21 27/11 27/21 31/20

**where [18]** 5/17 5/20 6/23 8/14 11/6 11/25 12/9 14/1 14/15 16/11 16/13 17/12 22/6 28/15 29/14 34/6 35/9 35/22

**whether [25]** 5/18 6/11 6/16 7/10 7/10 7/16 7/22 9/3 9/14 9/22 14/17 15/1 15/2 15/12 17/13 17/19 17/20 19/7 27/13 28/20 30/12 30/14 33/9 33/18 34/14

**which [17]** 7/1 7/18

7/21 16/21 17/17 19/16 19/23 19/25 21/22 23/19 25/13 26/1 26/4 31/6 31/13 31/13 33/7

**who [11]** 3/5 3/24 4/25 11/16 14/4 28/2 28/5 28/22 32/10 35/23 35/24

**who's [1]** 17/4

**whoever [2]** 27/13 27/14

**whole [2]** 6/6 16/15

**why [8]** 10/9 13/18 13/19 14/11 18/5 18/7 18/8 28/7

**wide [1]** 27/8

**will [6]** 12/13 12/22 14/16 17/20 26/3 27/24

**Williams [1]** 36/23

**willing [1]** 36/11

**wish [1]** 10/19

**withdrawn [2]** 31/14 31/15

**within [4]** 9/22 30/13 30/15 36/3

**without [21]** 8/25 9/7 9/7 11/4 11/9 11/17 11/24 12/4 12/12 13/15 16/12 16/23 17/1 17/5 18/2 18/10 18/14 27/23 27/24 29/16 29/17

**work [5]** 12/11 27/24 27/24 27/25 28/1

**would [40]**

**wouldn't [1]** 34/19

**wrong [2]** 20/18 22/4

**wrote [1]** 17/25

**X**

**XXIX [1]** 1/6

**Y**

**Yeah [4]** 3/15 8/6 20/22 33/23

**yes [7]** 6/9 12/18 12/20 16/25 20/21 25/9 27/24

**you [140]**

**you'd [1]** 8/11

**you'll [2]** 7/1 9/17

**you're [14]** 8/17 8/18 10/12 10/17 12/13 21/8 23/23 24/5 24/13 25/16 32/15 32/21 35/6 35/9

**you've [14]** 8/20 9/1 9/2 12/9 12/9 12/10 12/10 15/18 24/20 24/21 25/12 32/4 32/20 33/16

**your [59]**