IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

GURINDER SINGH BAINS, as personal representative of the ESTATE of JASWINDER SINGH, deceased, HARPREET SINGH and his wife, DILPREET KAUR, and LAKHWINDER KAUR,

Plaintiff,

v.

AMERICAN TACTICAL, INC., ANTHONY DICHARIO, JOSEPH CALABRO, SCHMEISSER GMBH, and 365 PLUS D.O.O.,

Defendants.

Civil Action No. 2:24-cv-03970-BHH

**ORDER**

This matter is before the Court upon the motion to dismiss filed by Defendants American Tactical, Inc. ("ATI"), Anthony DiChario ("Mr. DiChario"), and Joseph Calabro ("Mr. Calabro") (collectively, the "ATI Defendants") pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), 12(b)(2), and 12(b)(6). (ECF No. 82.) For the following reasons, the Court grants in part and denies in part ATI Defendants' motion to dismiss.

## FACTUAL BACKGROUND

Plaintiffs bring this action for negligence, public nuisance, and unlawful marketing against Defendants. (ECF No. 53.) Specifically, they allege that ATI Defendants deliberately marketed, advertised, and sold 60-round high-capacity magazines (HCMs) to the general public, including citizens of South Carolina, without a single safeguard,

screening, or limit. (*Id.* ¶ 12.) Plaintiffs contend that ATI Defendants knew mass killers are attracted to HCMs, yet they specifically targeted these products to young men with delusions of fighting in a war, an obsession with video games, and insecurities regarding their masculinity. (*Id.* ¶¶ 11, 15.) According to Plaintiffs, ATI Defendants' reckless actions directly and foreseeably channeled a 60-round HCM into the hands of a young male (hereinafter "the Shooter"), who combined the HCM with an AR-15 style firearm to perpetrate a mass shooting on April 15, 2021, in Indianapolis, Indiana. (*Id.* ¶¶ 18-21.) Thirteen people were shot and eight died during the attack by the Shooter. (*Id.* ¶ 22.) Among the victims were Jaswinder Singh, Harpreet Singh, and Lakhwinder Kaur. (*Id.* ¶ 23.)

## PROCEDURAL HISTORY

On October 7, 2024, ATI Defendants moved to dismiss Plaintiffs' second amended complaint. (ECF No. 62.) After briefing on that motion was complete, ATI Defendants sought a stay of the proceedings, citing similarities between some of the issues in this case and a decision from the United States District Court for the Eastern District of Virginia, which was on appeal before the United States Court of Appeals for the Fourth Circuit. (ECF No. 71.)

In March 2025, this Court stayed the proceedings pending the Fourth Circuit's decision in *Lowy v. Daniel Defense, LLC et al.*, No. 24-1822 (4th Cir.). (ECF No. 80). The Fourth Circuit, in turn, had stayed the proceedings in *Lowy* pending a decision by the Supreme Court of the United States in *Smith & Wesson Brands, Inc., et al. v. Estados Unidos Mexicanos*, 605 U.S. 280 (2025) ("*Mexico*").

Both the Supreme Court and the Fourth Circuit have now issued their decisions,[1] and on February 25, 2026, ATI Defendants filed a renewed motion to dismiss. (ECF No. 82.) Plaintiffs filed a response in opposition, and ATI Defendants filed a reply. (ECF Nos. 83, 87.)

**LEGAL STANDARD**

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "This pleading standard does not require detailed factual allegations." *ACA Fin. Guar. Corp.*, 917 F.3d at 211 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, "[t]o meet the Rule 8 standard and 'survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Nadendla v. WakeMed*, 24 F.4d 299, 305 (4th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). However, the Court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotes omitted).

[1] The Supreme Court's decision in *Smith & Wesson Brands* does not impact any issues in this case, and thus, is not discussed further herein. However, the Fourth Circuit's decision in *Lowy* is relevant to this Court's analysis of ATI Defendants' assertion that Plaintiffs lack Article III standing; thus, the Court discusses this case further in this order. (*See* ECF No. 144-1 at 31-36.)

## DISCUSSION

In their motion to dismiss, ATI Defendants' assert the following: (1) the Protection of Lawful Commerce In Arms Act ("PLCAA") precludes Plaintiffs' claims; (2) Indiana's immunity statute, Ind. Code § 34-12-3, mandates the dismissal of Plaintiffs' claims; (3) dismissal is warranted for lack of causation as a matter of law under either South Carolina or Indiana substantive law; (4) the claims against Defendants DiChario and Calabro should be dismissed because the allegations do not establish that they personally committed a tortious act that could serve as a basis to hold them individually liable; (5) Plaintiffs' nuisance-based claims must be dismissed based on precedent that such claims are legally untenable related to the sale of lawful, non-defective products; (6) the complaint fails to state a claim for negligent infliction of emotional distress on behalf of Plaintiff Dilpreet Kaur; (7) Plaintiffs lack Article III standing; (8) Plaintiffs' claims against Defendant DiChario should be dismissed for lack of personal jurisdiction. (ECF No. 82-1.)

### I. Plaintiffs Possess Article III Standing To Sue.

The first issue the Court must address is whether Plaintiffs possess Article III standing to sue in federal court.

"Article III of the Constitution requires a litigant to possess standing to sue in order for a lawsuit to proceed in federal court." *See Ali v. Hogan*, 26 F.4th 587, 595 (4th Cir. 2022); *Benham v. City of Charlotte*, 635 F.3d 129, 134 (4th Cir. 2011) (explaining that "[s]tanding to sue is one aspect of the mandate that an action must present a 'case or controversy' under Article III"). Standing to sue has been described by the Supreme Court as the "irreducible constitutional minimum" that must be satisfied in all federal

cases. *See Lujan*, 504 U.S. at 560. As the Supreme Court recently emphasized, "[b]y limiting who can sue, the standing requirement implements 'the Framers' concept of the proper — and properly limited — role of the courts in a democratic society." *See Diamond Alt. Energy, LLC v. Env't Prot. Agency*, 606 U.S. 100, 111 (2025) (citation modified). Indeed, "[s]tanding doctrine also tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Id.*

To that end, in its 1992 *Lujan* decision, the Supreme Court outlined the three requirements a plaintiff must establish in order to possess Article III standing: (1) "an injury in fact" that is "concrete and particularized"; (2) "a causal connection between the injury and the conduct complained of," such that the injury is "fairly traceable to the challenged action of the defendant"; and (3) a likelihood that the injury will be "redressed by a favorable decision." *See* 504 U.S. at 560-61 (citation modified). Ultimately, it is the plaintiff who bears the burden of establishing Article III standing to sue in federal court "at the time he filed suit." *See Carney v. Adams*, 592 U.S. 53, 59 (2020); *Friends of the Earth, Inc.* v. *Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000).

Of special relevance here, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *See Lujan*, 504 U.S. at 561 (citation modified). In that regard, although a plaintiff is required to allege "nonconclusory factual details" in the complaint, the Fourth Circuit has recognized that this requirement is "tempered by the recognition that a plaintiff

may only have so much information at [his or her] disposal at the outset" of litigation. *See Robertson v. Sea Pines Real Est. Cos., Inc.*, 679 F.3d 278, 291 (4th Cir. 2012).

Moreover, a federal court is obliged to analyze the issue of Article III standing "differently depending on the stage of the litigation at which the challenge is brought and the substance of the defendant's arguments." *See Overbey v. Mayor of Balt.*, 930 F.3d 215, 227 (4th Cir. 2019); *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 212 (4th Cir. 2017). At the motion to dismiss stage, the Supreme Court has characterized the *Lujan* standing requirements as being "relatively modest." *See Bennett v. Spear*, 520 U.S. 154, 171 (1997). And that is particularly so as it relates to traceability. *See DiCocco v. Garland*, 52 F.4th 588, 592 (4th Cir. 2022) (recognizing that "[a]t the motion-to-dismiss stage, [the traceability] burden is relatively modest . . . and lower than the causation showing required to prevail in a tort suit"); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) ("Proximate causation is not a requirement of Article III standing[.]").

Here, ATI Defendants do not argue that Plaintiffs have failed to satisfy the first and third of the *Lujan* elements. After reviewing the allegations in the amended complaint, the Court is satisfied that these *Lujan* elements are established. *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (recognizing that federal courts have "an independent obligation to assure that [Article III] standing exists, regardless of whether it is challenged by any of the parties"). Thus, the question is whether Plaintiffs' factual allegations establish "a causal connection between the injury and the conduct complained of," such that the injury is "fairly traceable" to ATI Defendant's actions. *See Lujan*, 504 U.S. at 560.

Mindful that Plaintiffs' burden of proof as to this element is "relatively modest" at this stage, the Court concludes that the amended complaint satisfies this element. *DiCocco*, 52 F.4th at 592.

As noted at the outset, ATI Defendants sought and the Court granted a stay of this matter pending a decision by the Fourth Circuit in *Lowy* because, as stated by ATI Defendants, "the claims in this case are nearly identical to those" asserted in *Lowy*, and the Fourth Circuit's ruling will be "precedential as to whether the ATI Defendants' motion to dismiss should be granted in this case." (ECF No. 71 at 5, 7.) Indeed, as ATI Defendants explained:

> Plaintiffs in *Lowy* seek to hold the various manufacturers liable for violations of the Virginia False Advertising Statute (Va. Code Ann. § 18.2-216, the Virginia Consumer Protection Act (Va. Code Ann. § 59.1 196 et seq.), negligence, and negligence per se, arising from their roles in the design, manufacture, and marketing of the rifle, magazines, and grips used by the shooter. The *Lowy* plaintiffs claimed that defendants had "deceptively and unfairly marketed their assault rifles, rifle accessories, and ammunition in ways designed to appeal to the impulsive, risk-taking tendencies of civilian adolescent and post-adolescent males." *Lowy v. Daniel Defense, LLC*, 2024 WL 3521508 at *1. Such claims are nearly identical to those raised in this case. Plaintiffs seek to hold ATI Defendants liable for negligence, negligent infliction of emotional distress, wrongful death, and public nuisance premised upon ATI manufacturing, marketing, distributing, and selling the magazine used by the shooter. Plaintiffs' basis for these claims against the ATI Defendants is that "Defendants target their advertising and marketing of [high-capacity magazines] to exactly this vulnerable group: emotionally troubled young men." See ECF Doc. 53 ¶ 115.

(*Id*. at 5-6.) The district court in *Lowy* granted the defendants' motion to dismiss for lack of subject matter jurisdiction. *Lowy v. Daniel Def., LLC, et. al.*, No. 1:23-cv-1338, 2024 WL 3521508 (E.D. Va. 2004). Not surprisingly, ATI Defendant's original motion to dismiss on standing grounds relied heavily on that district court's decision. (*See, e.g.*, ECF No. 62-1 at 13 ("[T]he allegations regarding the ATI Defendants' advertising and marketing,

and the alleged effects on the Shooter as a cause of this incident, are closely aligned with the *Lowy* case. Therefore, the same result should occur.").)

The Fourth Circuit, however, did not agree with the district court's findings on standing. *Lowy v. Daniel Def., LLC*, 167 F.4th 175, 196 (4th Cir. 2026) ("[W]e agree with the plaintiffs that the complaints have demonstrated that the defendants' actions were "at least in part responsible for" causing the plaintiffs' injuries, and that the defendants' conduct had a "predictable effect" on the actions of the Shooter.") Despite the Fourth Circuit's reversal, ATI Defendants still argue in their renewed motion that "Plaintiffs cannot satisfy Article III's causation requirement" because they have failed "to allege facts sufficient to establish that Defendants' conduct either had a 'predictable effect' on the decision of the [Shooter], or a 'determinative or coercive effect' on the [Shooter]'s actions." (ECF No. 82-1 at 34 (quoting *Lowy*, 2026 WL 376731, at *10).) Given that ATI Defendants can no longer rely on the district court's findings in *Lowy*, they instead ask the Court to adopt the reasoning set forth in Judge Quattlebaum's dissenting opinion in *Lowy*. (*Id.* at 34-35.)

In response, Plaintiffs highlight the similarity in the allegations in their amended complaint and the allegations in the *Lowy* complaint:

> The Second Amended Complaint here makes very similar allegations. *See, e.g.,* SAC at ¶¶ 82 ("Because Defendants were aware of the attraction by mass killers, like the Shooter, to HCMs like the Magazine, Defendants' practices in targeting their marketing of these products to individuals like the Shooter are offensive to public policy"); *id.* at ¶¶ 109-116 (the shooter fell within a dangerous demographic likely to misuse HCMs); *id*. at ¶¶ 126-133 (discussing how the equipment and tactics in particular militaristic advertisements Defendants chose to display on social media platforms closely mirrored the equipment and tactics ultimately employed by the Shooter); *id*. at ¶ 144 ("Upon information and belief, the Shooter was thus foreseeably motivated by Defendants' marketing and design to purchase the Magazine and use it to carry out the Attack"). Here, however, Plaintiffs

> have gone above and beyond the allegations that were sufficient to confer standing in *Lowy*—providing additional details about this shooter's exposure to one or more specific instances of Defendants' marketing. *E.g., id.* at ¶¶ 119-123 (discussing messages on the packaging for the high-capacity magazine). As in *Lowy*, these allegations support a reasonable inference that the Shooter was exposed to Defendants' marketing and was motivated by this exposure to use one of Defendants' high-capacity magazines in the attack.

(ECF No. 83 at 35-36.) Given the Fourth Circuit's recent decision, Plaintiffs contend that "[u]nder *Lowy*, [they, too,] have established the traceability needed to satisfy Article III standing." (*Id.* at 36.)

After reviewing the allegations in the amended complaint and the Fourth Circuit's recent decision in *Lowy*, the Court finds that Plaintiffs possess Article III standing to sue. In other words, the Court finds that ATI Defendants have not – and cannot based on their prior admissions – set forth any argument for why the Court should distinguish the allegations at hand from those alleged in *Lowy* to arrive at a different result. Moreover, the Court declines Defendants' invitation to flout binding precedent.

## II. The PLCAA Does Not Preclude Plaintiffs' Claims.

The PLCAA is a specialized federal law providing legal protection to the firearm industry. It bars lawsuits against a manufacturer or seller of a qualified product. 15 U.S.C. §§ 7902(a), 7903(5)(A). A "qualified product" is defined as a firearm, ammunition, or "a component part of a firearm or ammunition." § 7903(4). Claims that do not involve "qualified products" are not affected by PLCAA. *See* § 7903(5)(A). Similarly, in relevant part, the PLCAA applies only to "manufacturers" or "sellers" of qualified products, which, as relevant here, are defined as entities "engaged in the business" of manufacturing or selling a qualified product and who are licensed under federal law to engage in such a business. *Id*. § 7903(2), 6(A)-(B).

Here, as highlighted above, Plaintiffs have crafted their amended complaint to avoid the protections of the PLCAA. Indeed, Plaintiffs' claims are exclusively for the HCM sold to the shooter, not for the sale of the firearm itself. As explained further, the Court finds that the HCM is an accessory and, therefore, not a "qualified product" triggering PLCAA protection.

ATI Defendants argue that their HCM is a "component" part of the firearm and, thus, a "qualified product" under the PLCAA. (ECF No.82-1 at 14.) They rely on *Prescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1175 (D. Nev. 2018), and the district court's decision in *Lowy*, 2024 WL 3521508, at *3, *rev'd in part & vac'd in part on other grounds*, 2026 WL 376731. (*Id.* at 14-16.)[2] The *Prescott* court addressed whether bump stocks are a component of a firearm once installed. 341 F. Supp. 3d at 1187-1190.[3] "A bump stock is a modified type of rifle stock that replaces the existing stock." *Id.* at 1189-90 (noting that "after-market installation, as well as after-market enhancement, do not necessarily convert a component into an accessory"). The court reasoned that a bump stock becomes functionally the rifle's stock, and a "stock is an integral component of a rifle as it permits the firearm to be fired from the shoulder." *Id.* at 1189. Thus, according to the *Prescott* court, because "a rifle cannot operate as a rifle without a stock," a bump stock that fulfills this role becomes a component "upon installation" even if it adds functionality to the weapon. *Id.* at 1189-90. The district court in *Lowy* concluded, citing *Prescott*, that, "when

[2] ATI Defendants also provide the following parenthetical cite in support of their position: "*See In re Academy, Ltd.*, 625 S.W.3d 19, 29 (Tex. 2021) ("As explained, both firearms and magazines (along with other component parts) are 'qualified products' subject to the PLCAA's general prohibition against qualified civil liability actions…")." However, as noted by Plaintiffs, the Supreme Court of Texas in *In re Academy* did not analyze the issue now before the Court; rather, "the issue was not in dispute between the parties and so the issue was not addressed by the court." (ECF No. 83 at 17.) Indeed, the Court's independent review of this case reveals no analysis of the relevant issue.

[3] The parties did not dispute, and the court agreed, that a "stock" is a component part of a rifle. 341 F. Supp. 3d at 1189.

a firearm user substitutes the original components of their firearm for defendants' magazines and grips, defendants' magazines and grips then become component parts of the newly assembled firearm." 2024 WL 3521508, *3.

In response, Plaintiffs contend that ATI Defendants' HCM is an accessory and not a "qualified product" under the PLCAA. (ECF No. 83 at 11-19.) Relying on the plain meaning of the word "component," as it is not defined in the PLCAA, Plaintiffs argue that for a component part to be "essential" to a "firearm" it must be essential to the function of firing a shot. (*Id.* at 13; *see id.* at 12 (noting that the "Lawful Commerce Act's definition of 'firearm' hinges on the weapon's ability to fire a shot—'to expel a projectile,' in the language of the statute, § 921(a)(3)").) Plaintiffs also rely on *Prescott* and explain why ATI Defendants' reliance on this case is misplaced:

> Unlike rifle stocks, a rifle magazine— original or aftermarket replacement—is not necessary to the function of a rifle. As alleged in the Second Amended Complaint, with supporting evidence, a magazine is not needed to load, fire, or discharge a bullet. *See* SAC ¶¶ 67-70. While a magazine may add to the convenience or effectiveness of a rifle, those attributes render it merely an accessory—not an essential component part.

(*Id.* at 14.) Plaintiffs then draw the Court's attention to *Green v. Kyung Chang Indus. USA Inc.*, No. A-21-838762-C, 2022 WL 987555 at *1 (Nev. Dist. Ct. Mar. 23, 2022), a Nevada state district court decision that not only adopted the above meaning of "component part" from *Prescott* but, according to Plaintiffs, is the only court to address the issue now before this Court. (*Id.*) The *Green* court denied the magazine manufacturer's motion to dismiss under the PLCAA after finding that the magazine in question is not a component part of firearm because "the subject firearm can operate without a magazine." *Green*, 2022 WL 987555, at *1 (finding further that "the fact that the subject 100 round magazine was not included with the firearm by the manufacturer weighs in favor of it being an accessory

and not component”). Plaintiffs contend that “[a]s with the rifle in *Green*, the rifle here can and will function without a magazine.” (ECF No. 83 at 15.) Indeed, the complaint alleges:

> [a] 60-round HCM like the Magazine is not a component part of a firearm. Indeed, a magazine is not a component part of a firearm. ATI advertises HCMs, including the Magazine, in the ‘Accessories’ section of its website. A 60-round HCM is not essential to the discharge of a gun. Indeed, a gun like the Firearm can and will fire with no magazine attached by a round in the chamber. In fact, a gun like the Firearm can be, and often is, manually loaded, one round at a time.

(ECF No. 53 ¶¶ 64-67; *see also id.* ¶ 69 (alleging that a magazine is not integral to the functioning of a semi-automatic weapon).) Thus, Plaintiffs state that “an AR-15-style rifle is perfectly capable of functioning as a rifle without a magazine installed,” and they argue that based on the reasoning in *Prescott* and *Green*, the Court should find that ATI Defendants’ HCM is not a “component part” of the firearm and, thus, is not a “qualified product” under the PLCAA. (ECF No. 83 at 16.) Plaintiffs further argue that the Court should reject ATI Defendants’ reliance on the U.S. Bureau of Alcohol, Tabacco, Firearms and Explosives’ (“ATF”) definition of a semi-automatic weapon to support their argument that ““[w]ithout a magazine, there is no ‘next round’ available to be chambered, and the ‘semi-automatic’ design feature of such a rifle will not function….” (*Id.* at 18 (quoting ECF No. 82-1 at 14).) Plaintiffs note that this exact argument was before the court in *Green*, and that court rejected it, reasoning that the firearm “can discharge a bullet without a magazine in it. It’s not an essential part where it prevents it from doing it, i.e., if it didn’t have a barrel in it, well, we would have a whole different question here.” (*Id.* (quoting ECF No. 83-1, *Green* January 18, 2022, motion to dismiss hearing transcript at 16:12-15).) Plaintiffs further note that:

> The court in *Prescott* noted that “[a]n accessory… is … an object or device that is not essential in itself but adding to the beauty, convenience, or

> effectiveness of something else." *Prescott*, 341 F. Supp. 3d at 1188. A magazine fits squarely within this definition. Defendants' argument that the "semi-automatic design feature" of a rifle will not function does not amount to a magazine becoming integral to the rifle's discharging of a bullet. The semi-automatic design feature, which is not itself essential, merely adds to the convenience or effectiveness of the rifle.

(*Id.* at 19.) Finally, as to ATI Defendants' reliance on the district court's decision in *Lowy*, Plaintiffs note that "[e]ven aside from the fact that the district court opinion was vacated, that issue – whether a magazine is a component part of a rifle – was not actually addressed in *Lowy."* (*Id.* at 17 (pointing out that the court "jumped straight to *Prescott's* second step" and failed "to determine whether in the first place a magazine is essential to the operation of a rifle").)

After close review, the Court finds that ATI Defendants' HCM is an accessory. The distinction between an "accessory" and a "component part" is a simple one. That is, whether the item in question enhances the firearm's effectiveness or aesthetics, or whether it is essential to the functioning of the firearm. *See, e.g., Prescott*, 341 F. Supp. 3d at 1188. If it is the former, then it is an accessory, and if it is the latter, then it is a component part. Under this simple framework, it is plain that the item in question here – a 60-round high-capacity magazine – is an accessory rather than a component part of the AR-15 rifle. The firearm can be fired and used without a high-capacity magazine. ATI Defendants' 60-round high-capacity magazines instead only serve to augment the efficacy of the firearm. Indeed, as alleged by Plaintiffs, the HCM in question allows a user of the firearm to "fire 60 rounds without reloading." (ECF No. 53 ¶ 63.)

ATI Defendants argue that their HCMs are component parts of the firearm. While the Court appreciates their arguments and acknowledges that the issue before it presents a close call, the Court cannot agree. And while courts have concluded that items that

replace a part of the firearm become component parts, for example, an aftermarket "bump" stock replacing the standard existing stock, or an aftermarket "MEAN lock" that, once installed, is necessary for the operation of the firearm, the same does not hold true for ATI Defendants' HCMs. *Prescott*, 341 F. Supp. 3d at 1188*; Salter v. Meta Platforms, Inc.*, 240 A.D.3d 1378, 1383, 240 N.Y.S.3d 610, 617 (2025) (holding that like the bump stock in *Prescott*, the MEAN lock is a qualified product under the PLCAA because it is an aftermarket feature that replaces an existing component part – the magazine release button). This is largely because, as Plaintiffs allege*, see supra*, the firearm in question here does not require any magazine in order to function and fire a shot, and it certainly does not ***require*** a 60-round high-capacity magazine to "expel a projectile." 18 U.S.C. § 921(a)(3). Accordingly, the Court holds that the HCM at issue here is not a component part; therefore, it is not eligible for protection under the PLCAA. Consequently, Plaintiffs' claims related to this accessory may proceed against ATI Defendants.

## III. Plaintiffs' Claims Are Not Barred by the Indiana Immunity Statute, Ind. Code § 34-12-3-3.

The Indiana Immunity Statute provides, with certain exceptions not relevant here, that a person may not bring or maintain an action against a firearms or ammunition manufacturer or seller for:

> (1) recovery of damages resulting from, or injunctive relief or abatement of a nuisance relating to, the **lawful**:
>
> (A) design;
>
> (B) manufacture;
>
> (C) marketing; or
>
> (D) sale;
>
> of a firearm or ammunition for a firearm; or

> (2) recovery of damages resulting from the criminal or unlawful misuse of a firearm or ammunition for a firearm by a third party.

Ind. Code § 34-12-3.

In their motion to dismiss, Defendants argue that subsection 3(2) precludes Plaintiffs' claims, relying on *In City of Gary v. Smith & Wesson* ("*Gary III*"), 126 N.E.3d 813 (Ind. Ct. App. 2019), where an appellate court affirmed the trial court's entry of judgment on the pleadings as to damages resulting from the criminal or unlawful misuse of a firearm by a third party. (ECF No. 82-1 at 26); *see Gary III*, 126 N.E.3d at 827-828 (noting that the parties did not dispute that subsection 3(2) bars recovery of these damages). However, as noted by Plaintiffs and not addressed by ATI Defendants in their reply, the *Gary III* court also ***reversed*** the trial court's entry of judgment on the pleadings as to Count I (public nuisance)[4] and Count II (negligent distribution and marketing), holding that these counts sufficiently alleged unlawful conduct by Defendants in the sale, marketing, and distribution of handguns and that the Immunity Statute does not apply to such unlawful conduct. *Id.* at 828-831. Given that Plaintiffs' claims are based on allegations that Defendants engaged in unlawful marketing, the Court finds that *Gary III* supports Plaintiffs' position. Indeed, by its own terms, subsection 3(1) of the statute does not bar an action for recovery of damages resulting from, or injunctive relief of abatement of a nuisance relating to, the ***unlawful marketing*** of a firearm or ammunition for a firearm. Further, as noted by Plaintiffs, it would appear subsection 3(1) is in fact inapplicable here because, unlike in *Gary III* where the issue was the alleged unlawful sale and marketing

---

[4] Similar to the city in *Gary III*, Plaintiffs allege that ATI Defendants knowingly violated Indiana's prohibition on creation of a public nuisance by knowingly and unreasonably endangering the health and safety of numerous members of the public, including Plaintiffs, through their unlawful marketing of products like the HCM at issue here. After reviewing the cases ATI Defendants rely on, the Court rejects ATI Defendants' argument. Rather, the Court finds that Plaintiffs' allegations sufficiently plead a claim for public nuisance.

of ***firearms***, Plaintiffs' claims relate to the alleged unlawful marketing of a high-capacity ***magazine***, which is neither "a firearm or ammunition for a firearm." Ind. Code § 34-12-3(1). But, even putting this distinction aside, pursuant to *Gary III*, there can be no dispute that subsection 3(1) does not bar the ***unlawful*** conduct alleged here. Thus, for these reasons, the Court holds that Plaintiffs' claims are not barred by Indiana's Immunity Statute.[5]

## IV. Plaintiffs' Allegations Establish Proximate Cause at the Pleadings Stage.

ATI Defendants argue that under the pleading standards illustrated in both *Iqbal* and *Twombly*, Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6) because the Complaint fails to establish causation as a matter of law." (ECF No. 82-1 at 27.) In sum, ATI Defendants argue that the "Shooter's willful, malicious criminal act constitutes an intervening act which breaks the causal chain because it was not reasonably foreseeable that the ATI Defendants' alleged negligence would result in a criminal shooting." (*Id.* at 28.)

In response, Plaintiffs argue that they have sufficiently established proximate cause at this stage, and they highlight the factual allegations in the complaint that they believe establish that "Defendants' negligent marketing campaign did in fact influence the Shooter's behavior" such that the Shooter's criminal act was indeed foreseeable. (ECF

[5] ATI Defendants also argue that Plaintiffs' public nuisance claims should be dismissed because selling products that are legal cannot be a basis for public nuisance liability. (ECF No. ECF Nos. 82-1 at 30-31.) After reviewing the cases ATI Defendants rely on, the Court declines to dismiss these claims on this basis. Similar to the plaintiff in *Gary III*, Plaintiffs allege that ATI Defendants knowingly violated Indiana's prohibition on creation of a public nuisance by knowingly and unreasonably endangering the health and safety of numerous members of the public, including Plaintiffs, through their unlawful marketing of products like the HCM at issue here. The Court finds that Plaintiffs' allegations sufficiently plead a claim for public nuisance.

No. 115 at 28-29; *see id.* at 28-30 (pointing to SAC ¶¶ 5, 7, 19, 21, 29, 73-74, 96-97, 117-21, 126, 128, 130, 132, 142).) Plaintiffs argue:

> these factual allegations in the complaint "allow this Court to draw the reasonable inferences – required to be drawn in Plaintiffs' favor at this stage – that Defendants' negligent and deceptive marketing campaign encouraged the Shooter to obtain and use the high-capacity magazine, that that the Shooter was influenced and emboldened by Defendants' advertisements and marketing, and that as a foreseeable result of Defendants' marketing, the Shooter carried out an attack in a military style, with a level of lethality made possible by use of Defendant's magazine.

(*Id.* at 30.) Plaintiffs rely on *Soto v. Bushmaster Firearms Int'l, LLC*, 331 Conn. 53, 120 (Conn. 2019), where a court, "faced with similar marketing claims, found these allegations sufficient to establish proximate cause at the pleadings stage." (*Id.*) Plaintiffs state:

> In *Soto*, the plaintiffs alleged that the defendant "knowingly marketed, advertised, and promoted the [firearm] for civilians to use to carry out offensive, military style combat missions against their perceived enemies." 331 Conn. at 65-66, *compare* with SAC ¶ 7 (defendant's "advertising scheme…encouraged criminal use of the [high-capacity magazines] by focusing on the [high-capacity magazines'] assaultive and offensive uses), ¶ 17(f) (sic) (defendants "employ[ed] a marketing scheme for their HCMs that focused on the HCMs' offensive and assaultive capabilities.").
>
> The *Soto* court found that proximate cause was established at the motion to dismiss stage because the plaintiffs there alleged that "defendants' wrongful advertising magnified the lethality of the Sandy Hook massacre by inspiring [the shooter] or causing him to select a more efficiently deadly weapon for his attack." *Soto*, 331 Conn. at 98, *compare* ("The lethality of the Attack would not have been possible without the Magazine." SAC ¶ 29; and "The high capacity of the Magazine emboldened the Shooter to commit the Attack, knowing he had the ability to fire 60 rounds continuously without the need to pause to reload." SAC ¶ 31). On considering the plaintiffs' allegation, the *Soto* court noted at the motion to dismiss stage, it had to assume this allegation could be proven, and denied defendant's motion to dismiss. *Soto*, 331 Conn. at 98.

(ECF No. 83 at 30-31.) Plaintiffs also rely on *Prescott v. Slide Fire Sols.*, LP, 410 F. Supp. 3d 1123 (D. Nev. 2019), noting that the *Prescott* court "found plaintiffs' allegations that

defendant's misrepresentations that its bump stock was legal 'enticed users like [the shooter] . . . to purchase 'bump stock' devices from [defendant].'" (ECF No. 83 at 31 (quoting *Prescott*, 410 F. Supp. 3d at 1140).) Plaintiffs further note that the plaintiffs in *Prescott* "alleged that the defendant promoted its bump stock for 'its high rate-of-fire capabilities,' and that the defendant should have then "foresee[n] how [bump-stocks] would be misused' in the manner resulting in plaintiffs' injuries.'" (*Id.* (quoting *Prescott*, 410 F. Supp. 3d at 1140).) Plaintiffs argue that the same reasoning applies here to establish proximate cause. (*Id.*)

After review, the Court finds that Plaintiffs' complaint contains sufficient allegations to establish proximate cause at this early stage in the litigation. Under both South Carolina and Indiana law, an intervening cause does not become a superseding cause breaking the chain of caution if it was foreseeable. *See, e.g., Cooke v. Allstate Mgmt. Corp*., 741 F. Supp. 1205, 1214 (D.S.C. 1990) ("The original negligent actor is not relieved of liability unless the subsequent criminal act was unforeseeable."); *Hall v. State*, 271 N.E.3d 168, 173 (Ind. Ct. App. 2025) ("[A] n actor is not held responsible for consequences which are unforeseeable."), *transfer denied*, 274 N.E.3d 934 (Ind. 2026). Here, Plaintiffs' allegations sufficiently allege how Defendants' marketing and advertising foreseeably influenced and encouraged the Shooter to use the HCM for a criminal purpose, resulting in Plaintiffs' injuries, to withstand a motion to dismiss on this basis. *See Prescott*, 410 F. Supp. 3d at1142-43 ("Because Plaintiffs have adequately pleaded that the shooter's actions were a foreseeable consequence of Slide Fire's negligent marketing, distribution, and sales, the Court is satisfied, at this stage, that he did not break the chain of causation.")

## V. The Complaint Fails to State a Claim for Negligent Infliction of Emotional Distress on Behalf of Plaintiff Dilpreet Kaur.

Defendants move to dismiss Plaintiff Dilpreet Kaur's claim for negligent infliction of emotional distress ("NIED"). (ECF No. 82-1 at 32; *see* ECF No. 53, Tenth Cause of Action, ¶ 333 ("As a result of the aforementioned negligence by Defendants, Dilpreet Kaur was caused to suffer and will continue to suffer in the future, significant expenses due to her husband's disability as well as a loss of consortium and loss of assistance, all to the detriment of her marital relationship to Plaintiff Harpreet Singh.") According to Defendants, this claim must be dismissed as a matter of law under either Indiana or South Carolina law because "Plaintiff Dilpreet Kaur has not met any of the requirements to establish" such a claim. (ECF No. 82-1 at 32.) As summarized by Defendants:

> There is no allegation that Plaintiff Dilpreet Kaur was present at the FedEx facility when her husband was shot. Plaintiff Dilpreet Kaur has not sustained a direct impact, has not witnessed or come upon an accident involving a loved one, her physical safety was never endangered, and she never feared for her own safety. Plaintiff Dilpreet Kaur was not a bystander to the Incident, was not in close proximity to the shooting, and did not contemporaneously perceive the injury to her husband.

(*Id.*)

Plaintiffs fail to respond to Defendants' argument in their opposition brief. (*See generally* ECF No. 83.) It appears Plaintiffs have, therefore, conceded Defendants' argument in support of dismissing this claim on behalf of this Plaintiff. *See, e.g., Campbell v. Rite Aid Corp.*, No. 7:13-cv-02638-BHH, 2014 WL 3868008, at *2 (D.S.C. Aug. 5, 2014) ("Plaintiff failed to respond to [Defendant's] argument regarding causes of action 1 and 2, and the Court can only assume that Plaintiff concedes the argument."); *Brewster v. Ne. Illinois Reg'l Commuter R.R. Corp.*, No. 16-CV-10904, 2018 WL 1035868, at *3 (N.D. Ill. Feb. 23, 2018) ("As Plaintiffs failed to defend their pleading substantively and properly

respond to the deficiencies that Defendants articulated in both their motions to dismiss and their Rule 11 Letter, Plaintiffs have waived their opposition to the instant Motion to Dismiss."), *aff'd sub nom. Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049 (7th Cir. 2019).[6]

In any event, this Court's review of the complaint reveals no allegations to support that Plaintiff Dilpreet Kaur was present at the facility during the shooting or that she witnessed or came on the scene soon after the injury to her husband. (*See generally* ECF No. 53.) Thus, the Court finds that the complaint fails to state a NIED claim on behalf of Plaintiff Dilpreet Kaur under both Indiana and South Carolina law. *See Kinard v. Augusta Sash & Door Co.*, 286 S.C. 579, 582-82 (1985) (outlining the elements for this claim); *Keim v. Potter*, 783 N.E.2d 731, 734 (Ind. Ct. App. 2003) (same). Therefore, the Court dismisses this claim as to this Plaintiff.

**VI. The Court May Exercise Specific Personal Jurisdiction Over Mr. Calabro.**

For a federal district court to exercise personal jurisdiction over a nonresident defendant, such jurisdiction must be authorized by (1) the long-arm statute of the state in which the district court sits; and (2) the Due Process Clause of the Fourteenth Amendment. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014).

South Carolina's Long-Arm statute permits the exercise of personal jurisdiction over a defendant to the outer limits allowable under federal due process. Thus, the traditional two-step analysis collapses into one question: is this Court's assertion of

[6] The Court notes that Defendants' reply brief does not contain any further discussion in support of dismissing this claim. (*See generally* ECF No. 85.)

personal jurisdiction consistent with the Due Process Clause of the Fourteenth Amendment? *See Universal Leather,* 773 F.3d at 558. The Due Process Clause of the Fourteenth Amendment is satisfied for personal jurisdiction purposes if a defendant "purposefully availed itself of the privilege of conducting business in the forum state" by establishing sufficient "minimum contacts such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Fourth Circuit utilizes a three-factor test in deciding whether specific jurisdiction arises out of defendant's minimum contacts with the forum state: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Unspam Techns., Inc. v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013).

ATI Defendants contend that the Court does not have specific personal jurisdiction of Mr. Calabro. They state that Mr. Calabro does not maintain an office in South Carolina, does not own property in South Carolina, did not solicit or initiate business in South Carolina, has not engaged in any significant or long-term business activities in South Carolina, and was never to perform any contractual duties in South Carolina. (ECF No. 82-1 at 41.) In sum, ATI Defendants argue that "remote employment of a single employee, alone, is insufficient to constitute purposeful availment." (*Id.*) They further contend that any contacts Mr. Calabro had with South Carolina "were, at most coincidental and

insignificant" because if ATI officials happen to be located in another state, "then Calabro would submit his work there." (*Id.* at 42-43.) ATI Defendants also argue:

> Plaintiffs have offered no well pled allegations of fact that the Shooter viewed an advertisement created, forwarded, or approved by Calabro; or that the Shooter viewed such an advertisement in South Carolina, purchased the Magazine in South Carolina, or that the Magazine at issue in this case even passed through South Carolina.

(*Id.* at 43.) Further, ATI Defendants contend that Plaintiffs have failed to show that the exercise of personal jurisdiction over Mr. Calabro would be constitutionally reasonable. (*Id.* at 43-44.) According to ATI Defendants, exercising personal jurisdiction over him is unreasonable because: (1) Mr. Calabro will incur a burden litigating here because he lives in New York; (2) South Carolina "has very little interest in determining how products that are legal in South Carolina are advertised, marketed and sold in New York, Indiana, or any other state"; (3) the harm took place in Indiana and any advertisements the Shooter would have seen would have been in Indiana; and (4) "South Carolina has no interest in the social policies of Indiana regarding products like the [HCM]." (*Id.* at 43-44.)

Finally, ATI Defendants argue that subjecting Mr. Calabro to personal jurisdiction in South Carolina would violate due process, relying on *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County ("BMS")*, 582 U.S. 255, 265 (2017) ("What is needed – and what is missing here – is a connection between the forum and the specific claims at issue."). (*Id.* at 44.) According to ATI Defendants:

> [A]ll of the alleged conduct giving rise to Plaintiffs' claims occurred in Indiana, or arguably in New York if Calabro's work for ATI is somehow considered a connection to their claims. Due process therefore prohibits the exercise of personal jurisdiction over Calabro in South Carolina in connection with the claims in this case.

(*Id.* at 44.)

In response, Plaintiffs argue that the Court can exercise specific personal jurisdiction over Mr. Calabro because their allegations show that Calabro's conduct connects him to South Carolina in a meaningful way. (ECF No. 83 at 37.) Plaintiffs note that, unlike the "out-of-district cases" cited by ATI Defendants, here, Plaintiffs seek to sue "a remote employee, in his *employer's* home state." (*Id.* at 38 (emphasis in original).) They argue that Mr. Calabro purposefully availed himself of South Carolina by working for a South Carolina-based employer and because Mr. Calabro sends his marketing, promotional, and advertising work on behalf of ATI to ATI executive officials in South Carolina for review and approval before being published. (*Id.* at 37-38; *see* SAC ¶ 50.) Thus, "[b]ecause Calabro directs and oversees tortious and unlawful advertisements that are produced in South Carolina," Plaintiffs contend that Mr. Calabro "has purposefully availed himself to the privileges of conducting activities in this forum." (*Id.* at 39.)

Next, Plaintiffs argue that the allegations in their complaint establish that their claims arise out of or relate to Mr. Calabro's ties to South Carolina, as "this lawsuit arises out of and relates to ATI's marketing decisions, which are directed, albeit remotely, by Calabro through communications with ATI's South Carolina headquarters." (*Id.* at 40.) While these materials are distributed nationwide, as noted by ATI Defendants, Plaintiffs point out that "they are produced, fine-tuned, and finalized by ATI in South Carolina, with Calabro participating remotely." (*Id.*) Plaintiffs also note that while Plaintiffs were not injured in South Carolina or harmed by a HCM purchased in South Carolina, "the conduct that caused their injuries – ATI's advertisements – has taken place and continues to take place at ATI's headquarters in Summerville[,]" South Carolina. (*Id.* at 41.)

Moreover, Plaintiffs argue that exercising personal jurisdiction of Mr. Calabro is reasonable for three reasons: (1) the burden of litigating in South Carolina is slight, as "his employer – with whom he shares counsel – is based here"; (2) South Carolina has an interest in hearing this dispute, as it "involves alleged misconduct by a South Carolina company" and "allegedly tortious and unlawful advertisements" directed across the country, including in South Carolina, and "South Carolina has a strong interest in preventing future violence, both in-state and abroad"; and (3) "the interstate judicial system's interest in efficient resolution is best served by having Plaintiffs bring their claims in a single forum," as a lawsuit both here and in New York "would waste judicial resources and create the risk of inconsistent judgments." (*Id.* at 41-42.)

Finally, in response to ATI Defendants' due process argument, Plaintiffs state that the *BMS* court "reiterated the old principal that personal jurisdiction requires 'a connection between the forum and the specific claims at issue,'" and they argue that their claims arise out of or relate to Mr. Calabro's work directed to and finalized in South Carolina. (*Id.* at 43 (quoting *BMS*, 582 U.S. at 265).)

In *Springs Industries v. Gasson*, 923 F. Supp. 823 (D.S.C. 1996), the court found jurisdiction over a director of a company because "[a]t this stage of the proceedings, [Plaintiff] has alleged sufficient facts to show that [Defendant] was involved in the decision making which is causally related to its injury and that he was at least in part, the guiding spirit behind the wrongful conduct." *Id*. at 827. Similar to the director in *Springs Industries*, if Mr. Calabro was personally involved in the decision making, which is causally related to Plaintiffs' alleged injury, then his status as a director may be insufficient to defeat jurisdiction.

Here, it is undisputed that Mr. Calabro is a resident of New York; that he works remotely from New York for ATI; that his title is Director of Marketing of ATI; and that "[a]ll marketing, promotional, and advertising materials on which [he] work[s] for ATI are sent to ATI's executive officials in South Carolina for review and approval before they are published." (ECF No. 30-1 at 3.) Given these undisputed facts and construing all relevant pleading allegations in the light most favorable to Plaintiffs, assuming credibility, and drawing the most favorable inferences for the existence of jurisdiction, the Court finds that Plaintiffs have made a *prima facie* showing of a jurisdictional basis. Plaintiffs' allegations regarding Mr. Calabro's involvement in the decision-making process, which is causally related to their injuries, are sufficient to make a *prima facie* showing of minimum contacts.

Furthermore, in considering whether exercising personal jurisdiction over Mr. Calabro would offend traditional notions of fair play and substantial justice, the Court considers the following factors: (1) the burden on the nonresident defendant; (2) the adjudicative interest of South Carolina; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the systematic interest of the national judicial system in obtaining the most efficient resolution of the controversy; and, (5) the systemic interest of the states in furthering substantive social policies. *World-Wide Volkswagen*, 444 U.S.286, 292 (1980). After considering these factors, the Court finds that exercising jurisdiction over Mr. Calabro comports with the standards of fair play and substantial justice. While there is of course some burden placed on Mr. Calabro to travel from New York to South Carolina, these states are a direct flight from one another, share the same time zone, and Mr. Calabro's counsel resides in South Carolina. Second, the Court finds South Carolina has an adjudicative interest in this dispute involving the marketing and advertising conduct of

a South Carolina-based company. The Court finds the third and fourth factors do not militate in favor of one side over the another. Finally, the Court finds that exercising jurisdiction over Mr. Calabro in South Carolina will further the fundamental substantive social policies of the several states, as every state has an interest in protecting its citizens from unlawful conduct committed in their state and which results in harm to residents suffered in their state.

**VII. The Court Declines to Dismiss Defendants DiChario and Calabro.**

ATI Defendants argue that the claims against Defendants DiChario and Calabro should be dismissed because the allegations do not establish that they personally committed a tortious act that could serve as a basis to hold them individually liable. (ECF No. 82-1 at 29-30.) Rather, they contend that the "[a]ny actions taken by DiChario and Calabro were performed exclusively within the scope of their employment as an officer and employee of ATI. Therefore, they cannot be personally liable for the allegedly negligent acts of ATI." (*Id.* at 30.)

In response, Plaintiffs state that they have alleged, upon information and belief, that "DiChario and Calabro personally influenced, directed, and approved ATI's marketing strategy and content, including its social media platforms." (ECF No. 83 at 34.) Plaintiffs also point out that the "precise details regarding DiChario's and Calabro's roles" will be revealed in discovery but note that "Calabro has declared under penalty of perjury that he works on ATI's marketing, promotional, and advertising materials and sends those materials to ATI executives in South Carolina for approval." (*Id.*; *see* Decl. J. Calabro, ECF No. 30-1 ¶¶ 5-6).) In short, Plaintiffs contend that their factual allegations are sufficient to withstand dismissal at this early stage as both South Carolina and Indiana

law "make clear that corporate officers may be held liable for tortious conduct in which they personally participate." (*Id.*)

After reviewing the factual allegations and applicable law, the Court agrees with Plaintiffs and declines to dismiss Mr. DiChario and Mr. Calabro on this basis at this early stage. *See Brabham Oil Co., Inc. v. Fuel Trader Supply, LLC*, No. 5:24-CV-1170-JFA, 2026 WL 1383388, at *2 (D.S.C. May 18, 2026) ("It is well settled that corporate officers and directors are not liable for the tortious conduct of the corporation unless they commit, participate in, direct, or authorize the commission of a tort."); *Stillwater of Crown Point Homeowner's Ass'n, Inc. v. Kovich*, 820 F. Supp. 2d 859, 893 (N.D. Ind. 2011) ("Indiana law provides that '[a corporate] officer is personally liable for the torts in which she has participated or which she has authorized or directed.'" (quoting *Civil Rights Comm'n v. County Line Park, Inc.,* 738 N.E.2d 1044, 1050 (Ind. 2000))).

## CONCLUSION

For the foregoing reasons, the Court **grants in part and denies in part** ATI Defendants' motion to dismiss. (ECF No. 82). Specifically, the Court grants Defendants' motion as to Plaintiffs' NIED claim on behalf of Plaintiff Dilpreet Kaur but otherwise denies Defendants' motion.

Additionally, given the procedural history of this case, the parties shall confer and submit a joint proposed scheduling order to the Court **within fifteen (15) days** of the date of this Order.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

October 5, 2026
Charleston, South Carolina